MCELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
ROBERT P. DONOVAN (Appearing *pro hac vice*)
rdonovan@mdmc-law.com
LEWIS H. GOLDFARB (*pro hac vice* to be filed)
lgoldfarb@mdmc-law.com
Three Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone: (973) 622-7711
Facsimile: (973) 622-5314

SEDGWICK, DETERT, MORAN &
ARNOLD LLP
KEVIN J. DUNNE  Bar No. 40030
kevin.dunne@sdma.com
ANDREW J. KING Bar No. 253962
andrew.king@sdma.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendants
HORNELL BREWING CO., INC. d/b/a FEROLITO,
VULTAGGIO & SONS, INC., BEVERAGE
MARKETING USA, INC., ARIZONA CORP., INC.,
and PALM BEACH BREWING CO., LLC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAUREN RIES and SERENA ALGOZER, individuals on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>HORNELL BREWING COMPANY, INC., BEVERAGE MARKETING USA, INC., ARIZONA CORP., INC., PALM BEACH BREWING CO., LLC, FEROLITO, VULTAGGIO & SONS, INC.<br><br>        Defendants. | CASE NO. CV 10-01139 JF<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>JUDGE:    Hon. Jeremy Fogel<br>CTRM:    3<br>DATE:    July 16, 2010<br>TIME:    9:00 a.m. |

1

# TABLE OF CONTENTS

2

PAGE

3   I.    PURSUANT TO THE DOCTRINE OF PRIMARY JURISDICTION, AND
        IN LIGHT OF THE RECENT ORDER IN COYLE, JUST GROUNDS
4       EXIST TO STAY THIS CASE AND REFER TO THE FDA THE
        QUESTION OF WHETHER HFCS QUALIFIES AS NATURAL ................................. 1

5

6   II.   THE CLAIMS THAT FRUIT BEVERAGES ARE MISBRANDED ARE
        EXPRESSLY PREEMPTED BY 21 USCA SECTIONS 343-1(a)(2) AND (3)
        BECAUSE PLAINTIFFS ARE SEEKING TO IMPOSE LABELING
7       OBLIGATIONS WHICH DIFFER FROM THOSE REQUIRED BY
        FEDERAL LAW ................................................................................................. 5

8

9   III.  PLAINTIFFS' CLAIMS FOR MISBRANDING FRUIT PRODUCTS ARE
        BARRED BY THE CALIFORNIA SAFE HARBOR DOCTRINE ................................ 8

10  IV.   PLAINTIFFS' CLAIMS FOR DAMAGES UNDER THE CLRA SHOULD
        BE DISMISSED WITH PREJUDICE FOR FAILURE TO COMPLY WITH
11      THE MANDATORY PRE-SUIT NOTICE REQUIREMENTS..................................... 10

12  V.    PLAINTIFFS' CLAIMS FOR FRAUD DO NOT CONTAIN THE
        REQUIRED SPECIFICITY MANDATED UNDER RULE 9(b).................................. 12

13  VI.   CONCLUSION............................................................................................. 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SF/1707638v1

1

## TABLE OF AUTHORITIES

2

**PAGE**

3

### FEDERAL CASES

4

*California v. United States*
   104 F.3d 1086 (9th Cir. 1997) ................................................. 11

5

*Cattie v. Wal-Mart Stores, Inc.*
6   504 F.Supp.2d 939 (S.D. Cal. 2007).................................... 10, 11, 12

7

*Chabner v. United of Omaha Life Ins. Co.*
   225 F.3d 1042 (9th Cir. 2000) ................................................. 4

8

*Covington v. Arizona Beverage Co., et al.*
9   Case No. 08-21894-CIV-SEITZ/O'SULLIVAN (S.D. Fla. June 14, 2010) ...................... 3, 13

10

*Coyle v. Hornell, et al.*, No. 08-2797 (JBS-JS) (D.N.J. June 28, 2010) ........................ 1, 2, 3, 4, 5

11

*Dufresne v. Veneman*
   114 F.3d 952 (9th Cir. 1997) ................................................. 11

12

*Kearns v. Ford Motor Co.*
13   567 F.3d 1120 (9th Cir. 2009) ................................................ 12

14

*Klicker v. Northwest Airlines, Inc.*
   563 F.2d 1310 (9th Cir. 1977) ................................................. 4

15

*Laster v. Team Mobile USA, Inc.*
16   407 F.Supp.2d 1181 (S.D. Cal. 2005)...................................... 11, 12

17

*Laster v. Team Mobile USA, Inc.*
   No. 05-cv-1167 DMS (AJB), 2008 WL 5216255 (S.D. Cal. 2008) ........................ 11

18

*Pom Wonderful, LLC v. Ocean Spray Cranberries, Inc.*
19   642 F.Supp.2d 1112 (C.D. Cal. 2009) ........................................ 4

20

*United States v. Western Pac. R.R. Co.*
   352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)................................. 2, 4

21

*Vess v. Ciba Geigy Corp. USA*
22   317 F.3d 1097 (9th Cir. 2003) ................................................ 12

23

*Von Grabe v. Sprint PCS*
   312 F.Supp.2d 1285 (S.D.Cal. 2003)........................................ 12

24

*Von Koenig v. Snapple Beverage*
25   ____ F.Supp.2d ____, 2010 WL 1980208 (E.D. Cal. May 10, 2010)...................... 9

26

*Williams v. Gerber*
   552 F.3d 934 (9th Cir. 2008) ................................................ 9, 10

27

28

**Table of Authorities**
**(Continued)**

<u>**PAGE**</u>

<u>**STATE CASES**</u>

*Farmers Ins Exchange v. Superior Court*
    826 P.2d 730 (1992)........................................................................................ 4, 5

*Outboard Marine Corp. v. Superior Court*
    52 Cal.App.3d 30 (1975) ..................................................................................... 12

<u>**STATUTES**</u>

21 Code of Federal Regulations
    § 10.25(c) ........................................................................................................... 3
    § 101.2(a) ........................................................................................................... 7
    § 101.30(c) ......................................................................................................... 7
    § 101.30(d) ......................................................................................................... 7
    § 101.30(e) ......................................................................................................... 7
    § 101.4(a) ........................................................................................................... 7

21 United States Code
    § 301 ................................................................................................................... 8
    § 343(f) ............................................................................................................... 7
    § 343(i)(2) .......................................................................................................... 6
    § 343-1 ........................................................................................................... 5, 8
    § 343-1(a) ....................................................................................................... 5, 6
    § 343-1(a)(2) ............................................................................................. 5, 6, 7, 8
    § 343-1(a)(3) ............................................................................................. 5, 6, 7, 8

California Civil Code
    § 1780 ............................................................................................................... 11
    § 1782 ............................................................................................................... 11
    § 1782(a) ........................................................................................................... 10
    § 1782(b) ........................................................................................................... 10
    § 1782(d) ........................................................................................................... 11

Federal Rules of Civil Procedure
    Rule 9(b) ..................................................................................................... 12, 13

SF/1707638v1

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO DISMISS COMPLAINT

1    In opposing Defendants' motion to dismiss, Plaintiffs: (1) disregard the recent decision in

2 a related case (*Coyle v. Hornell Brewing et al*) which makes referral to the FDA and a stay

3 pending referral, under the doctrine of primary jurisdiction, appropriate here; (2) mischaracterize

4 Defendants' arguments including the statutory grounds cited for express preemption and the

5 claims subject to the California Safe Harbor Doctrine; (3) fail to cite to any law which permits

6 Plaintiffs to sue for damages under the California Consumer Legal Remedies Act ("CLRA")

7 without first furnishing Defendants with the required pre-suit notice; and (4) ignore that,

8 contrary to Rule 9, the fraud claims asserted do not refer to what specific products were

9 allegedly purchased, where the purchases were made and at what price(s).

10   **I.       PURSUANT TO THE DOCTRINE OF PRIMARY JURISDICTION, AND IN**

11   **LIGHT OF THE RECENT ORDER IN COYLE, JUST GROUNDS EXIST TO STAY**

12   **THIS CASE AND REFER TO THE FDA THE QUESTION OF WHETHER HFCS**

13   **QUALIFIES AS NATURAL**

14   On June 18, 2010, Plaintiffs filed with this Court the order and decision in a related case,

15 *Coyle v. Hornell, et al.* ("Coyle Order and Opinion"), whereby the Honorable Jerome B.

16 Simandle, United States District Court Judge for the District of New Jersey, referred the question

17 of whether high fructose corn syrup ("HFCS") qualifies as natural to the United States Food and

18 Drug Administration ("FDA").  (Doc. No. 31.)  Pending referral, the court in *Coyle* also stayed

19 the matter for six (6) months.  (*Id.*)  By order entered June 28, 2010, the court entered the order

20 for referral and forwarded a letter to the FDA with that referral order.  *See* Exhibit "A" to

21 Appendix of Unpublished Authorities submitted with this reply.

22   In the underlying motion, for the same reasons asserted in *Coyle*, Defendants have sought

23 to dismiss or otherwise stay this action so that the all natural issue can be referred to the FDA.

24 (Doc. No. 20, p.15.)  Curiously, Plaintiffs do not address the *Coyle* Order and Opinion in their

25 opposition.

26   The main thrust of Plaintiff's complaint is that Defendants mislabel their products as "All

27 Natural" because, Plaintiffs allege, HFCS is artificial.  (Doc. No. 1, ¶¶ 25-37.)  Through this

28 litigation, Plaintiffs are seeking a judicial definition of what constitutes a natural ingredient.  In

the *Coyle* Order and Opinion, the court found that the doctrine of primary jurisdiction applied to that question of whether HFCS is "natural" and ruled that the case met all the four factors set forth in *United States v. Western Pacific Railroad*, 352 U.S. 59, 64 (1956).  (Doc. No. 31, p.11.) Those four factors are:

- whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

- whether the question at issue is particularly within the agency's discretion;

- whether there exists a substantial danger of inconsistent rulings;

- whether a prior application to the agency has been made. (*Id.*, p. 8-9)

As to the first factor, in *Coyle*, the court found that "categorizing HFCS as either natural or artificial for the purpose of food and beverage labeling does not fall within the conventional experiences of judges" because, *inter alia*, the process for manufacturing HFCS is a technical matter involving issues which a federal judge normally would be unfamiliar. (*Id.*, pg. 10.) Specifically, the court ruled that the question of determining whether HFCS is a natural ingredient is "within the FDA's particular field of expertise regarding food chemistry and the labeling of food and beverage products."  (*Id.*, at pg. 11.)

As to the second factor, the court held that the use of the term "natural" fell within the FDA's discretion and that given the FDA's purpose and resources, the question of qualifying HFCS as "natural" would be appropriately left to the FDA in the first instance.  (*Id.* at pgs. 11 and 12.)

Third, and referred to as "perhaps the most critical" to the court's analysis in *Coyle*, the court found the "danger that this Court's classification of HFCS as either natural or artificial will be inconsistent with that of other Courts or with the FDA itself."  (*Id.* at Page 12.)  The court in *Coyle* placed particular emphasis on the fact that the "Defendants are currently the subject of another pending putative class action suit [*Covington*] with the same underlying claim—that HFCS is artificial and Defendants therefore should not have labeled their beverage products as

"100% Natural." [1]  (*Id.*)  The court also referred to three other proposed class actions filed in Federal Court challenging the use of the term "Natural" on beverage products containing HFCS. (*Id.*)  According to the court, "should this court independently decide whether HFCS is a natural ingredient, it is possible that other federal courts or the FDA will come to a different conclusion, resulting in inconsistent outcomes for essentially identical claims and affecting food and beverage purveyors with nationwide businesses."  As a result, the court ruled that it should not "decide whether HFCS qualifies as "Natural" before attempting to seek guidance from the FDA, the administrative agency with expertise on this matter."  (*Id.* at pg. 13.)

As to the fourth factor, the court found that although no prior application was made by the Plaintiff or the Court, the FDA had the capacity to address and resolve the dispute through the administrative determination process.  (*Id.*)  As a result, the court referred the matter to the FDA pursuant to 21 C.F.R. § 10.25(c).  (*Id.*)

Plaintiffs' opposition to the application of primary jurisdiction is based on three assertions: (1) that Congress did not intend the FDA to have the sole authority over food labeling; (2) that the FDA has declined to define the term "Natural"; and (3) that determining whether a labeling is false or deceptive is not outside the conventional experience of judges. (Doc. No. 38, pg. 14.)  Those arguments cannot stand in the wake of *Coyle* and in light of the matters now under consideration by the FDA which are outlined in the motion to dismiss.

In their opposition, Plaintiffs do not even comment upon the recent agency developments which show that the FDA is considering specific regulations of food and beverage labeling including voluntary labeling of the nutritional qualities of a food.  (Doc. No. 21, Exs. B and E.) One of those submissions to the FDA includes a voluminous report proposing major revisions in nutritional labeling requirements for foods and beverages including views about natural claims on products containing HFCS and citric acid.  [*Id.*, Ex. F.]  These were the same submissions

---

[1] The *Covington* case was dismissed with prejudice on June 15, 2010, the same day the *Coyle* Order and Opinion was entered.  See Exhibit B to the Appendix of Appendix of Unpublished Authorities submitted with this reply.  The motion to dismiss in *Coyle* was filed in January 2010, prior to the present lawsuit being initiated.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO DISMISS COMPLAINT

1    filed with the Court in *Coyle* in support of the motion to dismiss on the grounds of primary

2    jurisdiction.

3          Based upon these submissions and the FDA issuances of guidance documentation, taken

4    together with the referral of the question to the FDA by the Court in *Coyle*, there is sufficient

5    evidence to show that the FDA will investigate the claims or issues presented in this litigation.

6    Under *Pom Wonderful, LLC v. Ocean Spray Cranberries, Inc.*, 642 F.Supp.2d 1112, 1123 (C.D.

7    Cal. 2009), evidence that the FDA has taken an interest in investigating the claims or issues

8    presented in the case may be sufficient to apply primary jurisdiction.[2]

9          In the interest of deference to administrative agencies, and to avoid conflicting

10   determinations, this matter should be stayed pending the referral to the FDA on the very same

11   question of whether HFCS qualifies as a "natural" ingredient in Defendants' beverages.

12   Otherwise, the order entered in *Coyle* could be rendered a nullity as the parties here would

13   litigate the matter while the FDA was considering the same question for administrative

14   determination.  As noted in *Klicker v. Northwest Airlines, Inc.,* 563 F.2d 1310, 1313 (9th Cir.

15   1977): "Primary jurisdiction is a concept that expresses both initial deference to the

16   administrative agency and the concern for conservation of judicial resources."  Also, as observed

17   in *Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1051 (9th Cir. 2000):

18          In federal and California state courts, "[n]o rigid formula exists for applying
            the primary jurisdiction doctrine." [*Farmers Ins Exchange v. Superior Court,*
19          826 P.2d 730, 739 (1992)]; *see United States v. Western Pac. R.R. Co.,* 352
            U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Rather, resolution hinges on

20

---

21   [2] With the exception of the labels attached to their request for judicial notice, Plaintiffs object to
     Defendants' request for judicial notice of the documents submitted to the FDA and/or  published
22   by the FDA as concerning the issues of voluntary front-of-packaging labeling including
     guidances from the FDA which set forth the issues that the FDA are currently considering.
23   Plaintiffs do not dispute that the documents for which Defendants seek judicial notice include
     public records of government agencies.  The only case cited by Plaintiffs in support of their
24   opposition to the request for judicial notice was *Pom Wonderful,* 642 F.Supp.2d 1112 (C.D. Cal.
     2009) where the court declined to consider an FDA warning letter regarding internet marketing.
25   The court's refusal to grant the request for judicial notice is without explanation.  Plaintiffs offer
     no meaningful explanation as to why the public records filed in connection with this motion by
26   Defendants should not be accorded judicial notice.  Those records establish, *inter alia*, the issues
     that are presently before the FDA and have a bearing upon the issues of primary jurisdiction
27   addressed here.

28

1  the extent to which the application of the doctrine would serve two underlying
2  policies. *See Farmers Ins.*, 6 Cal.Rptr.2d 487, 826 P.2d at 739. Those policy
   considerations are: 1) whether application will enhance court decision-making
3  and efficiency by allowing the court to take advantage of administrative
   expertise; and 2) whether application will help assure uniform application of
4  regulatory laws. *See id.*

5      This matter was filed on March 17, 2010 and is in the nascent stages of litigation.  There

6  can be no serious dispute that a referral to the FDA and a stay would promote judicial efficiency

7  and uniform application of regulatory laws.  For the foregoing reasons, it is respectfully

8  requested that, consistent with the *Coyle* Order and Opinion, and in accordance with the

9  principles of primary jurisdiction, the Court refer the question of whether HFCS qualifies as a

10  "natural" ingredient to the FDA and stay the matter pending such referral.

11  **II.    THE CLAIMS THAT FRUIT BEVERAGES ARE MISBRANDED ARE**

12  **EXPRESSLY PREEMPTED BY 21 USCA SECTIONS 343-1(a)(2) AND (3) BECAUSE**

13  **PLAINTIFFS ARE SEEKING TO IMPOSE LABELING OBLIGATIONS WHICH**

14  **DIFFER FROM THOSE REQUIRED BY FEDERAL LAW**

15      Plaintiffs erroneously contend that "Defendants do not argue that § 343-1(a) or any

16  paragraph thereof preempted Plaintiffs' claims."  (Doc. 38, Pg. 10)  However, at pages 9 through

17  12 of Defendants' Memorandum of Points and Authorities in support of the motion to dismiss,

18  Defendants cited to specific statutory provisions of the Federal Nutrition Labeling and Education

19  Act (21 U.S.C.A. § 343-1, *et seq.*, "NLEA") including § 343-1(a)(2) and § 343-1(a)(3) as the

20  grounds for express preemption.  Plaintiffs' position is absurd because Defendants cited to 21

21  U.S.C.A. § 343-1(a)(2), and specifically quoted from § 343-1(a), stating that no state shall

22  "directly or indirectly" establish any requirement not identical to the requirement for "the

23  labeling of the food of the type required by sections. . .343(i)(2) of [the FFDCA]."  (Doc. 20, pg.

24  10.)  Likewise, Defendants cited to 21 U.S.C.A. § 343-(1)(a)(3) for authority that no state may

25  directly or indirectly establish any requirement not identical to "any requirement of food of the

26  type specified by section. . .343(f)" of the FFDCA.  (*Id.*)  Section 343-1(a) is a clause which

27  must be read together with corresponding subsections including, *inter alia*, paragraphs (2) and

28  (3).

1    For Plaintiffs to argue that Defendants did not cite to the express preemption provisions

2 is disingenuous.[3]  Set forth below is the full text of Section 343-1(a)(2), cited by Defendants (but

3 not quoted in full) in support of the argument for express preemption:[4]

> (a)    Except a provided in subsection (b) of this section, **no State** or political subdivision of a State may **directly or indirectly** establish under any authority or continue in effect as to any food in interstate commerce

> (2)    Any requirement **for the labeling of food of the type required by section** 343(c), 343(e) or **343(i)(2)** of this title that is not identical to the requirement of such section, except that this paragraph does not apply to a requirement of a State or political subdivision of a State that is of the type required by section 343(c) of this title and that is applicable to maple syrup. [Section 343-1(a)(2); emphasis added]

12    The full text of 21 U.S.C.A. § 343-1(a)(3) states as follows:

> (a)    Except a provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce

> (3)    **Any requirement for the labeling of food of the type required by section** 343(b), 343(d), **343(f),** 343(h), 343(i)(1) or 343(k) of this title that is not identical to the requirement of such section, except that this paragraph does not apply to a requirement of a State or political subdivision of a State that is of the type required by section 343(h)(1) of this title and that is applicable to maple syrup. [Section 343-1(a)(3); emphasis added]

21    After citing to the express preemption provisions of 21 U.S.C.A. § 343-1(a)(2) and (3),

22 Defendants demonstrated why those sections apply to the claims asserted.  (Doc. No. 20, p.10).

23 For example, Defendants cited to 21 U.S.C.A. § 343(i)(2) because Plaintiffs assert that

24 Defendants misbrand beverages which purport to contain a fruit juice.  Also, Defendants referred

---

[3] At page 10 of their opposition brief, Plaintiffs claim that if Section 343-1(a) is argued to apply, then Plaintiffs will seek to file a sur-reply to address that new argument.  Since Defendants did in fact raise and cite to § 343-1(a)(2) and § 343-1(a)(3), there is no basis to permit a sur-reply.

[4] The portions in bold are the provisions specifically quoted in the motion to dismiss.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COMPLAINT

to 21 U.S.C.A. § 343(f) because Plaintiffs' claims include allegations of lack of label prominence.  Defendants specifically argued that the misbranding claims, for the Fruit Products, are expressly preempted by Section 343-1(a)(2) and that the claims that the ingredient statement on the labels lack prominence are expressly preempted by 21 U.S.C.A. § 343-1(a)(3). (Doc. No. 20, pgs. 9-12).

Rather than addressing those arguments head on, Plaintiffs ignore FDA regulations which render lawful the labeling of Fruit Products which are the subject of the Complaint.  By way of example, at page 7 of the opposition brief, Plaintiffs argue that "the FDA regulations do not address labeling and promotion that a product contains a particular fruit that is not in fact contained in that product."  Plaintiffs disregard the FDA regulations, cited by Defendants in the motion (Doc. No. 20, pp. 10 and 12), which set forth the manner in which a beverage must be labeled when the product contains only a percentage of juice or when the beverage does not have any juice but the labeling or color or flavor of the beverage represents, suggests or implies that fruit juice may be present.  21 C.F.R. § 101.30(c), (d) and (e).  Those regulations set forth, *inter alia*, where the declaration of percentage of juice is to be located on the label and what must be stated.  *Id.*  Likewise, Plaintiffs do not comment on the FDA regulations, cited in the motion at page 14, which govern type face size of the ingredient statement, the location of same and the order of prominence for the ingredient statements.  21 C.F.R. § 101.2(a) and 21 C.F.R. 101.4(a).

Significantly, Plaintiffs do not dispute that, with respect to the Fruit Products which are the subject of the Complaint, they are seeking to impose an obligation on labeling different than the FDA requirements.  Based on the Complaint, those obligations would include requiring a disclaimer on the labels so as to "state that it [the product] does not contain a substantial quantity of the fruit listed in the product name or depicted in the product labels." (Doc No. 1, ¶XII (c)).  In the motion, at page 14, Defendants referred to the label of the Diet Blueberry Green Tea which is attached as Exhibit "B" to the Complaint, copies of which were also attached to the Request for Judicial Notice as Exhibits J and K (Doc. No. 21).  That label includes the statement, "CONTAINS NO JUICE," in compliance with 21 CFR § 101.30(d) and (e).  Plaintiffs do not dispute that they are claiming that such disclosure is insufficient and misleading to the consumer

1   even though the label complies with federal law.  Plaintiffs are indeed seeking to impose an

2   obligation of greater prominence with regard to the statement of ingredients and with respect to

3   the statement of juice content.  (Doc. No. 1, ¶¶ 47-48).  The Federal Food Drug and Cosmetic

4   Act (21 U.S.C.A. § 301, *et seq.*, "FFDCA") imposes no such obligations.

5          At page 5 of their opposition, Plaintiffs refer to Section 6(c) of the NLEA.  That section,

6   when read in full context, supports a finding of preemption here.  Section 6(c) pertains to the

7   construction of Section 6(a) of the NLEA.  Section 6(a) authorized 21 U.S.C.A. § 343-1 which

8   governs "national uniform nutrition labeling" and which, as demonstrated above, provides for

9   preemption of state labeling laws.  Specifically, 21 U.S.C.A § 343-1(a)(2) and (3) expressly

10  preempt claims including those that seek to impose obligations on fruit beverage labeling and/or

11  prominence in labeling not identical to the FFDCA.  Hence, Section 6(c), cited by Plaintiffs,

12  supports a finding of express preemption here.

13         Since Plaintiffs, through this litigation, are attempting to impose obligations on Fruit

14  Product labeling that are not identical to the obligations under the FFDCA, such claims are

15  expressly preempted by 21 U.S.C.A. § 343-1(a)(2) and 21 U.S.C.A. § 343-1(a)(3). Should

16  Plaintiffs succeed in pursuing these claims to require different fruit beverage labeling in one

17  state, compared with the labeling permitted in other states, then the overriding Congressional

18  intent to vest with the FDA the sole responsibility to enact uniform nationwide labeling

19  standards would be compromised.

20  **III.     PLAINTIFFS' CLAIMS FOR MISBRANDING FRUIT PRODUCTS ARE**

21  **BARRED BY THE CALIFORNIA SAFE HARBOR DOCTRINE**

22         Plaintiffs' opposition confusingly addresses the all natural claims when arguing against

23  the safe harbor doctrine. (Doc. No.  38, page 11-12).  Defendants are not claiming in their

24  motion that the all natural claims are subject to the safe harbor doctrine.  Defendants have only

25  asserted that, pursuant to the doctrines of express preemption and safe harbor, Plaintiffs' Fruit

26  Product claims are barred.

27         Plaintiffs nevertheless devote virtually the entire opposition regarding the safe harbor

28

8                           CASE NO. CV 10-01139 JF

argument to the all natural claims.[5]  Plaintiffs do state that "Defendants'[sic] simply have not pointed to a single law, federal or state, that affirmatively authorizes a beverage seller to. . .use fruit names on a product that contains[sic] little, if any, of the fruit named or depicted on the front of the label."  [Doc. 38, Pg. 13.]  That statement is false.  At pages 10, 12 and 14 of Defendants' motion, Defendants cite to specific regulations which permit Defendants to label their fruit products in the manner in which Plaintiffs claim be unlawful.  It is Plaintiffs who have failed to establish how and why those regulations do not trigger the protections of the safe harbor doctrine.  Plaintiffs simply ignored the FDA regulations cited in the brief.

Plaintiffs argue that Defendants should have addressed the holding in *Von Koenig v. Snapple Beverage*, ____ F.Supp.2d ____, 2010 WL 1980208 (E.D. Cal. May 10, 2010).  However, the motion to dismiss was filed on May 5, 2010 and *Von Koenig* was decided five days after the present motion was filed.  In any event, the holding in *Von Koenig* has no real bearing on the issues presented in the motion because *Von Koenig* concerned whether the doctrine of safe harbor applied to all natural claims.  The claims in *Von Koenig* did not include misbranding of products bearing a fruit in the name of the beverage or containing a depiction of a fruit.  That is significant because the labeling of fruit juice content in beverages is specifically governed by regulations in the Code of Federal Regulations many of which are outlined in Defendants' motion to dismiss.  Plaintiffs do not dispute that the regulations cited by Defendants are applicable.  Plaintiffs also do not dispute that Defendants' labeling of "Fruit Products" is permitted under the FDA regulations.

Plaintiffs also contend that Defendants ignored *Williams v. Gerber*, 552 F.3d 934 (9th Cir. 2008).  (Doc. No. 38, p. 3).  However, that case was cited in a footnote in Defendants' Motion.  (Doc. 20, Pg. 18, fn. 4.)  Moreover, *Gerber* did not address preemption or safe harbor because the Ninth Circuit found that the defendant had failed to sufficiently raise the issue of preemption before the trial court and had failed to show "how compliance with certain FDA

---

[5] In the last two lines of that section of opposition, Plaintiffs, in a conclusory manner, contend that the safe harbor doctrine does not apply to the claims regarding the Fruit Products. (Doc. No. 38, p. 13.)  However, there is no explanation of why that doctrine does not apply to such claims given the regulations which permit the alleged unlawful labeling.

regulations would automatically shield it from liability under" the California statutes tort claims asserted by the plaintiff. *Id.* The Ninth Circuit did observe, however, that "compliance with FDA regulations may be relevant to a preemption argument" but declined to address the issue on appeal. *Id.*, fn. 4. In contrast to *Gerber*, Defendants have demonstrated that Plaintiffs' claims, as regarding the labeling of Fruit Products, are barred by the Safe Harbor Doctrine because the conduct that Plaintiffs seek to have declared unlawful is authorized by federal law.

## IV. PLAINTIFFS' CLAIMS FOR DAMAGES UNDER THE CLRA SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO COMPLY WITH THE MANDATORY PRE-SUIT NOTICE REQUIREMENTS

In opposing the motion to dismiss the CLRA damage claim, Plaintiffs submit, in opposition, six letters, all of which are virtually identical in content. (Doc. No. 38.) The letters are dated on March 12, 2010, five days before the Complaint was filed. Based upon the documentation Plaintiffs submitted which show when the letters were delivered, all of the letters were marked received after the complaint was filed. (*Id.*). None of the letters contain a demand to correct or repair the alleged violation but instead demand reimbursement of "all amounts paid" for unspecified purchases. (*Id.*) Plaintiffs manifestly failed to accord Defendants with the required 30 days' notice before suing for damages under the CLRA and failed to specify what corrective measures would have to be undertaken to avoid such a damages suit. Plaintiffs failed to comply with California Civil Code Sections 1782(a) and (b).[6]

Plaintiffs' attempt to distinguish this case from the decisions cited in Defendants' moving brief is makeweight. The fact of the matter is that Plaintiffs, by their own submission to this Court, mailed notices on March 12, 2010 and did not furnish Defendants with 30-day's notice as required under California Civil Code § 1782(a). The fact that letters were sent to Defendants is of no moment when the letters do not comport with the requirements of the CLRA including the failure to demand to correct, repair, replace or otherwise rectify the goods. Contrary to Plaintiffs' assertion, this matter is most analogous to *Cattie v. Wal-Mart Stores, Inc.*, 504

---

[6] There is no dispensation from this notice requirement, as Plaintiffs seem to suggest, at page 20 of their brief, simply because the matter is a putative class action.

F.Supp.2d 939 (S.D. Cal. 2007) and *Laster v. Team Mobile USA, Inc.*, 407 F.Supp.2d 1181 (S.D. Cal. 2005) ("*Laster I*") precisely because Plaintiffs, like the plaintiffs in those cases, failed to provide the required notice.

Plaintiffs do not cite to any law countering the legal authority cited by Defendants which establishes that a claim for restitution is a claim for damages under California law.  Plaintiffs do not dispute, in their opposition papers, that they are seeking restitution as part of their relief sought in their Complaint.  They only argue that the cases cited by Defendants are not applicable.  Plaintiffs do not explain how restitution is any different than a claim for monetary damages.  That is the common sense principle applied in *Dufresne v. Veneman*, 114 F.3d 952, 954 fn. 2 (9th Cir. 1997) and *California v. United States*, 104 F.3d 1086 (9th Cir. 1997).

With respect to the pivotal question of whether restitution constitutes damages under the CLRA, Plaintiffs ignore the holding in *Laster v. Team Mobile USA, Inc.*, No. 05-cv-1167 DMS (AJB), 2008 WL 5216255 (S.D. Cal. 2008) ("*Laster II*") where the court rejected the very argument Plaintiffs posit here that restitution is not damages.  In *Laster II*, the court rejected that contention and specifically rejected the argument, which Plaintiffs posit at page 21 of their opposition, that the notice requirement should be interpreted to only encompass claims for "actual damages."  (*Id.*, * 17.)  The court in *Laster II* found that "to interpret Section 1782's notice requirement for 'damages' to be limited to 'actual damages' would render the word actual in Section 1780 redundant."  (*Id.*)  The court went further to observe that "in addition, if the Legislature intended Section 1782's references to "damages" to include only "actual damages," it is unclear why it would specifically exempt only injunctive relief from the notice requirements in Section 1782(d).  (*Id.*)  As a result, based upon the restitution claim asserted, the court dismissed the CLRA damage claim with prejudice finding that the notice requirement applied to monetary damages regardless of whether such damages are calculated based upon unjust enrichment of defendant or the plaintiff's loss.  (*Id.*)

With respect to Plaintiffs' request to dismiss without prejudice, such a dismissal is at odds with the majority of the case law in California which holds that failure to comply with the CLRA notice requirements justifies dismissal of the CLRA damage claim with prejudice.  *Laster*

*II*, 2008 WL 5216255 at * 17; *Cattie*, 504 F.Supp.2d at 950; *Laster I*, 407 F.Supp.2d at 1196 and *Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1304 (S.D.Cal. 2003).  In *Cattie*, the court noted that under the holding in *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 40-41 (1975), literal application of the notice provision was the only way to accomplish CLRA's purposes and, following *Laster I* and *Von Grabe*, concluded that plaintiff's claim for damages under the CLRA must be dismissed with prejudice.  *Cattie*, 504 F.Supp.2d at 950.

Also, the present matter is not a situation where the Plaintiffs accorded Defendants with any reasonable opportunity to correct the alleged deficiencies but instead filed the lawsuit before Defendants actually received the notices.  In the face of such a failure to comply with the notice requirements, Defendants respectfully request that dismissal of the CLRA damage claim, with prejudice, is warranted.

## V.  PLAINTIFFS' CLAIMS FOR FRAUD DO NOT CONTAIN THE REQUIRED SPECIFICITY MANDATED UNDER RULE 9(b)

Plaintiffs do not dispute that their claims sound in fraud.  When a plaintiff chooses to allege a "unified course of fraudulent conduct," the claim is grounded in fraud and the pleading as a whole must satisfy the particularity requirement of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *citing Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  In opposition to this aspect of the motion, Defendants cite generically to allegations in the complaint which in no way specify in particularity the basis for the fraud claims but instead only contain generic statements of alleged unfair, unlawful, deceptive or fraudulent practices, only generally refer to the products by reference to the "all natural" labeling, refer to the time period as being four years and does not state with any specificity where the alleged purchases took place and what the purchases were.  See pages 16-18 of Plaintiffs' opposition brief.  (Doc. No. 20.)

In claiming compliance with Rule 9(b), Plaintiffs argue that "it cannot be said that Plaintiffs initiated this case as a pretext for the discovery of unknown wrongs."  (Doc. No. 38, pg. 17.)  However, as stated in the motion to dismiss, this lawsuit represents a fourth in a series of complaints filed against Defendants, involving the same attorneys for Plaintiffs (as in the

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO DISMISS COMPLAINT

1   other three cases).  In one of those cases, *Covington v. Arizona Beverage Co., et al.*, the court

2   dismissed the case with prejudice noting, inter alia, that the matter was "an example of a case

3   driven purely by counsel."  (See Exhibit B to Appendix of Unpublished Authorities submitted

4   with this reply).  Plaintiffs' complaint, like the complaints filed in *Covington* and in *Hitt v.*

5   *Arizona Beverage, et al.*, fail to set forth any specifics of the alleged purchases.  Given the fact

6   that Plaintiffs are alleging fraudulent and deceptive conduct on the part of the Defendants, it is

7   respectfully submitted that, consistent with Rule 9(b), Plaintiffs should be ordered to plead,

8   specifically, details of each alleged purchase which formed the basis of the Complaint including

9   the date and store location of each alleged purchase, an identification by product name of each

10  product allegedly purchased and the purchase price for each alleged purchase.

11  ## VI.   CONCLUSION

12          For the foregoing reasons, Defendants respectfully request that the Court grant

13  Defendants' motion to dismiss Plaintiffs' complaint or otherwise stay this action pending referral

14  to the FDA pursuant to the doctrine of primary jurisdiction.

15

16  DATED:  July 2, 2010                SEDGWICK, DETERT, MORAN & ARNOLD LLP

17                                      By:   */s/ Andrew J. King*
                                              Kevin J. Dunne (Bar No. 40030)
18                                            Andrew J. King (Bar No. 253962)

19                                      MCELROY, DEUTSCH, MULVANEY & CARPENTER,
                                        LLP
20
                                        By:   */s/ Robert P. Donovan*
21                                            Robert P. Donovan (Appearing *pro hac vice*)
                                              Lewis H. Goldfarb (*pro hac vice* to be filed)
22
                                              Attorneys for Defendants
23                                            HORNELL BREWING COMPANY, INC. d/b/a
                                              FEROLITO, VULTAGGIO & SONS, INC.,
24                                            BEVERAGE MARKETING USA, INC., ARIZONA
                                              CORP., INC., and PALM BEACH BREWING CO.,
25                                            LLC.

26

27

28

                                        13                      CASE NO. CV 10-01139 JF
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO DISMISS COMPLAINT