**E-Filed 7/23/2010**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LAUREN RIES and SERENA ALGOZER, individuals on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HORNELL BREWING COMPANY, INC., BEVERAGE MARKETING USA, INC., ARIZONA CORP., INC., PALM BEACH BREWING CO., LLC, FEROLITO VULTAGGIO & SONS, INC.,<br><br>Defendants. | Case No. 10-1139-JF (PVT)<br><br>ORDER[1] GRANTING STAY AND TERMINATING MOTION TO DISMISS WITHOUT PREJUDICE<br><br>[re: document no. 20] |

Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' complaint or in the alternative to stay the instant action. The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on July 16, 2010. For the reasons discussed below, the Court will stay the instant action for six months from the date of this order and terminate the motion to dismiss without prejudice.

---

[1] This disposition is not designated for publication in the official reports.

## I. BACKGROUND

On March 17, 2010, Plaintiffs Lauren Ries and Serena Algozer (collectively, "Plaintiffs") filed the instant putative class action, alleging that Defendants Hornell Brewing Company, Inc.; Beverage Marketing USA, Inc.; Arizona Corp., Inc.; Palm Beach Brewing Co., LLC; and Ferolito Vultaggio & Sons, Inc. (collectively, "Defendants")[2] violated state laws in connection with the labeling and advertising of various products. Specifically, Plaintiffs allege that Defendants' practices have violated (1) California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, *et seq.*, (2) California's False Advertising Law ("FAL"), Cal. Bus. and Prof. Code § 17500, *et seq.*, and (3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

"Defendants are in the business of producing, distributing and marketing beverage products to the general public throughout the United States and in many foreign countries." (Complaint ¶ 27.) Several of Defendants' products bear labels that contain the phrase "All Natural," "100% Natural," or "Natural" (the "All Natural Products"). (Complaint ¶ 28; *see also* Complaint Ex. A (a photograph of a can of AriZona Iced Tea bearing the words "100% All Natural").) Defendants also advertise the All Natural Products on their website. (Complaint ¶ 28.) Plaintiffs allege that the labels and advertising are deceptive, untrue, and misleading because the All Natural Products contain high fructose corn syrup ("HFCS") and citric acid. (Complaint ¶ 25.) HFCS is obtained by milling corn to produce corn starch and then reacting the corn starch with various enzymes to convert the glucose in the corn starch into fructose. (Complaint ¶¶ 29-32.) Citric acid is obtained from cultures of Aspergillus niger, a mold which produces the acid if fed a sucrose or glucose-containing medium. (Complaint ¶ 39.) The mold is filtered out, and the citric acid is isolated from the growth medium through a reaction with lime and subsequent regeneration by treatment with sulfuric acid. (Complaint ¶ 40.) Plaintiffs

---

[2] The parties have stipulated to the dismissal without prejudice of Plaintiffs' claims against Arizona Corp., Inc. and Palm Beach Brewing Company, LLC. (Docket No. 32.) In addition, Defendants assert that Ferolito Vultaggio & Sons, Inc. is not a separate entity but is a registered business name of Hornell Brewing Company, Inc. (Def.'s Mot. at 1 n.1.)

contend that in light of the processes just described, neither HFCS nor citric acid is a natural ingredient.

    Defendants also sell and market beverages with labels that depict the names and images of fruit (the "Fruit Products"), e.g., AriZona Diet Blueberry Green Tea, (Complaint Ex. B), AriZona No Carb Blueberry Green Tea, (*id.*), and AriZona No Carb White Cranberry Apple Green Tea, (Complaint Ex. C). Plaintiffs allege that the labels and advertising of the Fruit Products are deceptive, untrue, and misleading because the beverages do not contain a substantial amount of the fruits depicted on the label. (Complaint ¶ 47.)

    Plaintiffs allege that they purchased several of the All Natural and Fruit Products in Santa Clara County, San Francisco County, and elsewhere in California during the four years preceding the filing of the complaint. (Complaint ¶¶ 13, 49, 57.) Plaintiffs claim that they relied on Defendants' representations that the All Natural Products "contained either ingredients found in nature or ingredients minimally processed from things found in nature," but that they did not know that the All Natural Products contained HFCS or citric acid. (Complaint ¶ 51.) Plaintiffs also claim that they relied on Defendants' representations that the Fruit Products "contained a substantial amount of the named fruit or depicted fruit," but that they did not know that the Fruit Products did not contain any actual fruit. (Complaint ¶ 52.) They allege that they would not have purchased Defendants' products if not for the way in which the products were labeled and marketed. (Complaint ¶ 54.)

## II. LEGAL STANDARD

    A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1997). However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). *See also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a

motion to dismiss).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F. 3d 245, 248 (9th Cir. 1995).

In assessing whether to grant Plaintiffs another opportunity to amend, the Court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

Finally, although their claims arise under state law, Plaintiffs' allegations are subject to the Federal Rules of Civil Procedure. Specifically, allegations sounding in fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994) (claims based in fraud "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud.").

### III. DISCUSSION

Defendants assert that the complaint should be dismissed, arguing that it fails to allege its claims with particularity as required by Rule 9(b), that the Fruit-Product claims are preempted expressly by federal law and barred by California's safe harbor doctrine, and that Plaintiffs

improperly seek damages under the CLRA.  Defendants also assert that the case should be stayed because the Court should defer to the United States Food and Drug Administration ("FDA") under the primary jurisdiction doctrine.  Because it agrees with Defendants as to the last point, the Court does not reach Defendants' other arguments.

### A.   Primary jurisdiction

Plaintiffs assert that the All Natural Products' labels are misleading under California consumer protection laws that generally prohibit unfair and misleading conduct.  Neither party directs the Court's attention to state or federal law that attempts to define specifically whether HFCS or citric acid is "natural" in the context of a food label.  Defendants argue that Congress has granted the FDA authority to do so and that this Court should defer to that authority.  The primary jurisdiction doctrine does not implicate subject-matter jurisdiction as such, but it is a "prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts."  *Syntek Semiconductor Co., Ltd v. Microchip Technology, Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

The primary jurisdiction doctrine applies when both the court and an administrative agency have jurisdiction over the same matter.  *United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63-64 (1956).  To justify application of the primary jurisdiction doctrine, "[t]he particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question."  *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1363 (9th Cir. 1987).  Four factors traditionally are considered by the court in applying the doctrine:  "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  *Syntek*, 307 F.3d at 781.  While neither party disputes that the Court must construe the meaning of the term "natural" in order to resolve the instant action, the parties do take different positions with respect to the remaining factors.

Case No.  C10-1139-JF (PVT)
ORDER GRANTING STAY AND TERMINATING MOTION TO DISMISS WITHOUT PREJUDICE
(JFEX1)

### 1. The FDA has relevant regulatory authority

In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"), 75 P.L. 717; 75 Cong. Ch. 675; 52 Stat. 1040, "[t]o prohibit the movement in interstate commerce of adulterated and misbranded food, drugs, devices, and cosmetics, and for other purposes." 21 U.S.C. § 393 establishes the FDA under the Department of Health and Human Services. Under the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343, the FDA has the authority to regulate labeling on nearly all food products.

The many subsections of 21 U.S.C. § 343 establish the conditions under which food is considered to be misbranded. Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular." Other subsections of 21 U.S.C. § 343 are more specific. For example, food is misbranded under 21 U.S.C. § 343(f) "[i]f any word, statement, or other information required by or under authority of [the FDCA] to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use . . . ." Pursuant to the NLEA, the FDA has promulgated regulations with respect to the information that must appear on a food label. *See*, *e.g.,* 21 C.F.R. §§ 101.1 - 101.18.

### 2. The FDA's regulatory authority is comprehensive

While mislabeling and misbranding of food clearly are within the regulatory authority of the FDA, Congressional enactments have allowed that authority to be shared with other entities. For example, the United States Department of Agriculture ("USDA") has authority to "promulgate[] regulations to ensure that the nation's food supply of meat, eggs, and poultry is safe." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 415 F.3d 1078, 1087 (9th Cir. 2005). Congress also has preempted expressly many state laws that attempt to regulate food labels. Under 21 U.S.C. § 343-1(a), "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement[s] for a food which is the subject of [certain subsections of 21 U.S.C. § 341] that [are] not identical to the requirement[s] of [those sections of 21 U.S.C. §

341.]" Nonetheless, Congress has left the states with at least some authority to regulate food labeling. Because Section 343(a) is *not* enumerated among the preemption provisions of 21 U.S.C. § 343-1(a), states are free to set their own standards as to whether "labeling is false or misleading in any particular," at least as long as the state standards do not impose requirements that are nonidentical to the subsections of 21 U.S.C. § 343 that are enumerated in 21 U.S.C. § 343-1(a). Because the FDA has not yet defined "natural" under regulations pursuant to 21 U.S.C. § 341, state laws that would define that term are not clearly preempted by the NLEA.

Plaintiffs assert that the FDA has "consciously decided to defer regulation indefinitely," (Pls.' Opp'n at 14:15-16), and argue that this fact is sufficient to defeat application of the primary jurisdiction doctrine. However, for at least seventeen years, the FDA has recognized that "the use of the term 'natural' on the food label is of considerable interest to consumers and industry . . . ." 58 F.R. 2302, 2407 (Jan. 6, 1993). Though it did not intend to establish a definition for the term at the time, the FDA did solicit comments on the issue. *Id.* Ultimately, the FDA decided that "[b]ecause of resource limitations and other agency priorities, [it] is not undertaking rulemaking to establish a definition for 'natural' at this time." *Id.* Nonetheless, the FDA has issued at least some regulations that make reference to the term "natural." 21 C.F.R. 101.22(3) defines "natural flavor" and "natural flavoring," in the context of labeling of spices, flavorings, colorings and chemical preservatives, as "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional."

The FDA also has an "informal policy," pursuant to which it "has considered 'natural' to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there. For example, the addition of beet juice to lemonade to make it pink would preclude the product being called 'natural.'" 56 F.R. 60421. The FDA's determination with respect to whether an ingredient is

"natural" under its current policy appears to be made on a case-by-case basis. Nonetheless,

> [t]he fact that it is a "policy" means that the FDA treats it as an advisory opinion and will not "recommend legal action against a person or product" who complies with the policy. 21 C.F.R. § 10.85(d), (e). The policy, however, does not establish a legal requirement. *Id.* § 10.85(j) ("An advisory opinion may be used in administrative or court proceedings to illustrate acceptable and unacceptable procedures or standards, but not as a legal requirement.").

*Lockwood v. Conagra Foods, Inc.*, 597 F. Supp.2 d 1028, 1033 (N.D. Cal. 2009). Thus, at least at present, California may regulate the term "natural," irrespective of the FDA's "informal policy" on the subject.

While they acknowledge this historical record, Defendants suggest that in recent months the FDA has taken steps indicating that it now is interested in promulgating a formal definition of "natural." On September 14, 2009, the USDA published in the Federal Register an Advance Notice of Proposed Rule Making "to assist the Agency in defining the conditions under which it will permit the voluntary claim 'natural' to be used in the labeling of meat and poultry products." 74 F.R. 46951. Part of this process involves a public notice and comment period, which closed on November 13, 2009. *Id.* The FDA noted that the previous comments it received on the issue "suggested that [it] should work with USDA to harmonize its definition for 'natural.'" 58 F.R. 2302, 2407. In addition, the FDA is interested in regulating front of package ("FOP") claims, and it is working closely with the USDA on formulating regulations for FOP claims because "it will be important that the USDA's oversight of labeling of meat and poultry be consistent with FDA decisions on the rest of the food supply," (Def.'s RJN Ex. D[3]). FOP claims would include the "All Natural" or "100% Natural" claims in the labeling on beverages at issue. (*See* Complaint Ex. B.)

---

[3] In deciding a motion to dismiss, "the court may properly look beyond the complaint only to items in the record of the case or to matters of general public record." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988) (quoting *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir. 1979). Exhibit D is available on the FDA's official website: http://www.fda.gov/Food/LabelingNutrition/LabelClaims/ucm187320.htm. The document thus is a matter of public record and is judicially noticeable. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### 3. The definition at issue requires expertise and uniformity in administration

Presented with nearly identical claims involving identical defendants and plaintiffs' counsel, Judge Simandle of the District of New Jersey granted a stay for six months from June 15, 2010 and referred the question of the proper definition of "natural" to the FDA. *Coyle v. Hornell Brewing Co.*, Civil No. 08-2797 (JBS), 2010 U.S. Dist. LEXIS 59467, at *15 (D.N.J. June 15, 2010). The court was most concerned about the possibility of inconsistent judicial constructions of "natural" and as to whether HFCS and citric acid are natural ingredients. This Court shares that concern.

This Court also would observe that considerable expertise may be necessary to resolve the parties' dispute. The FDA solicited comments concerning the definition of "natural" in the early 1990's, and the USDA did the same in late 2009. The question appears to be complex: the FDA noted that "[n]one of the comments provided [it] with a specific direction to follow for developing a definition regarding the use of the term 'natural.'" 58 F.R. 2302, 2407. Plaintiffs are correct that determining whether labeling and advertising are false or deceptive under consumer protection laws is not an area outside the conventional experience of judges. Nonetheless, the FDA does have significantly more experience in this field and more significantly is in a position to coordinate with other entities to achieve a cohesive regulatory scheme.

There is considerable uncertainty as to whether the FDA will choose to exercise its authority to define "natural." Despite its awareness of the controversy surrounding the term, the FDA has not exercised its authority to act, and states are free to regulate in this space absent the exercise of that authority. Following *Coyle*, this Court will stay the instant action for six months and direct counsel submit a proposal referring to the FDA the question of whether HFCS and citric acid are "natural" ingredients. The stay will terminate six months from the date this order is entered. Though the Court may extend the stay upon a showing of good cause, the parties should be prepared to proceed with respect to all of Plaintiffs' claims if the FDA does not indicate clearly its willingness to act in the reasonably foreseeable future.

///

**B.     Defendants' remaining arguments**

Defendants raise a series of other arguments with respect to Plaintiffs' claims against the Fruit Products.  Because of its application of the primary jurisdiction doctrine, and in the exercise of its inherent power to manage its dockets and stay proceedings, *see Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-1427 (Fed. Cir. 1988) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)), the Court will defer consideration of the remaining issues raised in the instant motion.  The motion to dismiss will be terminated without prejudice, and Defendants may renew the motion after the stay is dissolved.  Notwithstanding the stay, Defendants shall provide Plaintiffs with otherwise-discoverable documents previously produced or collected for purposes of production in connection with the following related cases:  *Coyle v. Hornell Brewing Co.*, Civil No. 08-2797 (JBS), (D.N.J.); *Hitt v. Hornell Brewing Co., et al.,* No. 08 cv809 WQH-POR (S.D. Cal), and *Covington v. Arizona Beverage Co., et al.*, Case No. 08-21894-Civ-Seitz-O'Sullivan (S.D. Fla.)

IT IS SO ORDERED.

DATED: 7/23/2010

_____
JEREMY FOGEL
United States District Judge