1   McELROY, DEUTSCH, MULVANEY &
    CARPENTER, LLP
2   ROBERT P. DONOVAN (Appearing *Pro Hac Vice*)
    rdonovan@mdmc-law.com
3   LEWIS H. GOLDFARB (Appearing *Pro Hac Vice*)
    lgoldfarb@mdmc-law.com
4   Three Gateway Center
    100 Mulberry Street
5   Newark, New Jersey 07102
    Telephone:  (973) 622-7711
6   Facsimile:  (973) 622-5314

7   SEDGWICK LLP
    KEVIN J. DUNNE (Bar No. 40030)
8   kevin.dunne@sedgwicklaw.com
    333 Bush Street, 30th Floor
9   San Francisco, California 94104
    Telephone:  (415) 781-7900
10  Facsimile:  (415) 781-2635

11  Attorneys for Defendants
    ARIZONA BEVERAGES USA LLC, HORNELL BREWING COMPANY, INC., d/b/a
12  FEROLITO, VULTAGGIO & SONS, INC. and BEVERAGE MARKETING USA, INC.

13
                        UNITED STATES DISTRICT COURT
14                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
                             SAN FRANCISCO DIVISION
15

16  LAUREN RIES and SERENA ALGOZER,          CASE NO. CV 10-01139-RS
    Individuals on behalf of themselves and all
17  others similarly situated,

18                 Plaintiffs,               **DEFENDANTS' CORRECTED
                                             MEMORANDUM OF POINTS AND
19       v.                                  AUTHORITIES IN OPPOSITION TO
                                             PLAINTIFFS' MOTION FOR CLASS
20  ARIZONA BEVERAGES USA LLC,               CERTIFICATION**
    HORNELL BREWING COMPANY, INC.,
21  BEVERAGE MARKETING USA, INC.,            JUDGE:  Honorable Richard Seeborg, U.S.D.J.
    and FEROLITO, VULTAGGIO & SONS,          CTRM:    3
22  INC.,                                    DATE:    September 27, 2012
                                             TIME:    1:30 p.m.
23                 Defendants.

24

25

26

27

28

#1832984

---

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

## <u>TABLE OF CONTENTS</u>

2

INTRODUCTORY ARGUMENT.................................................................................................. 1

3

- Plaintiffs Have Not Demonstrated Article III Standing................................................. 1

4

- Plaintiffs' Claims Are Not Typical ............................................................................... 1

5

6

- Plaintiffs Are Not Adequate Class Representatives....................................................... 2

7

- Rule 23(b)(2) Certification is Not Appropriate............................................................. 2

8

- Plaintiffs Have Not Demonstrated Commonality .......................................................... 3

9

STATEMENT OF FACTS...................................................................................................... 3

10

    HFCS and Citric Acid Are Natural ................................................................................ 3

11

    Hornell and ABU's Business ......................................................................................... 4

12

    Plaintiffs' Testimony About Purchases.......................................................................... 5

13

LEGAL ARGUMENT ..................................................................................................... 7

14

I.    Plaintiffs Have the Burden to Prove Each Element of rule 23
    By a Preponderance of the Evidence ............................................................................ 7

15

16

    Defendants' Evidentiary Objections ............................................................................. 8

17

    A.    The Named Plaintiffs Lack Article III Standing
        To Seek Injunctive Relief.................................................................................. 10

18

    B.    No Ascertainable Class Exists Because the Proposed Class is
        Overbroad and Includes Persons Without Article III Standing ........................... 11

19

20

    C.    Plaintiffs Lack Typicality Because Unique Defenses Exist................................. 13

21

    Unique Defenses ........................................................................................................ 15

22

        i)    No Causation, Injury or Loss Can be Shown........................................... 15

23

        ii)    The Named Plaintiffs Are Unable to Prove
              Entitlement to Monetary Relief................................................................ 17

24

        iii)    Plaintiff Ries's Lack of Familiarity With Products
              And Statute of Limitations ....................................................................... 19

25

26

    D.    Plaintiffs Are Not Adequate Representatives of the
        Proposed Class .................................................................................................. 19

27

        i)    The Named Plaintiffs Are in Conflict With the
              Proposed Class Due to Lack of Standing and
              Inability to Prove Qualifying Purchases ................................................... 19

28

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii)     The Order Entered August 25, 2011 Renders
         Plaintiffs' Claims in Conflict With the Class............................................ 20

iii)    Plaintiffs' Relationship with Mr. Lilienstein
         Places Them in Conflict ...................................................................... 21

E.     No Basis Exists to Grant 23(b)(2) Certification..................................................... 23

F.     Lack of Commonality............................................................................................ 25

CONCLUSION                           ........................................................................................ 26

#1832984

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
ii

1

# TABLE OF AUTHORITIES

2

**Page(s)**

CASES

3

*Apilado v. N. Am. Gay Amateur Athletic Alliance,*

4

    792 F.Supp.2d 1151 (W.D. Wash. 2011) ................................................................ 10

5

*Bank of Illinois v. Allied Safety Restraint Systems,*
    75 F.3d 1162 (7th Cir. 1996) .................................................................................. 21

6

7

*Barnes v. American Tobacco Co.,*
    161 F.3d 127 (3d Cir. 1998) .................................................................................. 23

8

*Biotics Research Corp. v. Heckler,*

9

    710 F.2d 1375 (9th Cir. 1983) ................................................................................. 9

10

*Blackwell v. SkyWest Airlines, Inc.,*
    245 F.R.D. 453 (S.D.Cal. 2007) ............................................................................ 19

11

12

*Bodner v. Oreck Direct, LLC,*
    2007 WL 1223777 (N.D. Cal. April 25, 2007) .................................................... 22

13

*Cattie v. Wal-Mart Stores, Inc.,*

14

    504 F.Supp.2d 939 (S.D. Cal. 2007) ..................................................................... 13

15

*Chavez v. Blue Sky Nat. Bev. Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010) .......................................................................... 13

16

17

*Cnty. of Fresno v. Lehman,*
    229 Cal. App.3d 340 (1991) .................................................................................. 19

18

*Colgan v. Leatherman Tool Group, Inc.,*

19

    38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) .............................................................. 17

20

*Covington v. Hornell Brewing Co., Inc.*
    (Civil Action No. 08-21894) .................................................................................... 2

21

22

*Coyle v. Hornell Brewing Co., Inc.,*
    2011 WL 3859731 (D.N.J. Aug. 30, 2011).................................................... 2, 19

23

*Coyle v. Hornell,*

24

    Case No. 08-2797, 2011 WL 2147218 (D.N.J. May 26, 2011) ............................. 19

25

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ................................................................................................ 9

26

*Wal-Mart v. Dukes,*

27

    131 S.Ct. 2541 (2011) ..................................................................................... passim

28

#1832984

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
iii

*Dysthe v. Basic Research LLC*,
   2011 WL 5868307 (C.D. Cal. 2011) ............................................................ 16, 20

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...................................................... 7, 10, 19, 23

*Fine v. ConAgra Foods, Inc.*,
   2010 WL 3632469 (C.D. Cal. 2010) ............................................................ 12, 15

*Garcia v. Sony Computer*,
   2012 WL 1610615 (N.D. Cal. May 8, 2012) ............................................... 13

*Gartin v. S&M Nutec LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) ................................................................. 13

*Gonzales v. Comcast*,
   2012 WL 10621 (E.D. Cal. Jan. 3, 2012) .................................................... 10, 12

*Gonzalez v. Proctor & Gamble Co.*,
   247 F.R.D. 616 (S.D. Cal. 2007) ................................................................. 14, 23

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ....................................................................... 10, 11

*Hannon v. Data Products Corp.*,
   976 F.2d 497 (9th Cir. 1992) ....................................................................... 13

*Hitt v. Hornell Brewing Co., Inc.*,
   2009 WL 4261192 (S.D. Cal. Nov. 24, 2009) ........................................... 2

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ..................................................................... 10

*In re Facebook, Inc., PPC Advertising Litig.*,
   2012 WL 1253182 (N.D. Cal. Apr. 13, 2012) ........................................... 18

*In re Flash Memory Antitrust Litig*,
   2011 WL 1301527 (N.D. Cal. Mar. 31, 2007) ........................................... 23

*In re Frontier Ins. Group, Inc. Sec. Litig.*,
   172 F.R.D. 31 (E.D.N.Y. 1997) .................................................................. 22

*In re Google AdWords Litig.*,
   2012 WL 28068 (N.D. Cal. Jan. 5, 2012) .................................................. 18

*In re Paxil Litig.*,
   212 F.R.D. 539 (C.D. Cal. 2003) ................................................................. 25

*In re Phenylpropanolamine (PPA) Products Liability Litig.*,
   214 F.R.D. 614 (W.D.Wash.2003) ............................................................. 12

#1832984

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
iv

*In re Tobacco II*,
46 Cal. 4th 298 (2009)..................................................................................... 13

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009)..................................................................... 14, 18

*Johnson v. GMRI*,
2007 WL 2009808 (E.D. Cal. Jul. 6, 2007) ..................................................... 18

*Kanter v. Warner–Lambert Co.*,
265 F.3d 853 (9th Cir.2001)............................................................................ 23

*Kline v. Wolf*,
702 F.2d 400 (2d Cir. 1983)............................................................................ 22

*Lewallen v. Medtronic USA Inc.*,
2002WL 31300899 (N.D. Cal. Aug. 28, 2002)................................................ 24

*London v. Wal-Mart Stores, Inc.*
340 F.3d 1246 (11th Cir. 2003)....................................................................... 21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130 ......................................................................... 10

*Marcus v. BMW*,
687 F.3d 583 (3rd Cir. 2012)............................................................................. 7

*Mazza v. American Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012)........................................................................... 12

*McNair v. Synapse Group Inc.*,
672 F.3d 213 (3rd Cir. 2012) ........................................................................... 11

*O'Shea v. Epson America, Inc.*,
2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) ................................................ 12

*Oshana v. Coca-Cola Bottling Co.*,
225 F.R.D. 575 (N.D. Ill. 2005), *aff'd* 472 F.3d 506 (7th Cir. 2007) .................... 11

*Parkinson v. Huyndai Motor America*,
258 F.R.D. 580 (C.D. Cal. 2008) ..................................................................... 13

*Perlstein v. Transamerica Occidental Life Ins. Co.*,
2008 WL 2837185 (D.N.J. July 21, 2008) ...................................................... 24

*Picus v. Wal-Mart Stores, Inc.*,
256 F.R.D. 651 (D. Nev. 2009)........................................................................ 14

*Robinson v. Hornell Brewing Co., Inc.*,
2012 WL 1232188 (D.N.J. April 11, 2012) ..................................................... 11

*Rodriguez v. Gates*,
    2002 WL 1162675 (C.D. Cal. 2002) ....................................................................... 11

*Sanchez v. Wal-Mart Stores, Inc.*,
    2009 WL 1514435 (E.D. Cal. May 28, 2009) recon. denied, 2009 WL 2971553 (Sept.
    11, 2009) ....................................................................................................................... 13

*Sanders v. Apple Inc.*,
    672 F.Supp.2d 978 (N.D.Cal.2009) ........................................................................... 12

*Solo v. Bausch & Lomb, Inc.*,
    2009 WL 4287706 (D.S.C. Sept. 25, 2009) ......................................................... 12, 22

*Stearns v. Ticketmaster*,
    655 F.3d 1013 (9th Cir. 2011) .................................................................................... 12

*Suever v. Connell*,
    2007 WL 3151964 (N.D.Cal. 2007) ........................................................................... 24

*Sweet v. Pfizer*,
    232 F.R.D. 360 (C.D. Cal. 2005) ............................................................................... 24

*True v. ConAgra Foods Inc.*,
    2011 WL 176037 (W.D. Mo. Jan. 4, 2011) ............................................................... 12

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ............................................................................... 12

*Weiner v. Snapple Beverage*,
    2011 WL 196930 (S.D.N.Y. 1011) ............................................................................ 17

*Wolph v. Acer America Corp.*,
    272 F.R.D. 477 (N.D. Cal. March 25, 2011) ............................................................. 11

*Zapka v. Coca-Cola Co.*,
    2000 WL 1644539 (N.D. Ill. Oct. 27, 2000) ............................................................. 11

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir.1983) ...................................................................................... 25

**STATUTES**

Cal. Civ. Code. 338, 339 .................................................................................................... 19

*Cal. Civ. Code* 1780(a) ...................................................................................................... 13

Cal. Civ. Code 1783 ........................................................................................................... 19

California Business and Professions Code § 17200, *et seq.* ............................................... 3

California Business and Professions Code § 17500 ....................................................... 3

**RULES**

*Fed. R. Evid.* 403 ................................................................................................. 8, 9

*Fed. R. Evid.* 602 ....................................................................................................... 8

*Fed. R. Evid.* 901(a) ................................................................................................. 8

Rule 26 ................................................................................................................... 8, 9

Rule 23 .............................................................................................................. passim

**REGULATIONS**

58 F.R. 2302, 2407 (1993) ...................................................................................... 4, 5

**OTHER AUTHORITIES**

5 *Newburg on Class Actions* § 16.25 (4th Ed.) ............................................................ 24

#1832984

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
vii

**INTRODUCTORY ARGUMENT**

Defendants, AriZona Beverages USA LLC (individually, "ABU"), Hornell Brewing Co., Inc., d/b/a Ferolito, Vultaggio & Sons, Inc. (individually, "Hornell") and Beverage Marketing USA, Inc. (individually, "BMU") (collectively, "Defendants") submit this memorandum of law in opposition to the motion for class certification filed by plaintiffs, Lauren Ries ("Plaintiff Ries") and Serena Algozer ("Plaintiff Algozer") (collectively, "Plaintiffs").  Plaintiffs seek to certify a class of all persons in California who purchased Defendants' beverages labeled "Natural" but which contained High Fructose Corn Syrup ("HFCS") and/or citric acid. Plaintiffs' motion is devoid of any proofs necessary to satisfy the burdens of Rule 23 and fails for many reasons including:

- **Plaintiffs Have Not Demonstrated Article III Standing**–Plaintiffs have not met their burden to establish Article III standing to seek injunctive relief.  They are not subject to a real likelihood of future injury from Defendants' challenged conduct because they are aware of the labeling and contents and have stopped purchasing Defendants' products.  Plaintiffs' proposed class is hopelessly overbroad and includes class members who were not harmed and who have no standing.

- **Plaintiffs' Claims are Not Typical**–Plaintiff Ries does not know the name of the product she purchased, the purchase price, is unsure as to the entire statement on the label, other than "natural", and has no documents to prove her one alleged purchase.  Plaintiff Algozer cannot testify as to the price(s) that she paid for any beverages and has no documents to prove any purchase.  Plaintiffs' deposition testimony belies any claim that the label "natural" had any impact on their purchases and that the term was material to them or to anyone else.  Plaintiffs decided to sue after speaking to their friend and eventual attorney in this case, David Lilienstein, who told them that he believed that Defendants were deceptively labeling their products that contained HFCS and that Defendants were being sued elsewhere.  Plaintiffs are also subject to the unique defense that they cannot prove entitlement to restitution because they offer no evidence showing any difference in value exists between the products purchased and the products received.

Plaintiff Ries is not sufficiently familiar with Defendants' beverages having made only one purchase nearly four years prior to the complaint. She does not know whether or not that product contained citric acid. Her claims under the FAL and CLRA are barred by the statute of limitations. Plaintiff Algozer testified repeatedly that she had no opinion whether HFCS was natural until she spoke to her friend Mr. Lilienstein in 2009. That deposition testimony defeats any claim of deception.

•    **Plaintiffs Are Not Adequate Class Representatives**—The named Plaintiffs' claims are in conflict with the proposed class because: (1) They cannot prove any qualifying purchase took place and lack statutory and constitutional standing to obtain injunctive relief. Their claims pertain to a variety of beverages, labeled differently and include diet, non-diet, smoothies and fruit flavored drinks, many of which Plaintiffs never purchased; (2) They seek to represent a class to sue for fraudulent and deceptive advertising based upon Defendants website and other promotions but all such claims (other than false labeling claims) have been dismissed; and (3) Plaintiffs are friends with one of the attorneys in this case and that relationship raises issues of conflict to the extent that they have simply lent their names as parties to a lawsuit which appears to be lawyer driven.[1]

•    **Rule 23(b)(2) Certification is Not Appropriate**—Plaintiffs seek individualized monetary relief for the class, which is not incidental, and such monetary awards are not appropriate in Rule 23(b)(2) actions. Monetary relief would be a function of many varied and individualized inquiries like proof of product purchased, location, date, price paid and quantities purchased. Plaintiffs have not demonstrated any cohesiveness or group injury as required under

---

[1] This is not the first time Defendants have been confronted with lawsuits that appear lawyer driven. In *Covington v. Hornell Brewing Co., Inc.* (Civil Action No. 08-21894), that case was dismissed with prejudice on the merits and as a sanction with a ruling by the court that the matter was "an example of a case driven purely by counsel." (DE 112, Ex. S). In *Coyle v. Hornell Brewing Co., Inc.*, 2011 WL 3859731 *4 (D.N.J. Aug. 30, 2011) (No. 08-2797), the court denied class certification after finding that the plaintiff was not adequate in large part because she made the alleged qualifying purchase seven months after retaining her lawyer to sue Defendants. In *Hitt v. Hornell Brewing Co., Inc.*, 2009 WL 4261192 (S.D. Cal. Nov. 24, 2009), plaintiff Hitt's counsel moved to substitute that plaintiff after she no longer decided to pursue the case. That motion was denied and the matter was eventually dismissed with prejudice. Many of the attorneys in those cases are counsel for Plaintiffs here.

#1832984

Rule 23(b)(2).  There also has been no showing that a single individual injunction could furnish final relief to all members of the class as a whole.  The proposed class includes diverse persons who purchased a variety of Defendants' caloric and non-caloric (diet) products for any number of reasons including resale, personal consumption, brand loyalty, hydration, price, taste, flavor, impulse, thirst, caloric content, to avoid calories, convenience, quantity, aversion to soda, the attractiveness of the can or bottle and other reasons unrelated to labeling (hereafter collectively referred to as the "Varied Reasons for Purchase").  Also, every form of relief that Plaintiffs seek is available to them and the proposed class in an individual lawsuit without resorting to the potentially prejudicial, expensive and time-consuming proceeding to determine whether their claim is entitled to class status.

- **Plaintiffs Have Not Demonstrated Commonality**–Plaintiffs have not addressed the applicable test for commonality under *Dukes v. Wal-Mart*, 131 S.Ct. 2541 (2011).  They have not shown how individualized claims of the class can be established through common proofs.  Contrary to their assertions, the labels at issue are not uniform and vary in terms of the reference to "Natural."

For these and other reasons, set forth below, Plaintiffs' motion should be denied.

## STATEMENT OF FACTS[2]

**HFCS and Citric Acid Are Natural** – Plaintiffs claim that HFCS and citric acid are artificial and allege that, as a result, Defendants' "All Natural" labeling violates the California Business and Professions Code § 17200, *et seq.* (hereafter "UCL"), California False Advertising Law (California Business and Professions Code § 17500, *et seq.* hereafter "FAL") and California Consumer Legal Remedies Act ("CLRA"). (DE 75).  In their motion, Plaintiffs reiterate this contention without proffering any competent proof.

In opposition to this contention, the record is replete with evidence that HFCS and citric acid are natural.  This evidence includes certifications from Defendants' suppliers that the HFCS

---

[2] The statement of facts is based upon the exhibits attached to the Declaration of Robert P. Donovan submitted in opposition to Plaintiffs' motion ("Opposition Dec.") and the exhibits filed in support of Defendants' motion for summary judgment. (DE 112).

and citric acid in Defendants' products are natural.   (Opposition Dec., Exs. A through E).
Further support for this position is provided in Defendants' expert report from Rutgers
University food scientist, Dr. Thomas Montville ("the Montville Report").  (*Id.* , Ex. G, redacted
copy Ex. H).  HFCS is made of the sugars glucose (also known as dextrose) and fructose (fruit
sugar). (*Id.*, pg. 4.)  HFCS is made from corn by using naturally occurring protein enzymes that
accelerate the breakdown of sugars.  (*Id.*)  Citric acid is produced from fermentation and is
derived from agricultural sources including potatoes.  (*Id.*, pg. 6).  Dr. Montville is also of the
opinion that the methods used by Defendants' HFCS and citric acid suppliers are consistent with
the requirements of the FDA Natural Policy (58 F.R. 2302, 2407 (1993), "FDA Natural Policy")
and that both ingredients are natural.  (*Id.* at pg. 5, 6, 12-16).

**Hornell and ABU's Business** – Without any evidentiary support, Plaintiffs contend that
Defendants fraudulently profit from natural labeling and that consumers pay more for such
products.  Plaintiffs, in essence, claim that Defendants received a premium by using the word
"natural."  That is not the case.  As set forth in the accompanying declaration of Don Vultaggio,
ABU, like Hornell, sells its products to wholesalers, distributors and retailers within the State of
California.  (*Id.*, Ex. F, ¶¶6).  The wholesalers and distributors sell ABU's products to other
distributors or to retailers.  (*Id.*)  The retailers then sell to consumers.  (*Id.*)  ABU does not sell its
products directly to end-use consumers.  (*Id.)*  In addition, ABU does not set the retail price that
end-use consumers pay retailers.  (*Id.*)  Those prices are set by retailers who are neither owned,
operated nor controlled by ABU.  (*Id.*)  Such retail prices vary widely depending on a number of
factors including, among other factors, whether the product is sold at convenience stores or
supermarkets. (*Id.*)

As to ABU's sales to distributors and retailers, ABU uses line pricing meaning assigning
a single, uniform price, on a per case basis, for all of the same sized and packaged products.  (*Id.*,
*¶7*).  For instance, under line pricing, cases of 23 ounce cans of ABU's products, regardless of

flavor or whether they are diet or contain HFCS or citric acid, or are labeled "All Natural," are priced identically for sale to distributors. (*Id.*)[3]

**<u>Plaintiffs' Testimony About Purchases</u>** - The FAC refers to approximately 48 different products including sweetened iced teas (with HFCS), diet/unsweetened products (with no HFCS), fruit flavored drinks and smoothies (with no HFCS). (DE 75, pgs 2-3). Many of these products have labels stating "100% All Natural," "100% Natural", "All Natural," "All Natural Flavors," "Natural Flavors," "100% All Natural Tea," "100% Natural Tea" and/or "All Natural Tonic." (DE 112, Exs. B and C).

Plaintiff Ries's entire claim is based upon a single purchase of Defendants' beverages, in the summer of 2006, at an unidentified gas station. (DE 112, Ex. F, No. 2; Ex. H; T.28:1-19; T.62:22-63:9; *Id.*, T.97:7-9). Her testimony indicates that she bought the product based on impulse and "solely" because she was thirsty. (*Id.*, Ex. H, T.99:18-100:22). She also bought Defendants' product for reasons in addition to the statements made on the label, including some of the Varied Reasons for Purchase (defined at page 3 above), like thirst, attractiveness of the can and/or bottle and wanting something healthier than a soft drink. (*Id.*, T.33:22-25; Ex. N, Nos. 111 and 114; Ex. D, No. 3).

Plaintiff Ries cannot testify with certainty as to the statement on the label of the product she purchased and stated that "natural" was on the label but does not know whether the label stated "All Natural Tea" or "All Natural Flavor" or just "Natural." (*Id.*, T.29:17-30:2; T.30:8-10; T.97:16-98:3; T.103:22-25; and T.112:14-19). She claims to have bought an "All Natural Green

---

[3] Defendants also market their products in a number of different ways. For example, one of Hornell's and ABU's best selling products in California has been the 23 ounce can of caloric and diet iced teas. (*Id.,* ¶¶9). Almost all of the 23 ounce cans are sold by ABU with the price of 99 cents printed on the can. (*Id.*) The 99 cent price is merely a suggested price at the retail level. (*Id.*) However, Hornell's and ABU's experience has been that those retailers, who agree to carry that product, usually follow this suggested pricing on the pre-priced can. (*Id.*) Printing the 99 cents on the can has been an effective marketing strategy for Hornell and ABU. (*Id.*) As a result, a majority of the sales of Hornell and ABU products in California have been the pre-priced cans at 99 cents which is significantly less than the price charged by Hornell's and ABU's competitors for products that are not labeled "All Natural," "100% Natural" or "100% All Natural" such as Coke and Pepsi. (*Id.*).

Tea". (*Id.*, T. 28:1-19). However, Defendants' green tea beverages include a number of different green tea flavors. (DE 112, Ex. B and C). The only ingredients she recalls seeing in the ingredient statement were HFCS and water. (*Id.*, T.47:23-48:3). She does not know if the product contained citric acid, does not know the size of the product and has no documents to prove this purchase. (*Id.*, T.47:20-22; *Id.*, Ex. F, No. 2; *Id.* T.82:17-19; *Id.*, Ex. P, Nos. 1-4). As to her involvement in this lawsuit, she was invited to the home of Mr. Lilienstein, her friend and her eventual attorney in this case, in the fall of 2009, at which time, he brought up the topic of Arizona iced tea. (*Id.*, Ex. H, T.44:24-46:14-16). Mr. Lilienstein told her "[t]hat he was getting involved in some litigation against AriZona that was ripping people off for saying that their products were natural when they contained high fructose corn syrup." (*Id.*, T.45:2-6)

Plaintiff Algozer also has no documents to prove any purchase and cannot testify with any degree of reasonable certainty as to the price(s) that she paid for Defendants' beverages. (*Id.*, Ex I, T.35:9-11; T.104:2-6; T.109:2-10; *Id.*, Ex. Q, Nos. 1-4). She recalls purchasing Defendants' "All Natural Green Tea with Ginseng and Honey," a lemon tea and a peach tea. (*Id.*, T.37:2-8). She only recalls the labeling on two types of beverages but does not know the quantities purchased and, with regard to dates, could only approximate that the purchases occurred over a course of five year period prior to March 2009. (*Id.*, Ex. R, No. 2; *Id.*, T.106:16-T.108:5). She does not remember whether she bought the products in cans or in bottles, does not know the specific product names or the quantities purchased. (*Id.*, T.80:15-81:7; T.102:13-103:2; *Id.*, Ex. G, No. 2 ). She also decided to sue after she spoke to her friend and eventual attorney, Mr. Lilienstein, in March of 2009, who told her that he believed that Defendants were deceptively labeling their products, that they contained HFCS and that Defendants were being sued elsewhere. (*Id.*, Ex. R, No. 21; *Id.*, Ex. I, T.23:16-24:22; T.26:4-16; T.120:1-10).

## LEGAL ARGUMENT

## I.   Plaintiffs Have the Burden to Prove Each Element of Rule 23 by a Preponderance of the Evidence

To certify a class action, plaintiffs bear the burden of demonstrating that they have met each of the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and

#1832984

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
- 6 -

1   (4) adequacy of representation and at least one of the requirements of Rule 23(b).  *Wal-Mart*

2   *Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011); *Ellis v. Costco Wholesale Corp*., 657 F.3d

3   970, 980 (9th Cir. 2011). "[D]istrict courts are not only at liberty to, but *must* perform 'a rigorous

4   analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis*, 657 F.3d at

5   980 citing *Wal-Mart*, 131 S.Ct. at 2551. (internal citation and quotation marks omitted)(emphasis

6   added)."[T]hat 'rigorous analysis' will entail some overlap with the merits of the plaintiff's

7   underlying claim.  That cannot be helped."  *Wal-Mart*, 131 S.Ct. at 2551.  "[T]he merits of the

8   class members' substantive claims are often highly relevant when determining to certify a class."

9   *Ellis*, 657 F.3d at 981.  "[I]mportantly, it is not correct to say a district court *may* consider the

10  merits to the extent that they overlap with class certification issues; rather, a district court *must*

11  consider the merits if they overlap with the Rule 23(a) requirements.  *Id.* (internal citations

12  omitted).

13          Plaintiffs' motion is replete with conclusory and self-serving statements that do not

14  satisfy any of the elements of *Rule* 23.  Plaintiffs have not specifically shown how they claim to

15  have been individually damaged as a result of any alleged unlawful act.  They have not identified

16  what specific product they purchased, the purchase price, the dates of purchases and how

17  Plaintiffs claim to have been damaged.   They also do not explain how they can prove

18  individualized issues of injury, reliance or monetary relief on a class-wide basis.  Even the

19  burden to prove numerosity has not been satisfied.  See *Marcus v. BMW,* 687 F.3d 583, 596-97

20  (3rd Cir. 2012*)*, (citations omitted) (where the court held that numerosity, like all Rule 23

21  requirements, must be proven by a preponderance of the evidence and further ruled that a

22  "plaintiff must show sufficient circumstantial evidence specific to the products, problems,

23  parties, and geographic areas actually covered by the class definition to allow a district court to

24  make a factual finding" and stated that  "[o]nly then may the court rely on 'common sense' to

25  forego precise calculations and exact numbers." *Id*.

26          **Defendants' Evidentiary Objections** -- Under the scheduling order entered

27  December 11, 2011 ("Scheduling Order"), Plaintiffs were ordered to disclose all experts by July

28  6, 2012 and to serve all expert reports by August 3, 2012.  (DE 110).  Plaintiffs never disclosed

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

any experts and never served any expert reports.[4]  In their motion, however, they refer to "a survey" and websites to claim that the term "Natural" is material to consumers. (DE 117, pages 1-2 and footnotes 1 and 2).  The contents of these supposed surveys and websites are not annexed to Plaintiffs' motion, are unverified and lack any evidentiary foundation under *Fed. R. Evid.* 901(a).[5]  The information is not submitted based upon any personal knowledge in violation of *Fed. R. Evid.* 602 and is hearsay.  In reviewing the websites, the entire contents of the supposed survey(s) are not accessible, only apparent excerpts.  It would be unfair to require Defendants to respond to assertions about survey(s) that Defendants never received.  There is no way for Defendant to determine what witnesses prepared the survey(s), the full contents of the opinion, the facts, the data considered by the witnesses and the witnesses' qualifications, among other deficiencies.

The supposed content of the websites and any survey also lacks relevance and is more prejudicial than probative under *Fed. R. Evid.* 403.  One of the surveys is referred to as showing an increase in sales in products labeled natural as opposed to organic.  (DE 117, footnote 1). Whether or not consumers prefer foods labeled natural as opposed to organic has very little, if any bearing, upon the claims in this case.  Plaintiffs' summary of the information also does not adequately explain the content on the website(s).  For example, Plaintiffs refer to a survey about "natural beats organic". (*Id.*, footnote 2).  Plaintiffs fail to note that the websites contain information stating that consumers at times associate the term "organic" with products that are expensive.  That differentiation in sales, based on the negative perception of the term organic, would have nothing to do with the alleged material status of the natural term.  Another site refers

---

[4] In Defendants' document demands, propounded well over one year ago, Plaintiffs were to produce documents including, but not limited to, the very documents they refer to in the motion. (DE 112, Exs. P and Q, Nos. 8, 9, 15, and 18-20, respectively).  Defendants responded that they had no documents responsive to any of these requests. (*Id.*).

[5] Plaintiffs also refer to a food labeling chaos report ("Food Labeling Report") to claim the term "Natural" provides merchants with a "competitive edge."  (DE 117, fn.3)  Defendants have an awareness of the Food Labeling Report which was a public document submitted by the Center for Science in the Public Interest ("CSPI") in connection with a request that the FDA redefine the term "Natural" by regulation.  However, Plaintiffs never disclosed that they intended to rely upon this report and Defendants seek references to that report (at page 2 and footnote 3 of DE 117) stricken or excluded as violative of Rule 26 and the Scheduling Order.

to increased sales in products labeled natural as opposed to products labeled low fat.  (*Id.*, "U.S. Healthy Eating Trends").  The same article notes that the drop in prices of one product line (milk) impacted sales volume figures.  A reduction in sales revenues, because of a price decrease, likewise has nothing to do with natural labeling.

Plaintiffs also refer to a May 30, 2012 letter from the U.S. Food & Drug Administration ("FDA") responding to a petition by the Corn Refiners Association (DE 116-2, Exhibit A, "Petition Letter"), an August 16, 2001 letter from the FDA to Oak Tree Farm Dairy, Inc. (*Id.*, Exhibit B) and an August 29, 2001 letter from the FDA to Herzel Canning Company (*Id.*, documents annexed as Exhibit B shall be collectively referred to as the  "FDA Letters").  Plaintiffs refer to the Petition Letter and the FDA letters to argue that HFCS and/or citric acid are not natural.  (DE 117, pg. 3).  The Petition Letter and FDA Letters also were not produced by Plaintiffs in response to Defendants' discovery requests.  (DE 112, Exs. P and Q).[6]

Like the references to a supposed survey(s) and Food Labeling Report, the Petition Letter and FDA Letters also do not stand for the assertions Plaintiffs proffer.  They lack relevance and/or are more prejudicial than probative under *Fed. R. Evid.* 403.  The Petition Letter addresses a denial of a petition by the Corn Refiners Association to change the name of HFCS to corn sugar.  The issue of whether HFCS is natural was not addressed in the Petition Letter.  The FDA Letters do not evaluate Defendants' ingredients and do not represent binding agency action.  See *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1377 (9th Cir. 1983); (also see DE 45 commenting on non-binding nature of similar letters).  These letters, offered as evidence that Defendants' ingredients are somehow artificial, fail the requirements of admissibility under Rule 26, *Fed. R. Evid.* 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The survey(s), websites, Food Labeling Report, Petition Letter and FDA Letters were not disclosed in a manner in compliance with Rule 26 or the Scheduling Order.  The references in the motion to alleged materiality, based upon the alleged survey, website(s) and Food Labeling Report (DE 117, pages 1-2, footnotes 1-3) are prejudicial to Defendants and just grounds exist to

---

[6]Plaintiffs swore that that they are not contending Defendants violated any federal law, regulation, rule and/or policy.  (DE 112, Exs. D and E, Nos. 8, respectively).

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

disregard or otherwise strike all such references. Plaintiffs' references to the alleged artificial status of HFCS and citric acid, based upon the Petition Letter and FDA Letters, at page 3 and 4 of Plaintiffs' Motion, are prejudicial and should be disregarded or otherwise stricken.

### A.   The Named Plaintiffs Lack Article III Standing to Seek Injunctive Relief

Plaintiffs do not address either statutory or constitutional standing even though they have the burden to do so. See *Gonzales v. Comcast*, 2012 WL 10621, *5 (E.D. Cal. Jan. 3, 2012). "Plaintiffs are required to put forward evidence demonstrating plaintiffs *in fact* have legal standing to pursue the claims alleged in their complaint." *Id.* (emphasis supplied). In order to satisfy the Constitution's standing requirement, plaintiffs must show: (1) an "injury in fact, that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged conduct; and (3) that the injury is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590-91, 112 S.Ct. 2130, 119 L.Ed2 351 (1992). Plaintiffs must show standing with respect to each form of relief sought. *Ellis*, 657 F.3d at 978.

Under *Lujan*, the plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way. *Id.* at 579. (internal citations and quotations omitted). On a claim for injunctive relief, the party must show "a sufficient likelihood that he will again be wronged in a similar way," and "likelihood of future injury is sufficient where there is a real and immediate threat of repeated injury." *Apilado v. N. Am. Gay Amateur Athletic Alliance*, 792 F.Supp.2d 1151, 1164 (W.D. Wash. 2011). "[A] single incident is insufficient to establish a likelihood of future injury under Ninth Circuit law." *Apilado*, 792 F.Supp.2d at 1164-65 (citing *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999)). For Plaintiffs to have standing, the claimed threat of injury must be likely to be redressed by the prospective injunctive relief sought. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004).

Plaintiff Ries claims that she made only one alleged purchase in the summer of 2006 and felt deceived at that point in time. (*Id.*, T.28:1-3; 62:22-63:5; *Id.*, T.97:7-9). Plaintiff Algozer stopped purchasing Defendants' products after her conversation with Mr. Lilienstein in March

2009 during which she was told that HFCS was artificial.  (*Id.*, Ex. I, T.28:12-24).  There can be no plausible claim that Plaintiffs are threatened by future harm because they are now aware of the contents of Defendants' beverages and stopped purchasing them.  Because Plaintiffs cannot satisfy the required element of redressability, they cannot represent the class that seeks such relief.  See *McNair v. Synapse Group Inc.*, 672 F.3d 213 (3rd Cir. 2012) (where the Third Circuit upheld the denial of Rule 23(b)(2) class certification ruling that plaintiffs could not demonstrate that they were likely to suffer future injury from Defendants' marketing practices); see also *Robinson v. Hornell Brewing Co., Inc.*, 2012 WL 1232188 (D.N.J. April 11, 2012) (where the court denied class certification, applying *McNair*, ruling that plaintiff could not demonstrate that he was likely to suffer future injury from Defendants' labeling practices).

   **B.    No Ascertainable Class Exists Because the Proposed Class is Overbroad and Includes Persons Lacking Article III Standing**

   Parties seeking class certification must demonstrate an identifiable and ascertainable class exists.  *Wolph v. Acer America Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. March 25, 2011) (internal citations omitted); *Rodriguez v. Gates*, 2002 WL 1162675 *8 (C.D. Cal. 2002) ("a class definition should be precise, objective and presently ascertainable).  A class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member.  *Wolph*, 272 F.R.D. at 482.[7]  Plaintiffs argue that the class "includes objective characteristics that would permit a consumer to identify themselves as a member of the proposed class and is, therefore, readily ascertainable."  (DE 117, p. 4-5)  However, Plaintiffs do not explain what alleged objective characteristics exist.

---

[7] Courts have recognized that class certification can be denied for lack of ascertainability when the proposed definition is overbroad and the plaintiff offers no means by which only those class members who have claims can be identified from those who should not be included in the class.  *Zapka v. Coca-Cola Co.*, 2000 WL 1644539, at *3 (N.D. Ill. Oct. 27, 2000) (holding class definition that is contingent on each class member's state of mind was not an identifiable class because it included individuals who were not harmed); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575 (N.D. Ill. 2005), *aff'd* 472 F.3d 506 (7th Cir. 2007)(where plaintiff's proposed class of all individuals who purchased Defendant's beverages for consumption during a five-year period was an inadequately defined class and "considerable cost and time would have to be expended by the court and parties before the class could even theoretically be identified").

1    Courts have concluded that where, as here, determining class membership would involve

2    fact-intensive mini trials because class membership would, among other things, be based on

3    "vagaries of memory," the class is not ascertainable and the court should deny class certification.

4    *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 214 F.R.D. 614 (W.D.Wash.2003);

5    *True v. ConAgra Foods Inc.*, 2011 WL 176037 (W.D. Mo. Jan. 4, 2011)(where few-if any-

6    putative class members retained tangible evidence of their purchase (*i.e.*, a receipt or the actual

7    pot pie), the class is problematic because it would be based on the 'vagaries of memory'); *Solo v.*

8    *Bausch & Lomb, Inc.*, 2009 WL 4287706 (D.S.C. Sept. 25, 2009).

9    No class may be certified that contains members lacking Article III standing.  *Mazza v.*

10    *American Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).  While putative class

11    members need not submit evidence of personal standing a class must be defined in a way that

12    anyone within it would have standing.[8]  Other courts in this Circuit have held that absent class

13    members must also satisfy Article III standing requirements.  *O'Shea v. Epson America, Inc.*,

14    2011 WL 4352458 *10 (C.D. Cal. Sept. 19, 2011); *Webb v. Carter's Inc.,* 272 F.R.D. 489 (C.D.

15    Cal. 2011); *Fine v. ConAgra Foods, Inc.*, 2010 WL 3632469 *3 (C.D. Cal. 2010); *Sanders v.*

16    *Apple Inc.,* 672 F.Supp.2d 978, 991 (N.D.Cal.2009).

17    Membership in Plaintiffs' proposed class only requires a purchase of Defendants'

18    product, by any California resident, for any reason, and is open-ended.  (DE 75, par. 44).  The

19    class includes persons, without Article III standing, who purchased Defendants' products and

20    who were not harmed or deceived.  Plaintiff Algozer, for example, stated that persons would be

21    included in the class regardless of whether or not they believed HFCS was natural.  (DE 112,

22    T.170:4-6).  The proposed class would also include those who continued to buy the product for

23    years, those who "purchased" Defendants' products in the past, those who stopped purchasing

24

---

25    [8] In *Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011), the court stated that "no doubt a
plaintiff's injury must be 'concrete and particularized.'"  *Id.* at 1021.  However, the court
26    rejected the argument, which Defendants do not make here, that because no showing of actual
injury was required in a UCL case, Article III standing was lacking for unnamed class members.
27    *Id.*  Defendants are not contending that proof of actual injury by unnamed class members is
required but assert that pursuant to *Mazza*, which case was issued after *Stearns*, the class cannot
28    include members who have no Article III standing.  See also *Gonzales*, 2012 WL 10621 at *7.

---

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
- 12 -

and those who have no intention ever to purchase again.  The class would encompass those who purchased products for reasons totally unrelated to the labeling including those who purchased because of the Varied Reasons for Purchase.[9]

C.     **Plaintiffs Lack Typicality Because Unique Defenses Exist**

"Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of litigation."  *Hannon v. Data Products Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).  Plaintiffs have the burden to prove that they are individually capable of proving injury in fact, causation, and loss of money in order to have statutory standing under the UCL, FAL and CLRA to pursue these claims on behalf of the class. *In re Tobacco II*, 46 Cal. 4th 298, 327 (2009); *Garcia v. Sony Computer*, 2012 WL 1610615, *4 (N.D. Cal. May 8, 2012) (citations and quotations omitted);  *Cal. Civ. Code* 1780(a); and *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939, 946 (S.D. Cal. 2007).

Plaintiffs claim the reference to "Natural" is material to all consumers but fail to proffer any evidence in that regard.  Members of the proposed class are likely different from each other with regard to the factors driving their decisions to purchase Defendants' beverages.  When fact of injury cannot be established through class-wide proof, class certification is improper.  See *Sanchez v. Wal-Mart Stores, Inc.*, 2009 WL 1514435 *5 (E.D. Cal. May 28, 2009) recon. denied, 2009 WL 2971553 (Sept. 11, 2009) (where the court declined to certify the class based in part, on typicality, noting that "there are many individual factors that must be examined before determining whether a particular individual's behavior with respect to the stroller would have been materially changed by the presence of safety warnings.") see also *Gartin v. S&M Nutec LLC*, 245 F.R.D. 429, 434-35 (C.D. Cal. 2007)(plaintiff not typical where her experience differed in potentially outcome-determinative ways from other class members and where she

---

[9] Plaintiffs refer to *Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) and *Parkinson v. Huyndai Motor America*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) on ascertainability but both cases are distinguishable.  In *Parkinson*, it was objectively feasible to determine whether a class member purchased or leased the vehicle and submitted a claim.  *Id.* at 594. *Chavez* concerned a class for a finite period and arose from defendants' apparently undisputably false and uniformly spread representations that their products were "Made in New Mexico". *Chavez*, 268 F.R.D. at 368 and 379.

#1832984

sought different relief from the class); *Gonzalez v. Proctor & Gamble Co.,* 247 F.R.D. 616, 621-22 (S.D. Cal. 2007)(no typicality where plaintiff did not see the statements at issue and is subject to that unique defense).  Also, the reasonable consumer test will not apply if the issue of materiality or reliance "would vary from consumer to consumer." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009); *Picus v. Wal-Mart Stores, Inc*., 256 F.R.D. 651 (D. Nev. 2009) (because purchasing decisions "could be based on a variety of factors unrelated to the 'Made in the USA' label, such as price, convenience, or a pet's preference for the product, individualized issues as to reliance and damages exist").

Plaintiffs' testimony confirms the existence of the Varied Reasons for Purchase which defeats any claim of materiality.  Plaintiff Ries purchased Defendants' product for reasons other the "natural" representation including solely because of thirst.  (DE 112, Ex. H, T.33:22-25; T.100:20-22; Ex. N, Nos. 111 and 114).  She also conceded that some people would buy Defendants' products for a number of reasons including some of the Varied Reasons for Purchase.  (*Id.* T.150:15-152:2).  She further acknowledged that to know the reasons why anybody else in California purchased Defendants' products, you would have to ask them and to know whether a California consumer believed HFCS or citric acid is natural and whether they knew that they were ingredients in the product, you would have to inquire of them as well.  (*Id.* T.130: 6-16; T. 130:25-131:10; 152:4-14).  Plaintiff Algozer received the benefits of hydration, calories, taste and having her thirst quenched from Defendants' beverages.  (*Id.*, Ex. I, T.153:2-19).  There are certainly putative class members who would – and did- purchase Defendants' beverages for the Varied Reasons for Purchase, meaning that the natural reference was not at all material to them.[10]

Plaintiffs' FAC indicates that the representation of natural is not material because they allege that had they "not been deceived by the labels…they would not have purchased the products <u>or would have been willing to pay less for these products</u>." (DE 75, par. 41, emphasis

---

[10] In considering whether or not to establish a formal definition of "natural," the FDA noted that, "because of the widespread use of this term, and the evidence that consumers regard many uses of this term as **noninformative**, the agency would consider establishing a definition."  58 Fed. Reg. 2302, 2407 (January 6, 1993) (emphasis added).

added).  Because Plaintiffs allege that the labeling would not have precluded them from making the purchase and because materiality and reliance would vary from consumer to consumer, these elements are not subject to common proof.  See *Fine,* 2010 WL 3632469 (where plaintiff sought to certify a class that would likely include people with varying rationales behind their purchases − many who would purchase popcorn based on factors like flavor or brand − Plaintiff failed to establish that she is a typical representative of the class).  Further support on lack of materiality and lack of typicality can be found when one reviews the FDA's response to the referral of the question of whether HFCS qualifies as "Natural" (which referral arose from the claims asserted against Defendants here and in *Coyle)*.  (DE 47). In declining referral, the FDA stated, *inter alia*:

> Consumers currently receive some protection in the absence of a definition of "natural" because the Federal Food, Drug, and Cosmetic Act and FDA's implementing regulations require that all ingredients used in a food be declared on the food's label.  Thus, the label provides consumers with information to decide whether to purchase the food.  So, for the food product at issue in the above-captioned case, the consumer would know from the label whether the product contained HFCS.  (DE 54).

**Unique Defenses**

   **i)**      **No Causation, Injury or Loss Can be Shown** - Plaintiffs allege that the labeling of Defendants' products caused them to purchase, purchase more of or pay more for Defendants' beverages.  (DE 75, par. 7).  However, their deposition testimony subjects them to unique defenses against such claims that will be a major focus of the defense.

   Plaintiff Ries cannot prove reliance without establishing what specific product she purchased, what the particular label actually stated and proving that the label was the immediate cause for her purchase.  She could not testify with certainty as to the contents of the label upon which she bases her claim; she does not "remember the specific wording" on the label.  (DE 112, Ex. H, T.97:16-98:3; T.103:22-25).  She only recalls seeing the term "natural".  (*Id.*)  She does not recall whether the product said "all natural" or just "natural."  (*Id.*, T.29:19-24).  She also does not recall whether the beverage label on the product she purchased stated "all natural flavor" or "all natural tea."  (*Id.*, T.97:16-98:3).  Given the number of different named green tea products, which include fruit flavored teas and teas with fruit juice, her inability to identify the

beverage she bought by product name and to testify, with any reasonable certainty, as to any of the various words accompanying the all natural labeling she alleges was deceptive, subjects her to the unique defense that she cannot establish standing under the UCL, FAL and CLRA.  See *Dysthe v. Basic Research LLC,* 2011 WL 5868307, *4 (C.D. Cal. 2011) (where court entered summary judgment dismissing plaintiff's claims observing that the plaintiff did not have standing to bring a CLRA and UCL claim based upon a Relacore product that she never purchased.).

Plaintiff Algozer decided to sue after she spoke to her friend, Mr. Lilienstein, in March of 2009, who told her that he believed that Defendants were deceptively labeling their products, that they contained HFCS and that Defendants were being sued elsewhere.  (DE 112, Ex. R, No. 21; *Id.*, T.26:4-16; *Id.*, T.23:16-24:22; Ex. I, T:120:1-10).   When questioned about her March 2009 conversation with Mr. Lilienstein, she testified as follows:

> Q.   What do you remember him saying?
> A.   That –
>      [Objection omitted]
> A.   -- the label was misleading.
> Q.   Did he say why the label was misleading?
> A.   That there's high fructose corn syrup in the drink.
> Q.   That's what he said?
> A.   Yes.
>      (*Id.*, Ex. I, T.23:16-24:22).
>                                          *  *  *
> Q.   And did you have that – when did you form that opinion that HFCS was manmade?
> A.   On my own.
> Q.   When?
> A.   After that conversation.
> Q.   That conversation with Mr. Lilienstein?
> A.   Yes.
> Q.   So prior to that, you didn't have the opinion that HFCS was artificial, correct?
> A.   Correct.
> Q.   It was only after you spoke to Mr. Lilienstein that you formed that opinion?
> A.   Yes.
>      (*Id.*, T.34:15-35:2).
>                                          *  *  *

Q.    So prior to your conversation with Mr. Lilienstein that's reflected in an interrogatory answer, I believe 21 --

A.    Um-hum.

Q.    -- You didn't [have] any opinion whether or not HFCS was natural, right? [Objection omitted]

A.    Right.
      (*Id.*, T.35:15-22)

This testimony renders her claim of reliance, causation and injury atypical with the class because, had she known that HFCS was present as an ingredient when she made her purchases, that fact would not have impacted her purchasing decision. Her attempt to change that testimony is addressed below in response to Plaintiffs' assertions of adequacy. Like Plaintiff Ries, Plaintiff Algozer has no documents evidencing her purchases. (*Id.*, Ex. I, T.35:9-11; Ex. Q, Nos. 1-4). She also could not testify with any degree of certainty as to the purchase prices of Defendants' products. (*Id.*, Ex. I, T.104:2-6). The failure to document and substantiate the alleged purchases alone is fatal to both Plaintiffs' claims. *Weiner v. Snapple Beverage*, 2011 WL 196930 (S.D.N.Y. 1011)(holding that where plaintiffs lacked receipts and had only vague recollections of the location, dates and price of their purchases of Snapple products, there was insufficient reliable evidence that plaintiffs paid a premium for Snapple's products and the court granted Snapple's motion for summary judgment).

**ii)    The Named Plaintiffs Are Unable to Prove Entitlement to Monetary Relief** – Plaintiffs have not established that they, like the proposed class they seek to represent, purchased more or paid more for the AriZona beverages because of its "natural" label. With regard to the price, Plaintiff Ries paid "a couple of dollars" but could not be more specific as to the price and stated that she did not know the price she paid for the product. (DE 112, Ex. H, T.29:1-7; T.96:17-97:4). Likewise, Plaintiff Algozer could not testify with any degree of reasonable certainty as to the price(s) that she paid for Defendants' beverages. (*Id.*, T.109:2-10; *Id.*, Ex. I, T.35:9-11; Ex. Q, Nos. 1-4; *Id.*, Ex. I, T.104:2-6).

Restitution under the FAL, UCL and CLRA is limited to a return of measurable amounts which are wrongfully taken by means of an unfair business practice and these amounts "must be supported by substantial evidence." *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 63 (Cal. Ct. App. 2006); *see also Johnson v. GMRI*, 2007 WL 2009808 *4 (E.D. Cal. Jul. 6,

2007).  "The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution."  *In re Vioxx Cases*, 180 Cal. App. 4th at 131 (citation omitted); see also *In re Facebook, Inc., PPC Advertising Litig.*, 2012 WL 1253182, at *16 (N.D. Cal. Apr. 13, 2012) *quoting In re Google AdWords Litig.*, 2012 WL 28068 at *15 (N.D. Cal. Jan. 5, 2012).  ("[w]hile restitution need not be determined with exact precision, it must be based on a specific amount found owing and this measurable amount of restitution due must be supported by substantial evidence").

Defendants' products had value to Plaintiffs independent of labeling and Plaintiffs' testimony confirms that they purchased Defendants' products for reasons, including some of the Varied Reasons for Purchase.  (DE 112, Ex. H, T.33:22-25; Ex. N, Nos. 111 and 114; *Id.*, Ex. I, T.153:2-19).  Plaintiff Algozer bought Defendants' products, in part, because of the price which she found to be a better value than other beverages.  (*Id.*, T.64:14-65:7).  She cannot establish that she paid too much for or would have been willing to pay less for Defendants' beverages because she does not know the prices or the quantities she purchased.  (*Id.*, T.104:2-6; *Id.*, Ex. F, No. 2).  Plaintiffs claim that they purchased more of Defendants' drinks than they would have otherwise but Plaintiff Algozer could not state, with any degree of certainty, how much more, if any, Defendants' drinks she purchased instead of Odwalla, the only other potential beverage she could identify in that regard.  (*Id.*, Ex. I, T.132:2-133:11).   She also acknowledges that Defendants' products were priced less than Odwalla beverages.  (*Id.*, T.64:17-25; *Id.*, T.65:3-15).

Plaintiffs cannot demonstrate any difference in value exists between what they purchased and what the purported value of Defendants' products as labeled were because they have no evidence to prove this assertion.  No expert report on valuation has been produced and the deadline for Plaintiffs to do so has expired.[11]

**iii)**     **Plaintiff Ries's Lack of Familiarity with Products and Statute of Limitations**-
Plaintiff Ries's claim arises out of one purchase nearly four years prior to the complaint.  She does not know whether or not the product she purchased contained citric acid, an ingredient

---

[11] Plaintiffs also have not provided any expert report on whether HFCS or citric acid are artificial and cannot prove that assertion.

#1832984

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
- 18 -

claimed to be artificial.  She is also subject to a unique statute of limitations defense which renders her atypical.  See *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462-63 (S.D.Cal. 2007)(a putative class representative's claims fail to meet the typicality requirement when they are subject to a statute of limitations defense that differs from other class members).  The statute of limitations for FAL and CLRA claims is three years.  Cal. Civ. Code 1783 (three year statute of limitations for CLRA); Cal. Civ. Code. 338, 339; *Cnty. of Fresno v. Lehman*, 229 Cal. App.3d 340, 346 (1991)(applying three-year statute of limitations to an FAL claim).  This action was commenced on March 17, 2010, more than three years after the sole purchase that forms the basis for her claims rendering her ineligible to pursue any claim under the CLR or FAL. *Blackwell*, supra, 245 F.R.D. at 462-63.

**D.** **Plaintiffs are not Adequate Representatives of the Proposed Class**

**i)** **The Named Plaintiffs are in Conflict With the Proposed Class Due to Lack of Standing and Inability to Prove Qualifying Purchases** - Plaintiffs have no standing to seek injunctive relief and, as a result, their claims are in conflict with the claims of proposed class members.  Plaintiffs have little incentive to vigorously pursue injunctive relief for the class because they are no longer Defendants' customers. See *Ellis*, 657 F.3d at 986 (commenting that former employees of Costco who were allegedly denied promotion would be inadequate class representatives because as former employees, they did not have standing to seek injunctive relief and would not share an interest with class members whose primary goal was to obtain injunctive relief).

Plaintiffs cannot document any of their purchases, cannot testify as to the prices they paid and offered vague testimony about the circumstances of their alleged purchases.  Because the existence or non-existence of a qualifying purchase is so critical to Plaintiffs' motion, the failure of proofs in this regard are properly considered when addressing adequacy.  See *Coyle v. Hornell*, Case No. 08-2797, 2011 WL 2147218 (D.N.J. May 26, 2011); recon. denied in part and granted in part on other grounds, 2011 WL 3859731 at *5-6 (D.N.J. Aug. 30, 2011) (where the court denied class certification based on the inadequacy of the named plaintiff finding that the plaintiff's factual inconsistencies regarding the date of her qualifying purchase of an Arizona

#1832984

DEFENDANTS' CORRECTED MEMORADUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
- 19 -

product raised sufficiently grave credibility problems so as to prevent her from serving as an adequate class representative, and the court stated "to certify a class with Ms. Coyle as the sole representative, under these highly questionable circumstances, risks the distinct possibility that the class could fail in its claim because its representative will be unable to prove she made a qualifying purchase.  This would not be fair to class members who may individually have claims").

This is a matter where the Plaintiffs seek to represent virtually every person in California who ever purchased Defendants' products, or will purchase such products, which include a wide array of iced teas, diet drinks, no-diet drinks, fruit flavored beverages and smoothie mixes.  (DE 75, pgs 2-3).  However, Plaintiff Ries only purchased one product, a green tea.  (DE 112, Ex. H, T.28:1-19).   Plaintiff Algozer recalls purchasing Defendants' "All Natural Green Tea with Ginseng and Honey," a lemon tea and a peach tea.  (*Id.*, Ex. I, T.37:2-8).  Plaintiffs nevertheless seek to represent people who purchased both diet products (without HFCS) and sweetened beverages (with HFCS), even though they did not purchase the diet products or the smoothie mixes listed in the FAC.  Their purchasing experiences are so limited as to place them in conflict with the class they seek to represent.  See *Dysthe*, 2011 WL 5868307 at *4.

**ii)**    **The Order Entered August 25, 2011 Renders Plaintiffs' Claims in Conflict With the Class** - Plaintiffs argue that their claims include alleged false statements on Defendants' website and in other promotional materials.  However, claims based upon alleged false marketing, other than those claims based upon Defendants' labels, were dismissed by the Court by Order dated August 25, 2011.  (DE 95).  Regardless, Plaintiffs never ever viewed Defendants' website and Plaintiff Algozer acknowledged that the case was "just about the labeling."  (DE 112, Exs. F and G, Nos. 27, respectively; Ex I, T.170:7 -12).  Plaintiffs cannot pursue claims based on advertising and promotional materials, other than beverage labels, that they never saw.  Also, the order barring Plaintiffs for pursuing such claims bar renders their claims in conflict with those of  the putative class who were allegedly deceived by the website or other alleged acts of marketing aside from labeling.

   **iii)**  **Plaintiffs' Relationship with Mr. Lilienstein Places Them in Conflict**-Further

defeating adequacy, Plaintiffs have a "friendly" relationship with counsel and appear to have a

motivation to appease counsel at the expense of class members.[12] (*Id.*, T.24:17-26:8; *Id.*, Ex. R,

No. 21; T.23:16-24:22; T.26:4-16 and T.120:1-10). See *London v. Wal-Mart Stores, Inc.* 340

F.3d 1246, 1255 (11th Cir. 2003)(finding that "long-standing personal friendship with counsel

casts doubt on plaintiff's ability to place interest of the class above that of class counsel").

Plaintiffs' relationship with counsel raises adequacy issues to the extent that Plaintiffs have

simply lent their names as parties to a lawsuit which appears to be lawyer driven. Plaintiffs were

apparently encouraged to bring this lawsuit after a conversation with their friend, and eventual

attorney in this case, about Defendants' beverages.

   Plaintiff Algozer's attempt to change her deposition testimony, on a key issue in this

case, is evidence of lack of adequacy. She testified, three times, that she formed the opinion that

HFCS was not natural after a conversation with Mr. Lilienstein in 2009. (DE 112, Ex. I,

T.23:16-24:22, T.34:15-35:2; T.35:15-22). Prior to that conversation, she had no opinion

whether or not HFCS was natural. (*Id.*) She also stated that, after her conversation with

Mr. Lilienstein, she stopped buying all iced teas because she thought the product would have

HFCS. (*Id.*, T.43:19-44:6). After providing that testimony, Mr. Lilienstein inquired whether a

break could be taken. (*Id.*, T.44:7).

   Upon returning from that break, she acknowledged having had a discussion with counsel

during the break. (*Id.*, T.44:23-45:4). She then attempted to change her testimony on the critical

issue of when she formed the opinion that HFCS was artificial by claiming that "since college,"

she had formed the opinion that HFCS was artificial. (*Id.*, T.44:13-21). No reasonable

explanation was provided as to how she could have mistakenly testified, repeatedly, that Mr.

Lilienstein was the source for her understanding about HFCS in 2009. The testimony did not

"correct" Plaintiff Algozer's prior testimony (as characterized by her counsel) but instead

directly contradicted her prior testimony on a critical element of her claim. Whether her changed

---

[12] Plaintiff Algozer stated that Mr. Lilienstein has been her friend for over 20 years. (DE 112, T. 20:5-10).

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
- 21 -

#1832984

testimony is a product of an attempt to help her friend/attorney in this case and/or is a sham is likely to be a major focus of this litigation.  See *Bank of Illinois v. Allied Safety Restraint Systems*, 75 F.3d 1162, 1171 (7th Cir. 1996).  That issue places her in a further antagonistic position toward the class she seeks to represent.[13]

Courts have denied class certification based on the lack of credibility of the proposed class representatives where class representatives "are so lacking in credibility that they are likely to harm their case."  *In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 47 (E.D.N.Y. 1997).  Where a plaintiff's testimony on an "issue critical to the cause of action was "subject to sharp attack," that deficiency has also rendered the plaintiff an inadequate class representative. *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983).

Plaintiff Ries's involvement in this suit also begins with an invitation from her friend, Mr. Lilienstein, to his home where he brought up the topic of litigation against Defendants claiming that he believed Defendants were "ripping people off". (DE 112, Ex. H, T.44:24-17). Absent class members could conceivably harbor justified concerns about having their claims tainted by the manner in which the Plaintiffs were apparently encouraged to bring suit because those circumstances place Plaintiffs in conflict with the proposed class.  "Such a 'cart before the horse' approach to litigation is not the proper mechanism for the vindication of legal rights." *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777 at *2 (N.D. Cal. April 25, 2007).[14]

---

[13] Regardless of whether the changed testimony is a sham or not, her inability to recall such important facts illustrates the difficulty encountered in attempting to ascertain the class proposed.  See *Solo*, 2009 WL 4287706. In *Solo*, one of the plaintiffs changed her testimony after a break on key issues in the case – when she purchased the product at issue and the amount of the product purchased.  *Id*. at *6.  Another plaintiff provided three inconsistent versions of when she purchased and discarded the product.  *Id*. at *7.  The court observed: "With the named plaintiffs' documented memory difficulties in mind, the court finds that determining the membership of plaintiffs' proposed class would require countless factual inquiries into the individual circumstances of potential class members, most of whom will have long ago forgotten the details relevant to plaintiffs' allegations.  Moreover, it is hard to fathom how thousands of unnamed putative class members could possibly provide credible testimony about their class membership more than three years after the fact when the proposed class representatives themselves have presented conflicting testimony that changed over time."  [*Id*.]

[14] Defendants dispute the assertion that counsel is vigorously prosecuting this case.  (DE 117, p. 13).  Plaintiff Ries testified that she did not speak to or meet proposed class counsel until the day before her deposition.  (DE 112, T.22:3-23:1).  Likewise, Plaintiff Algozer stated that she did not

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
- 22 -

#1832984

1

### E.      No Basis Exists to Grant 23(b)(2) Certification

2

Rule 23(b)(2) "does not authorize class certification when each class member would be

3

entitled to an individualized award of monetary damages." *Wal–Mart,* 131 S.Ct. at 2557.

4

Certification of an injunction-only class under Rule 23(b)(2) is not proper where monetary relief

5

sought by Plaintiffs is not incidental to the injunctive or declaratory relief.  *Wal-Mart*, 131 S. Ct.

6

at 2557.[15]  *Gonzalez*, 247 F.R.D. at 626 (denying (b)(2) certification involving CLRA, UCL and

7

FAL claims).  The Ninth Circuit has since noted that "[a]"lthough we have previously held that

8

in "Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are

9

merely incidental to the litigation," *Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 860 (9th

10

Cir.2001), this standard has been called into doubt by the Supreme Court. *Ellis,* 657 F.3d at 986.

11

The monetary relief sought here is highly individualized, not incidental to the injunctive

12

relief sought and would be based, in part, upon the prices at which Defendants' products are sold

13

at a retail level, which vary widely.  (Opp. Dec., Ex. F, ¶6).  Individualized inquiries would be

14

necessary regarding entitlement to and amount of monetary relief for each class member.

15

"Because the restitution amount is dependent on the particular purchases made and the amounts

16

paid by direct purchases, paid monetary relief will dictate the key procedures utilized in this case

17

and require individualized inquiries and hearings."  *In re Flash Memory Antitrust Litig*, 2011

18

WL 1301527 at *7 (N.D. Cal. Mar. 31, 2007).  Certification of such a class would be

19

unmanageable.

20

21

_____

22

speak to or meet proposed class counsel until a few days before her deposition.  (*Id.*, T. 18:15-

23

19:20).   Interrogatories, notice to produce documents or requests for admissions were not
propounded upon Defendants in this case until July 31, 2012, four days after Defendants moved

24

for summary judgment and more than two years after this action was initiated.  Plaintiffs have
not produced any expert reports and cannot prove the claim that HFCS and/or citric acid are

25

artificial.

26

[15] Superficial attempts to structure claims as primarily one for injunctive relief have been

27

rejected.  See *Cholakyan*, 281 F.R.D. 534, 599-600 (C.D. Cal. 2012) (holding that no single
declaration or injunction would benefit the class as a whole and that the request for an injunction

28

to create a reimbursement program would have the same effect as a claim for monetary relief.)

1    While 23(b)(2) class actions have no predominance or superiority requirements, it is well

2    established that the class claims must be cohesive.  *Barnes v. American Tobacco Co.*, 161 F.3d

3    127, 142-433 (3d Cir. 1998); *Lewallen v. Medtronic USA Inc.*, 2002 WL 31300899 *3 (N.D. Cal.

4    Aug. 28, 2002)("cohesiveness is lacking where individual issues predominate"); *Sweet v. Pfizer*,

5    232 F.R.D. 360 (C.D. Cal. 2005)("a class under Rule 23(b)(2) must not be overrun with

6    individual issues).  Plaintiffs have not demonstrated that any cohesive class exists and refer to

7    the proposed class is "a yet unascertained group." (DE 117, p. 15).  The proposed class includes

8    diverse persons who purchased a variety of Defendants' products, at a number of different

9    prices, for any number of reasons including the Varied Reasons for Purchase. The FAC also

10   includes allegations of fraud and/or deception which raise individualized issues of reliance and

11   causation defeating any claim of cohesiveness.  (DE 75, ¶¶6, 38, 40, 43, 48(h), 57-60, 70 and 95-

12   99) [16]

13   Rule 23(b)(2) is appropriate when: "final injunctive relief or corresponding declaratory

14   relief is appropriate respecting the class as a whole." *Wal-Mart,* 131 S. Ct. at 2557.  Plaintiffs

15   have not shown how one indivisible injunction could provide final relief for the entire class.

16   There is also the issue of prejudice because if certification is somehow granted, all class

17   members will be bound by the outcome because, like any other judgment of this Court, a final

18   decision in a (b)(2) class is *res judicata* as to the entire class.  *See Perlstein v. Transamerica*

19   *Occidental Life Ins. Co.*, 2008 WL 2837185 at *4 (D.N.J. July 21, 2008); 5 *Newburg on Class*

20   *Actions* § 16.25 (4th Ed.) ("As a general rule, a judgment in a class action will bind the absent

21   class members of the class described in that judgment with respect to the common issues

22   adjudicated.")  Class certification under Rule 23(b)(2) is also not appropriate because the relief

23   Plaintiffs seek is available to them and the putative class members in an individual lawsuit

24

---

25   [16] Plaintiffs' motion states that class members are "reasonable California resident consumers who
26   (1) purchased the offending …products; (2) paid the requisite price, (3) **trusted** the claims stated
     and represented on the front of the ..labels… and (4) received a product that was not '100%
27   Natural'". (DE 117, p. 11, emphasis added).  Such claims would require a class member to show
     individual reliance by proving that one trusted (*i.e.*, relied upon) the statement made on the front
28   of the label.

---

#1832984

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
- 24 -

without regard to whether a class is certified.  *Suever v. Connell*, 2007 WL 3151964 (N.D.Cal. 2007)(noting that class certification for prospective injunctive relief was not necessary to vindicate the rights claimed by plaintiffs for themselves and the putative class); see also *Zepeda v. INS*, 753 F.2d 719 n. 1(9th Cir.1983)(acknowledging that in some cases plaintiffs can seek relief that necessarily will benefit others even without class certification).

## F.   Lack of Commonality

"What matters to class certification. . .is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 131 S.Ct. at 2551 (internal quotation marks and citations omitted).  Plaintiffs allege common issues which parrot claims in the complaint and ignore the *Wal-Mart* test.  (DE 117, p. 9).  As noted in *Wal-Mart,* "[r]eciting these questions is not sufficient to obtain class certification." *Id.*, at 2551.  By way of example only, Plaintiffs argue that Defendants' "alleged unjust enrichment involves a determination which will apply equally to all class members."  Prices of Defendants' products vary, from store to store, and Plaintiffs have not addressed how they propose to prove their individual claims for monetary relief on a class-wide basis through common proofs.

Also, contrary to Plaintiffs claims, the labels at issue are not uniform and state "100% All Natural," "100% Natural", "All Natural," "All Natural Flavors," "Natural Flavors," "100% All Natural Tea," "100% Natural Tea" and/or "All Natural Tonic."  (DE 112, Exs. B and C). Plaintiff Algozer testified that labeling a product "100% Natural Tea" was not deceptive.  (*Id.*, Ex. I, T.112:5-12).  At one point, she stated that the reference to "All Natural Flavor" was misleading (*Id.* T. 112:13-18) but then stated that she was not contending that Defendants' products labeled "All Natural Flavor" are improperly labeled.  (*Id.*, T113:15- 19).  Some of the products contain HFCS, some do not.  Plaintiffs also claim that a Black & White Iced Tea is falsely labeled but that product does not contain citric acid or HFCS.  (Oppo. Dec., Ex. I). [17]

---

[17] Plaintiffs cite to Rule 23(c)(4) but do not explain why they contend the rule applies. Since the purpose of Rule 23(c)(4) is to give courts the discretion necessary to advance judicial economy, courts have refused to apply Rule 23(c)(4) when such application would not significantly

1

**CONCLUSION**

2        For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs'

3    motion for class certification.

4    DATED:  September 7, 2012              Respectfully submitted,

5                                          McELROY DEUTSCH MULVANEY &
                                           CARPENTER LLP
6

7                                          By: _/s/Robert P. Donovan_____
                                               Robert P. Donovan (Appearing *pro hac vice*)
8

9                                          SEDGWICK LLP

10

11                                         By: _/s/Kevin J. Dunne_____
                                               Kevin J. Dunne (Bar No. 40030)
12

13                                         Attorneys for Defendants
                                           Arizona Beverages USA LLC, Hornell Brewing
14                                         Co., Inc., d/b/a Ferolito Vultaggio & Sons, Inc.
                                           and Beverage Marketing USA, Inc.
15

16

17

18

19

20

21

22

23

24

25

26    advance the litigation.  *In re Paxil Litig*., 212 F.R.D. 539, 543 (C.D. Cal. 2003); *Moeller v. Taco Bell Corp*., 2012 WL 3070863 (N.D. Cal. 2012)("issue certification should never be undertaken lightly, or used to 'fix' manifest Rule 23(b)(3) predominance problems presented where key issues going to liability require individualized proof").  For all the reasons set forth in this opposition, partial certification will not be significantly advanced and the request for partial certification should be denied.

27

28

#1832984

DEFENDANTS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
- 26 -