McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
ROBERT P. DONOVAN (Appearing *Pro Hac Vice*)
rdonovan@mdmc-law.com
LEWIS H. GOLDFARB (Appearing *Pro Hac Vice*)
lgoldfarb@mdmc-law.com
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone:  (973) 622-7711
Facsimile:  (973) 622-5314

SEDGWICK LLP
KEVIN J. DUNNE (Bar No. 40030)
kevin.dunne@sedgwicklaw.com
333 Bush Street, 30th Floor
San Francisco, California 94104
Telephone:  (415) 781-7900
Facsimile:  (415) 781-2635

Attorneys for Defendants
ARIZONA BEVERAGES USA LLC, HORNELL BREWING COMPANY, INC., d/b/a
FEROLITO, VULTAGGIO & SONS, INC. and BEVERAGE MARKETING USA, INC.

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN RIES and SERENA ALGOZER, Individuals on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARIZONA BEVERAGES USA LLC, HORNELL BREWING COMPANY, INC., BEVERAGE MARKETING USA, INC., and FEROLITO, VULTAGGIO & SONS, INC.,<br><br>Defendants. | CASE NO. 3:10-cv-01139-RS<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>JUDGE:  Honorable Richard Seeborg, U.S.D.J.<br>CTRM:    3<br>DATE:    September 27, 2012<br>TIME:    1:30 p.m. |

# TABLE OF CONTENTS

INTRODUCTORY ARGUMENT ............................................................................................... 1

LEGAL ARGUMENT ........................................................................................................ 2

I.    Plaintiffs Rely Upon Unverified, Unauthenticated Documents, Without
Any Foundation, and Self-Serving Sham Declarations That Do Not
Serve as an Evidentiary Basis to Oppose the Motion for
Summary Judgment .......................................................................................... 2

    Plaintiffs' References to Unverified Websites, Surveys and Reports,
Without Any Foundation, Are Not Admissible Evidence .................................. 3

    Plaintiffs' Reliance Upon Sham Affidavits.................................................... 5

II.    Plaintiffs Do Not Set Forth Specific Facts Showing That They
Suffered Injury in Fact as a Result of Defendants' Alleged Wrongful Acts ..................... 7

III.    Plaintiffs Have No Facts to Prove Entitlement to Restitution........................................... 11

IV.    Plaintiffs Have No Facts to Prove Entitlement to Injunctive Relief
Because They Cannot Prove the Element of Redressability ............................... 12

V.    Defendants' Motion For Summary Judgment Necessarily Seeks a
Ruling on the Merits and Plaintiffs' Request That the Court Hold That
Motion in Abeyance Pending Completion of Discovery, is Improper.............................. 14

VI.    Plaintiff Ries Offers No Facts to Dispute That Her CLRA and FAL
Claims are Barred by the Statute of Limitations ................................................ 15

CONCLUSION ........................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C ASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................................ 2

*Ashton-Tate Corp. v. Ross,*
916 F.2d 516 (9th Cir. 1990) .................................................................................................. 14

*Biotics Research Corp. v. Heckler,*
710 F.2d 1375 (9th Cir. 1983) .................................................................................................. 4

*Braunstein v. Arizona Dept. of Transp., et al.,*
2012 U.S. App. LEXIS 13150 (9th cir. 2012) .......................................................................... 13

*Bueler v. Sears, Roebuck and Co.,*
*2012 WL 1657622* (E.D. Cal. May 10, 2012) ............................................................................ 3

*Campion v. Old Republic Home Protection Co.,*
2012 WL 992104 (S.D. Cal. March 23, 2012) ................................................................... 13, 14

*Collins v. United States,*
269 F.2d 745 (9th Cir.1959) ....................................................................................................... 5

*Coyle v. Hornell Brewing Co., Inc.,*
2011 WL 385973 (D.N.J. Aug. 30, 2011) ................................................................................... 7

*Daghlian v. DeVry University,*
2007 WL 5625508 (C.D. Cal. Dec. 10, 2007) ........................................................................ 8, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) .................................................................................................................... 4

*Dysthe v. Basic Research LLC,*
2011 WL 5868307 (C.D. Cal. 2011) ........................................................................................... 9

*Eco Star Satellite Corp. v. NDS Group PLC,*
2008 WL 4596644 (C.D. Cal. Oct. 15, 2008) ........................................................................... 12

*General Bedding Corp. v. Echevarria,*
947 F.2d 1395 (9th Cir. 1991) ................................................................................................. 15

*Gonzalez v. Drew Industries,*
2010 WL 3894791 (C.D. Cal. Sep. 30, 2010) ........................................................................... 11

*Gonzalez v. Proctor & Gamble Co.,*
247 F.R.D. 616 (S.D. Cal. 2007) ............................................................................................... 11

#1836363

*Guido v. Loreal, USA, Inc.,*
2012 WL 1616912 (C.D. Cal. May 7, 2012) ................................................................... 12, 13

*Hairston v. South Beach Beverage Co., Inc.,*
2012 WL 1893818 (C.D. Cal. 2012) (*Id.*) ................................................................. 8

*Hangarter v. Provident Life & Acc. Ins. Co.,*
373 F.3d (9th Cir. 2004) ................................................................. 13

*Hitt v. Hornell Brewing Co.,*
2009 WL 4261192 (S.D. Cal. Nov. 24, 2009) ................................................................. 15

*In Re Vioxx Class Cases,*
180 Cal. App. 4th 116 (Cal. Ct. App. 2010) ................................................................. 11

*Keilholtz v. Lennox Hearth Products, Inc.,*
268 F.R.D. 330 (N.D. Cal. 2010) ................................................................. 12, 13

*Orr v. Bank of America, NT & SA,*
285 F.3d 764 (9th Cir. 2002) ................................................................. 3

*Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers,*
971 F.2d 347 (9th Cir.1987) ................................................................. 2

*Scamihorn v. General Truck Drivers,*
282 F.3d 1078 (9th Cir. 2002) ................................................................. 5

*Skinned Medica, Inc. v. Histogen Inc.,*
2012 WL 1409560 (S.D. Cal. Apr. 23, 2012) ................................................................. 12

*Stearns v. Ticketmaster Corp.,*
655 F3d 1013 (9th Cir. 2011) ................................................................. 11

*Villiarimo v. Aloha Island Air, Inc.,*
281 F.3d 1054 (9th Cir. 2002) ................................................................. 3

*Walker v. Woodford,*
454 F.Supp.2d 1007 (S.D. Cal. 2006) ................................................................. 5

*Weiner v. Snapple Beverage,*
2011 WL 196930 (S.D.N.Y. 2011) ................................................................. 12

*Women's Emergency Network v. Dickinson,*
214 F.Supp.2d 1308 (S.D. Fla. 2002) ................................................................. 13

*Yeager v. Bowlin,*
2012 WL 3892903 (9th Cir. 2012) ................................................................. 5, 7

#1836363

**RULES**

Fed.R.Civ.P. 56 ................................................................................................................ passim

Fed.R.Civ.Pro. 41 ................................................................................................................... 15

*Fed. R. Evid.* 201 ..................................................................................................................... 5

*Fed. R. Evid.* 403 ..................................................................................................................... 4

*Fed. R. Evid.* 602 ..................................................................................................................... 4

*Fed. R. Evid.* 901(a) ............................................................................................................... 3

Rule 26 ...................................................................................................................................... 4

1

**INTRODUCTORY ARGUMENT**

2

In opposing Defendants' motion for summary judgment, Plaintiff Ries offers no specific

3

facts to dispute that: (1) her claim arises from one single purchase in the summer of 2006; (2) she

4

does not know the price of the product she bought and has no documents evidencing that

5

purchase; (3) she cannot testify with certainty as to the statement on the label other than the term

6

"Natural"; (4) many of Defendants' products, that are the subject of her suit, have labels stating

7

"100% All Natural," "100% Natural", "All Natural," "All Natural Flavors," "Natural Flavors,"

8

"100% All Natural Tea," "100% Natural Tea" and/or "All Natural Tonic"; (5) she testified that

9

she purchased the product without reading the label, because of impulse and solely because she

10

was thirsty; (6) the beverage had value to her independent of the natural labeling including taste

11

and the attractiveness of the can and/or bottle; (7) as to that one particular purchase in the

12

summer of 2006, she felt deceived because of the presence of HFCS, which she learned was

13

present by reading the statement of ingredients immediately after purchase; and (8) after that

14

purchase, she stopped purchasing Defendants' beverages.

15

Likewise, Plaintiff Algozer shows no specific facts to dispute that: (1) she did not form

16

the belief that HFCS was artificial until she spoke to her friend and eventual attorney in this case,

17

David Lilienstein, in March of 2009; (2) she made purchases of Defendants' products and saw

18

that the product contained HFCS; (3) she does not know the price of the products she bought and

19

has no documents proving purchase; (4) Defendants' beverages had value to her independent of

20

labeling including hydration, taste, the quenching of thirst and the calories; (5) she purchased

21

Defendants' products because, among other reasons, the price, healthfulness, the taste, the flavor

22

and the attractiveness of the cans and plastic bottles; (6) as to price, she found the price of

23

Defendants' drinks more reasonably priced than other beverages she bought; and (7) after her

24

March 2009 conversation with Mr. Lilienstein, she stopped purchasing Defendants' products.

25

Plaintiffs cannot plausibly prove that they suffered any injury in fact as a result of

26

Defendants' "All Natural" labels. They also have not demonstrated facts sufficient to prove

27

restitution. Restitution is distinct from statutory standing and requires Plaintiffs to show that

28

there was a difference in value between what they purchased and what they claim is the value of

a product labeled "Natural." Because Plaintiffs have offered no evidence proving that any difference in value exists, they cannot obtain restitution which is the only form of monetary relief which they would be entitled to in this case.

As to their claim for injunctive relief, they have not set forth facts demonstrating that they are likely to suffer future injury from Defendants' conduct. They stopped purchasing Defendants' products years ago and know the contents of Defendants' beverages. Because they cannot prove a substantive element necessary to obtain prospective injunctive relief, redressability, their claims for injunctive relief under the UCL, FAL and CLRA should be dismissed.

There is no dispute that the three year statute of limitations applies to the CLRA and FAL claims. Plaintiff Ries does not dispute that she formed the opinion HFCS was artificial years before she made her alleged purchase in the summer of 2006. She testified that, at that time of that purchase, she felt deceived and then stopped buying Defendants' beverages. Plaintiff Ries has the burden to prove that the discovery rule applies but has never pled or shown any of the facts necessary to have that rule apply. There is no dispute that Plaintiff Ries filed suit on March 13, 2010, three years after her last purchase, barring her suit under the CLRA and FAL.

## LEGAL ARGUMENT

**I.** **Plaintiffs Rely Upon Unverified, Unauthenticated Documents, Without Any Foundation, and Self-Serving Sham Declarations That Do Not Serve as an Evidentiary Basis to Oppose the Motion For Summary Judgment.**

In attempting to establish the existence of a factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers,* 971 F.2d 347, 355 (9th Cir.1987)

Authentication is a condition precedent to admissibility and is satisfied by "evidence

1    sufficient to support a finding that the matter in question is what its proponent claims." *Bueler v.*

2    *Sears, Roebuck and Co., 2012 WL 1657622* (E.D. Cal. May 10, 2012) *citing Orr v. Bank of*

3    *America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Self-serving declarations and affidavits,

4    without more, cannot create a disputed material fact.  *Id.* citing *Villiarimo v. Aloha Island Air,*

5    *Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)("The Ninth Circuit has refused to find a 'genuine issue'

6    where the only evidence presented is 'uncorroborated and self-serving' testimony.")  Where the

7    only evidence of a material dispute is plaintiff's own declaration containing statements outside

8    her direct knowledge, the court need not find a genuine issue of material fact.  *Id.* (citations

9    omitted).  The court will not consider inadmissible hearsay in an affidavit to support or defeat

10   summary judgment.  *Id.* (citations omitted).  Finally, if documentary evidence is cited as the

11   source of a factual allegation, the documents must be attached to the affidavit or declaration.  *Id.*

12   **<u>Plaintiffs' References to Unverified Websites, Surveys and Reports, Without Any</u>**

13   **<u>Foundation, Are Not Admissible Evidence -</u>** In the "Statement of Facts" section, Plaintiffs

14   make unfounded factual contentions, without any evidentiary support.  (DE 125, pages 1-3 and

15   footnotes 1-4).  They improperly refer to and rely upon a "survey", websites and trade reports to

16   claim that the term "Natural" is material to consumers and that a patented process cannot be

17   natural.[1]  (*Id.*).  Plaintiffs did not submit any evidence setting forth any foundation that any of

18   these documents, or the information referred to on websites, constitute information that is

19   regularly and generally accepted in the scientific community and the time to submit such

20   evidence has long expired.  These surveys, trade reports and websites are unverified hearsay and

21   lack any evidentiary foundation under *Fed. R. Evid.* 901(a).  The information is also not

22   submitted based upon any personal knowledge in violation of *Fed. R. Evid.* 602.

23
24   [1] Under the scheduling order entered December 11, 2011, Plaintiffs were ordered to disclose all
     experts by July 6, 2012 and to serve all expert reports by August 3, 2012.  (DE 110).  Plaintiffs
25   never disclosed any expert reports, never served any expert reports and cannot prove HFCS or
     citric acid are artificial.  Defendants have filed and served documents and an expert report from a
26   food scientist that prove that HFCS and citric acid are natural.  (DE 132, Exs. A-E and H).  In the
     expert report, Dr. Thomas Montville explains why Plaintiffs' contention that a patented process
27   cannot be natural is wrong and refers to many natural processes that have been patented, like the
     processes for natural antioxidants, the composition of natural sweeteners and the process to
28   produce natural flavors.  (DE 132, Ex. H, p. 3).

#1836363

1     Plaintiffs are not contending that Defendants' labeling violates any federal law,

2    regulation, rule and/or policy. (DE 112, Exs. D and E, Nos. 8, respectively).  Plaintiffs

3    nevertheless attach, to a request for judicial notice, a May 30, 2012 letter from the U.S. Food &

4    Drug Administration ("FDA") responding to a petition by the Corn Refiners Association (DE

5    126, Exhibit 1, "Petition Letter"), an August 16, 2001 letter from the FDA to Oak Tree Farm

6    Dairy, Inc. (*Id.*, Exhibit 2) and an August 29, 2001 letter from the FDA to Herzel Canning

7    Company (*Id.*, documents annexed as Exhibit 2 shall be collectively referred to as the "FDA

8    Letters").  Plaintiffs refer to the Petition Letter and the FDA letters claiming that they prove

9    HFCS and/or citric acid are not natural and that Defendants' labels are misleading.  (DE 125, p.

10    15).

11     However, the Petition Letter and FDA Letters do not stand for the assertions Plaintiffs

12    proffer and lack relevance and/or are more prejudicial than probative under *Fed. R. Evid.* 403.

13    The Petition Letter addresses a denial of a petition by the Corn Refiners Association to change

14    the name of HFCS to corn sugar.  The issue of whether HFCS is natural was not addressed in the

15    Petition Letter.  The FDA Letters do not evaluate Defendants' ingredients and do not represent

16    binding agency action.  See *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1377 (9th Cir.

17    1983); (also see DE 54 commenting on non-binding nature of similar letters).  These letters,

18    offered as evidence that Defendants' ingredients are somehow artificial, or that Defendants'

19    labels are misleading, fail the requirements of admissibility under Rule 26, *Fed. R. Evid.* 702 and

20    *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[2]

21     Defendants also object to Plaintiffs' request that this Court take judicial notice of the

22    Petition Letter and FDA Letters.  As was stated, in a prior decision in this case, where

23    Defendants sought judicial notice of judicial decisions, "[w]hile a court may take judicial notice

24    of public documents including judicial proceedings, *Fed. R. Evid.* 201, a court may not take

---

[2] Defendants have referred to another FDA letter in connection with this motion (*i.e.*, the September 16, 2010 letter wherein the FDA officially responded to the court order referring this case for administrative action to determine whether HFCS qualifies as natural, DE 54).  That letter arose from an order of referral in this case and related directly to a request for administrative action.  Unlike the letters relied upon by Plaintiffs, that letter is relevant here and binding on the parties.

#1836363

1    judicial notice of findings of fact from another case." (DE 71, p. 3; citing to *Walker v.*

2    *Woodford*, 454 F.Supp.2d 1007, 1022 (S.D. Cal. 2006). Plaintiffs are seeking to have the

3    Petition Letter and FDA Letters noticed so as to refer to the contents of the letters as purported

4    "facts" regarding the alleged "Natural" status of Defendants' ingredients and the alleged

5    misleading nature of their labels. (DE 125, p. 15). That is improper under *Fed. R. Evid.* 201 and

6    pursuant to the prior rulings of this Court. (DE 71). To the extent that Plaintiffs request that the

7    Court consider the Petition Letter and the FDA Letters, beyond the fact that those letters exist,

8    their request for judicial notice should be denied.

9        **Plaintiffs' Reliance upon Sham Affidavits** – "The general rule in the Ninth Circuit is

10   that a party cannot create an issue of fact by an affidavit contradicting his prior deposition

11   testimony." *Yeager v. Bowlin*, 2012 WL 3892903 *2 (9th Cir. 2012) (citations and quotations

12   omitted). This sham affidavit rule prevents "a party who has been examined at length on

13   deposition" from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his

14   own prior testimony," which "would greatly diminish the utility of summary judgment as a

15   procedure for screening out sham issues of fact." *Id.*

16       In *Yeager,* the Ninth Circuit referred to cases where a district court found a declaration to

17   be a sham when it contained facts that the affiant previously testified he could not remember. *Id.*

18   citing *Scamihorn v. General Truck Drivers*, 282 F.3d 1078, 1085 n. 7 (9th Cir. 2002); *Collins v.*

19   *United States,* 269 F.2d 745, 750 (9th Cir.1959) and stated that "[t]he utility of the sham affidavit

20   rule to maintain summary judgment as integral to the federal rules, *Van Asdale,* 577 F.3d at 998,

21   would be undermined if we were to hold that the rule did not apply in this case." *Id*. The court

22   cautioned that newly-remembered facts, or new facts, accompanied by a reasonable explanation,

23   should not ordinarily lead to the striking of a declaration as a sham. *Id.*

24       Plaintiffs rely upon their own declarations in opposing the motion for summary

25   judgment. (DE 125-6, Exs, C and D, "Ries and Algozer Declarations"). The Ries and Algozer

26   Declarations are sham affidavits. In Plaintiff Ries's declaration, she states "[i]n this lawsuit I am

27   seeking to be paid back a minimum of $2 for my **purchases** of Arizona "All-Natural/100%

28   Natural Beverages". (*Id.*, Ex C, emphasis added). The declaration is a self-serving sham because

the statement contradicts prior sworn testimony that her claim arises out of one purchase only. (DE 112, Ex. H; T.28:1-3; T.62:22-63:5; *Id.*, T.97:7-9).  To the extent that the declaration is offered to prove price, the declaration is a further sham because she testified in deposition that she did not know the price she paid for the product.  (*Id.*, T.29:1-7).  Also, the statement contradicts prior sworn testimony where, in response to the question about the amount of restitution sought, plaintiff Reis stated, under oath that "I do not know how to calculate the appropriate amount of restitution to me and the putative class".  [*Id.*, Ex F, No. 11].

If Plaintiff Ries's declaration is offered to show that she identifies Defendants' beverages as being labeled "All-Natural/100% Natural Beverages," that portion of the declaration is a sham as well because she testified in deposition that she does not remember the specific wording of the label.  (*Id.*, Ex. H, T.97:16-98:3; T.103:22-25).  She only recalled seeing the term "natural" on the label.  (*Id.*)  She testified not recalling whether the product said "all natural" or just "natural" and not remembering whether the beverage label stated "all natural flavor" or "all natural tea." (*Id.*, T.29:17-30:2; T.97:16-98:3).  The declaration offers no explanation for her change in sworn testimony, is conclusory and self-serving.

In Plaintiff Algozer's declaration, she states "[i]n this lawsuit I am seeking to be paid back a minimum of $20 for my purchases of Arizona "All-Natural/100% Natural Beverages". To the extent this declaration is offered to show entitlement to restitution, the declaration is a sham because in response to the question about the amount of restitution sought, she previously swore:  "I believe the amount of restitution to the [sic] me and the putative class would be the purchase price times the number of drinks purchased during the class period.  (*Id.*, Ex. G, No. 11).  **I do not have an estimate of the quantity I purchased or the purchase price."**  (*Id.*, emphasis added).  Also, in response to an interrogatory on damages, she swore: "[M]y damages are the **purchase price** of the falsely advertised beverages I purchased.  **As to the number of products I have purchased, any number would be no more than a guess."**  (*Id.,* No. 9, emphasis added).  To the extent that the declaration is offered to prove price, the declaration is a further sham because during her deposition, she could not testify with any degree of certainty as

to the purchase prices of Defendants' products.  (*Id.*, Ex. I, T.104:2-6).  The declaration offers no explanation for her change in sworn testimony, is conclusory and self-serving.

For the reasons set forth in Defendants' evidentiary objections, filed in the opposition to the motion for class certification (DE 130), which are incorporated herein by reference, and pursuant to the evidentiary standards required under Rule 56, Plaintiffs' references to the survey(s), trade reports, websites, the Petition Letter and FDA Letters should be stricken or otherwise disregarded as being without foundation, incompetent, irrelevant and/or immaterial to the dispute.  The Ries and Algozer Declarations are sham affidavits under the *Yeager* test and should likewise be stricken or disregarded.[3]

## II. Plaintiffs do not Set Forth Specific Facts Showing That They Suffered Injury in Fact as a Result of Defendants' Alleged Wrongful Acts

In opposing Defendants' motion, Plaintiffs fail to address the factual basis upon which they can plausibly prove injury in fact caused by defendants' alleged deception.  They instead refer to deposition testimony where, for instance, Plaintiff Ries testified that she spent money on the product that she purchased.  The issue with respect to injury in fact is not whether they claim to have paid money, which Plaintiffs have so alleged; the question is whether Plaintiffs have sufficient proofs to show:  (1) the products purchased; (2) what the label(s) stated; and (3) whether Defendants' labeling of the product was an immediate cause for their purchase.  See *In re Tobacco II*, 46 Cal. 4th 298, 321 (2009).  Plaintiffs cannot satisfy their burden under a mere pleading standard.  They must offer facts, under the summary judgment rule, to raise a triable issue of fact.  Their opposition fails to raise triable issues of fact that any injury was caused by Defendants' labels.

There is no dispute that many of  Defendants' products, identified in the First Amended Complaint ("FAC"), have labels stating "100% All Natural," "100% Natural", "All Natural," "All Natural Flavors," "Natural Flavors," "100% All Natural Tea," "100% Natural Tea" and/or

---

[3] Similarly, in *Coyle v. Hornell Brewing Co., Inc.*, 2011 WL 385973, *4 (D.N.J. Aug. 30, 2011), the plaintiff there served an affidavit which attempted to change her repeated sworn testimony about the date of her sole purchase of Defendants' product.  The court stated that the Defendants persuasively argued that the declaration could be regarded as a sham on a summary judgment motion. *Id.*

"All Natural Tonic."  The wording accompanying the "All Natural" label has a bearing upon the claim of deception and a plaintiff cannot parse the wording of the label for purposes of asserting such a claim.  *See Hairston v. South Beach Beverage Co., Inc.*, 2012 WL 1893818, at *4 (C.D. Cal. 2012) (where the plaintiffs alleged that the all natural labeling on defendant's products was deceptive because the products contained deceptively labeled ingredients that were synthetic or created by chemical processing, the court granted summary judgment dismissing UCL, CLRA and FAL claims, ruling that the plaintiff could not selectively interpret individual words or phrases from a product's labeling.).  *Hairston* was cited in support of the motion for summary judgment but was not addressed at all by Plaintiffs.

Plaintiffs' generalized testimony about their purchases is insufficient to defeat a motion for summary judgment.  In *Daghlian v. DeVry University*, 2007 WL 5625508 (C.D. Cal. Dec. 10, 2007), the plaintiff filed a putative class action alleging that DeVry misrepresented the transferability of academic units earned at DeVry.  In opposing summary judgment, the plaintiff relied upon another student's testimony, his own testimony and the college webpage.  *Id.* at 6-7. In granting summary judgment, the court found that the plaintiff's opposition proofs were "too general to raise a genuine issue of fact" and noted that witnesses could not recall specifics regarding material allegations in the complaint.  *Id.*  The court stated that even if the evidence supported an inference that defendant's statements were false or misleading, the court declined to conclude that that evidence amounted to no more than a scintilla and ruled that based upon the record, no reasonable jury could find in plaintiff's favor on this element of his FAL claim.  *Id.* at *7.  The court also rejected plaintiff's argument that an inference was appropriate and stated that "it is his burden—not defendants'—to show that a triable issue exists as to whether DeVry violated the FAL."  *Id.*  Because plaintiff failed to rebut defendants' contention that there is an absence of evidence supporting his claim that defendants made false or misleading statements to him, the court granted summary judgment in defendants' favor on plaintiff's FAL and UCL claims.  *Id.* at *8-9.

Plaintiff Ries's failure to know the details of her one purchase is fatal to her claims.  She cannot testify with certainty as to the statement on the label other than the term "Natural" and

1    she does not know the name of the product other than "Green Tea". (*Id.*, Ex. H, T.97:16-98:3;

2    T.103:22-25).  She also does not recall whether the beverage label on the product she purchased

3    stated "all natural flavor" or "all natural tea." (*Id.*, T.97:16-98:3).  She also testified that she

4    purchased the product without reading the label, because of impulse and solely because she was

5    thirsty.  (DE 112, Ex. H, T.99:18-100:22).  Given the number of different named green tea

6    products, which include fruit flavored teas and teas with fruit juice, her inability to identify the

7    beverage she bought by product name and to testify, with any reasonable certainty, as to any of

8    the various words accompanying the all natural labeling she alleges was deceptive, means that

9    she cannot adequately prove injury in fact as a result of Defendants' labeling.  See *Dysthe v.*

10   *Basic Research LLC,* 2011 WL 5868307, *4 (C.D. Cal. 2011) (where court entered summary

11   judgment dismissing plaintiff's claims observing that the plaintiff did not have standing to bring

12   a CLRA and UCL claim based upon a Relacore product that she never purchased.).

13        Similarly, Plaintiff Algozer's deposition testimony forecloses any plausible way for her

14   to prove reliance/causation because the presence of HFCS in the product was not material to her

15   when she made her purchases.  According to the test in *Tobacco II,* reliance is proved by

16   showing the misrepresentation was an immediate cause of the plaintiff's injury producing

17   conduct and that proof can be shown by proving that, in the absence of the misrepresentation,

18   plaintiff, in all reasonable probability, would not have engaged in the injury producing conduct.

19   *Id*., 46 Cal 4th at 326.  Significantly, in her opposition, Plaintiff Algozer does not address her

20   devastating admissions, during her , that she had no opinion as to whether or not HFCS was

21   artificial until she spoke to Mr. Lilienstein in March of 2009.  (Donovan Dec., Ex. I, T.23:16-

22   24:22; T.34:15-35:2; T.35:15-22).  At the time she made her purchases, she had no opinion as to

23   whether HFCS was natural or not. (*Id.*)  This deposition testimony renders her claim of reliance,

24   causation and injury implausible because, even if there had been no natural statement and she

25   had read the HFCS statement in the statement of ingredients, she still would have bought and

26   drank the product.  She cannot show that, in the absence of "All Natural" label, she would not

27   have engaged in the alleged injury producing conduct.

28

#1836363

Plaintiffs cannot prove any injury in fact caused by the labeling because to do so, they would have to rely upon sham deposition testimony. On this issue, Plaintiff Algozer does not explain her attempt to change the aforementioned deposition testimony about when she formed the belief that HFCS was natural and does not respond to the assertion that the changed testimony is tantamount to a sham that may be disregarded. That testimony is a sham because no reasonable explanation was provided as to why she could have forgotten such a critical issue as to when she began believing HFCS was artificial. Also, as set forth in Defendants' motion, she provided other deposition testimony that corroborated that she bought the product knowing that HFCS was an ingredient. (*Id.*, T.176:20-177:4). Likewise, she does not dispute her testimony that the products that she purchased had the "All Natural" reference within an inch away from the statement of ingredients which set forth HFCS as one of the ingredients and that she could have simply looked at those statements if she chose to do so. (*Id.*, T.109:13-110:22; T.111:19-112:4; *Id.*, T.110:24-111:7).

Plaintiff Ries attempts to dispute facts about causation but does so by referring to deposition testimony, elicited from her attorney, which also represents a sham. In response to her attorney's question as to why she bought the product, she stated "because I believed it was natural". (*Id.*, Ex. H, T. 155:18-21]. In this testimony, she did not state that she purchased the product because of the natural label. Her attorney then asked her the leading question: "did you rely on the representation that it was natural?" (*Id.*, T. 22:25). Defendants' counsel objected to the form of that question because the question suggested the answer and was improperly leading. Subject to that objection, Plaintiff Ries responded "Yes". (*Id.* T.154:25). Her prior deposition testimony, during direct examination, was that she purchased the product because of impulse and solely because of thirst. (*Id.*, T.99:18-100:22). Her subsequent testimony, elicited by a leading question from her counsel, is another example of an improper attempt to avoid entry of summary judgment through contradictory, self serving and conclusory testimony.[4] Because Plaintiffs have

---

[4] Plaintiffs' assertion that the court may presume that they relied on the labels is erroneous. Section 17204 of the UCL requires a representative plaintiff plead and ultimately prove injury in fact and actual reliance on the alleged fraudulent conduct. *See Tobacco II*, 46 Cal. 4th at 327. A presumption may apply to some UCL cases where a plaintiff alleges exposure to a widespread,

1  not demonstrated a triable issue of fact exists on reliance, causation or any damage resulting

2  from Defendants' conduct, their claims under the UCL, FAL and CLRA should be dismissed.

3  **III.    Plaintiffs Have No Facts to Prove Entitlement to Restitution**

4          Regardless of whether Plaintiffs can prove injury in fact, they still need to show facts

5  entitling them to restitution.  In order for Plaintiffs to be entitled to restitution, they must prove

6  that there is an actual difference in value between the products they purchased, which they claim

7  contained artificial ingredient, and a natural product.  See *In Re Vioxx Class Cases*, 180 Cal.

8  App. 4th 116, 130-31 (Cal. Ct. App. 2010); *Gonzalez v. Drew Industries*, 2010 WL 3894791, at

9  *1 (C.D. Cal. Sep. 30, 2010).  Plaintiffs offer no evidence on this critical element of proof which

10  they need to establish to prove entitlement to a restitution remedy.

11          Plaintiff Algozer does not dispute that she found Defendants' beverages to be priced

12  more reasonably compared to other beverages like Odwalla, which was the only other product

13  she claimed she would have purchased rather than Defendants' beverages.  (*Id.*, T.64:17-25;

14  T.132:2-133:11).  Plaintiff Ries does not know the price and has not offered evidence of any

15  difference in value.  However, in claiming that they have submitted evidence in support of their

16  claims for restitution, Plaintiffs refer to:  (1) testimony where Plaintiff Ries stated that she is

17  looking for a return of her purchase price of "about two dollars"; and (2) the Reis and Algozer

18  Declarations, which are sham affidavits, where the Plaintiffs state, in a conclusory and self-

19  serving manner, the amount of "reimbursement" they seek in the case.  Plaintiff Algozer cites to

20  no deposition testimony or any other evidence to support her claim for restitution.

21          Plaintiffs' proffered testimony falls short of the evidence necessary to establish a right to

22  restitution.  The Reis and Algozer Declarations do not address how they can demonstrate that

23

24  long-term advertising campaign which has not been pled or proven here.  *See Id.* at 328.
    Plaintiffs' claims, based upon false advertising other than labeling, have been dismissed.  (DE

25  95).  Plaintiffs never viewed Defendants' website and there is no evidence of any widespread,
    long-term advertising.  (DE 112, Exs. D and E, Nos. 27, respectively; Ex I, T.170:7-12).  Also,

26  Plaintiffs have offered insufficient evidence of materiality and uniformity and their testimony
    belies any contention that the labels were material to their purchase.  The footnote in *Stearns v.*

27  *Ticketmaster Corp.*, 655 F3d 1013, fn. 13 (9th Cir. 2011), referred to by Plaintiffs, concerned
    dicta and did not rule that any conclusive presumption exists.

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
- 11 -

any difference in value exists between what they paid and the value of what they say they received.  Nowhere do Plaintiffs mention any purchase price or any facts showing how their restitution claim is measured.  They have offered no evidence on the value of any comparator product that could be used as a basis for restitution.[5]  As observed in *Skinned Medica, Inc. v. Histogen Inc.*, 2012 WL 1409560, *5 (S.D. Cal. Apr. 23, 2012), "parties cannot simply restyle speculative damages claims as 'restitution' for sales they might have made, or value their businesses might have lost or gained, in order to obtain relief under § 17200."  Plaintiffs' proposed proofs would improperly eliminate the distinction between restitution and damages because "any plaintiff who suffered injury to property could claim restitution because the defendant 'took away' the value of the property.  This is not an equitable remedy authorized under [the UCL]."  *Eco Star Satellite Corp. v. NDS Group PLC*, 2008 WL 4596644 at *9 (C.D. Cal. Oct. 15, 2008).  Because Plaintiffs cannot prove the necessary facts to obtain restitution, that claim for relief should be dismissed.

## IV.   Plaintiffs Have No Facts to Prove Entitlement to Injunctive Relief Because They Cannot Prove the Element of Redressability

Plaintiffs cite to *Keilholtz v. Lennox Hearth Products, Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010) and *Guido v. L'Oreal, USA, Inc.*, 2012 WL 1616912 (C.D. Cal. May 7, 2012) to claim that they have standing to pursue injunctive relief.  However, both cases are unavailing.  The decision in *Keilholtz* did not specifically address Article III standing and concerned the evaluation of standing at the class certification stage, not at summary judgment.  *Guido* also addressed standing at the class certification stage, not at summary judgment.[6]

---

[5] Plaintiffs assert that defendants have not cited to any authority that without a receipt, they have insufficient proofs supporting their claims.  However, in the motion, Defendants rely upon *Weiner v. Snapple Beverage*, 2011 WL 196930 (S.D.N.Y. 2011), where the court entered summary judgment because of the failure of the plaintiffs to present reliable evidence that they paid a premium for Snapple's product.  *Id.* at *5.  In *Weiner*, the court based summary judgment, in part, upon plaintiffs' failure to have any record of their purchases and because they had only vague recollections of same.  (*Id.* at *3).

[6] On proofs of standing, the plaintiff in *Keilholtz* submitted a declaration that the fireplace had no useful purpose.  *Id.* at 335.  In *Guido*, the hair care product was alleged to be harmful and plaintiffs alleged that "they suffered a loss in value and usefulness in the product."  *Id.*, at *3.  Unlike *Keilholtz* and *Guido,* no facts of loss of value have been offered here.  Both Plaintiffs

---

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiffs argue that *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d at 998 (9th Cir. 2004) and *Campion v. Old Republic Home Protection Co.*, 2012 WL 992104 (S.D. Cal. March 23, 2012) are not applicable because, unlike the plaintiffs there, they had no contract with Defendants.  Plaintiffs' FAC, however, contains allegations of alleged breach of warranties.  (DE 75, ¶ 82).  Regardless, whether or not a contract existed between the parties is immaterial to the question of whether Plaintiffs can prove how any injunction would redress any supposed economic harm they suffered in the past.  The fact that they cannot show any realistic threat of future harm, means that they cannot prove a requisite substantive element of proof to obtain prospective injunctive relief (*i.e.*, redressability).

Plaintiffs also contest the right for a court to consider Article III standing on the merits on summary judgment.  However, other courts have adjudicated lack of standing so as to enter summary judgment dismissing a claim for injunctive relief.  *See Women's Emergency Network v. Dickinson*, 214 F.Supp.2d 1308, 1313-15 (S.D. Fla. 2002) (because plaintiff could not establish the legislation precluded plaintiff from having an opportunity to speak, the court concluded that the plaintiff had failed to satisfy the redressability requirement of standing and granted the defendant's motion for summary judgment); *Braunstein v. Arizona Dept. of Transp., et al.*, 2012 U.S. App. LEXIS 13150 at *3-4 (9th cir. 2012) (court ruled that plaintiff must set forth specific facts to survive a motion for summary judgment based on lack of standing and affirmed the entry of summary judgment against plaintiff dismissing the injunction claim); *Campion*, 2012 WL 992104 at *9.  Plaintiffs have no facts showing that there is any likelihood of future harm from Defendants' products and their claims for injunctive relief should be dismissed. [7]

admit that beverages had value to them, that they stopped purchasing Defendants' products years ago and they have not alleged any continuing harmful effects from their purchases.  Their claims are for economic harm only.  They cannot plausibly prove that they are threatened by future harm from Defendants' conduct.

[7] Plaintiffs dispute that the record shows that they stopped purchasing the products but Plaintiff Algozer testified that after her conversation with Mr. Lilienstein in March of 2009, she did not purchase Defendants' products again "[b]ecause I found out it had high fructose corn syrup." (DE 112, Ex. I, T.28:12-24).  Plaintiff Ries's claim arises out of one purchase in the summer of 2006 and that she believed she was deceived at that point.  (*Id.*, Ex. H, T.27:12-T.28:3).  She also

1
2

**V.     Defendants' Motion For Summary Judgment Necessarily Seeks a Ruling on the Merits and Plaintiffs' Request that the Court Hold that Motion in Abeyance, Pending Completion of Discovery, is Improper**

3        Plaintiffs' improperly request that this Court hold Defendants' motion in abeyance

4   pending completion of discovery.  Under Rule 56(d), "if a non-movant shows by affidavit or

5   declaration that, for specified reasons, it cannot present facts essential to justify its opposition,

6   the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

7   declarations or to take discovery; or (3) issue any other appropriate order."  Plaintiffs offer no

8   affidavit in support of the contention that the Court should deny Defendants' motion or hold the

9   lack of restitution argument in abeyance pending completion of discovery.  Plaintiffs do not even

10  address in their brief what discovery they would seek that would be necessary to respond to the

11  motion for summary judgment.  Without submitting a Rule 56(d) affidavit and/or a motion,

12  Plaintiffs cannot request that this Court defer consideration of the motion or allow additional

13  time for discovery to take place "[T]he process of evaluating a summary judgment motion would

14  be flouted if requests for more time [and] discovery … had to be considered even if requested

15  well after the deadline set for the introduction of all information needed to make a ruling has

16  passed."  *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990).  "Thus, implication and

17  logic require that a Rule 56(f) motion be made prior to the summary judgment hearing."  *Id.*  No

18  such motion has been made by Defendants.

19        Plaintiffs' contention that, in the event that Defendants' motion for summary judgment is

20  entered, the order of dismissal should be "without prejudice" is absurd.  Defendants' motion is

21  for summary judgment and is based upon the lack of any merit to Plaintiffs' claims.  Plaintiffs'

22  request that the Court "vacate all orders" is equally nonsensical.  If Plaintiffs intend to seek to

23  dismiss their FAC, they may only do so through leave of court pursuant to Fed.R.Civ.Pro. 41.

24  Here, Plaintiffs would oppose any dismissal of this complaint without ruling on the merits, with

25  prejudice.  This matter has been ongoing for more than two years at enormous expense and

26  prejudice to Defendants.  The time within which Plaintiffs were to furnish expert reports has

27

28  testified that she did not purchase the product in 2007 through 2010.  (*Id.*, T.72:14-73:14).

1    long expired, a trial date has been set and fact and expert discovery deadlines are due to expire.[8]

2    **VI.    Plaintiff Ries Offers No Facts to Dispute that Her CLRA and FAL Claims are
3          Barred by the Statute of Limitations**

4          There is no dispute that Plaintiffs' claims under the CLRA and FAL are governed by the

5    three-year statute of limitations.  There is likewise no dispute that this lawsuit was commenced

6    more than three years after Plaintiff Ries made her last purchase.  She testified that when she

7    made that purchase, she felt deceived because the product contained HFCS, an ingredient she

8    believed to be artificial.  She contends, however, that "it cannot be said with any certainty she

9    possessed knowledge of the availability of a legal remedy" because she did not decide to bring a

10   lawsuit until the fall of 2009.  (DE 125, p. 22).  The law is well settled that to invoke the delayed

11   discovery rule, "the plaintiff must plead and prove facts showing:  (a) Lack of knowledge; (b)

12   Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could

13   not have been discovered at an earlier date) … [and] (c) [h]ow and when the party actually

14   discovered the fraud or mistake."  *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397

15   (9th Cir. 1991).  However, Plaintiff Ries has not pled or shown any facts that show the time and

16   manner of discovery, the lack of knowledge and/or the lack or means of obtaining knowledge.

17   With respect to the alleged discovery of fraud, her own testimony proves that she felt deceived in

18   the summer of 2006.  Her contention that the statute of limitations did not begin to accrue in this

19   case until the fall of 2009, when she spoke to her friend/eventual attorney, David Lilienstein, is

20   meritless and her claims under the CLRA and FAL are time barred.

                                      **CONCLUSION**

22          For the foregoing reasons, Defendants respectfully request that this Court grant

23   Defendants' motion for summary judgment.

---

[8] Plaintiffs refer to a request "for leave to amend the pleadings consistent with the Ninth Circuit's
liberal policy favoring amendments."  This request is also improper.  Plaintiffs have not filed any
motion for leave and/or any proposed pleading.  Given the late stages of this proceeding, and
because a summary judgment motion is pending, allowing leave to file any such proposed and
unknown amendment would be unduly prejudicial to Defendants.  See *Hitt v. Hornell Brewing
Co.*, 2009 WL 4261192 (S.D. Cal.  Nov. 24, 2009).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

DATED:  September 13, 2012                    Respectfully submitted,

2                                                              McELROY DEUTSCH MULVANEY &
                                                              CARPENTER LLP

3

4                                                              By: _/s/Robert P. Donovan_____
                                                                       Robert P. Donovan (Appearing *pro hac vice*)
5                                                              SEDGWICK LLP

6

7                                                              By: _/s/Kevin J. Dunne_____
                                                                       Kevin J. Dunne (Bar No. 40030)
8

9                                                              Attorneys for Defendants
                                                              Arizona Beverages USA LLC, Hornell Brewing
10                                                            Co., Inc., d/b/a Ferolito Vultaggio & Sons, Inc.
                                                              and Beverage Marketing USA, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT