1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7               FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                         SAN FRANCISCO DIVISION

9

10   LAUREN RIES, and SERENA ALGOZER,            No. 10-01139 RS
     individually and on behalf of all others
11   similarly situated,                         **ORDER GRANTING IN PART AND**
                                                 **DENYING IN PART MOTION FOR**
12                    Plaintiffs,                **SUMMARY JUDGMENT AND**
          v.                                     **GRANTING MOTION FOR CLASS**
13                                               **CERTIFICATION AS MODIFIED BY**
     ARIZONA BEVERAGES USA LLC,                  **THE COURT**
14   HORNELL BREWING COMPANY, INC.,
     BEVERAGE MARKETING USA, INC., and
15   FEROLITO, VULTAGGIO & SONS, INC.,

16                    Defendants.
     _____/
17

18                              I. INTRODUCTION

19        This putative consumer class action challenges defendants' representation that AriZona Iced

20   Tea is "All Natural," given that it contains high fructose corn syrup (HFCS) and citric acid.

21   Defendants move for summary judgment on all of plaintiffs' six claims, advanced under

22   California's Unfair Competition Law (UCL), California Business & Professions Code §§ 17200, *et*

23   *seq.*, False Advertising Law (FAL), *id.* at §§ 17500, *et seq.*, and Consumers Legal Remedies Act

24   (CLRA), California Civil Code § 1780.  Plaintiffs oppose the motion, and move, over defendants'

25   opposition, for certification of a class consisting of: "All persons in California who purchased an

26   Arizona brand beverage from March 17, 2006 until the present time which contained High Fructose

27   Corn Syrup or citric acid … which were marked, advertised or labeled as being 'All Natural,' or

28   '100% Natural.'"  First Am. Compl. (FAC) at ¶ 44.  In consideration of the briefs, the arguments

United States District Court
For the Northern District of California

raised at the hearing, and for all the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part, and plaintiffs' motion for class certification is granted as modified by the court.

## II. FACTS

The named plaintiffs in this action accuse defendants of advertising, marketing, selling, and distributing AriZona Iced Tea beverages[1] as "All Natural," "100% Natural," and "Natural" on the labeling of the drinks, in various advertisements, and on defendants' website – despite the presence of HFCS and citric acid. According to the complaint, HFCS, which is produced by adding a series of enzymes to processed corn starch to change the glucose present in the corn into fructose, is not a natural product; likewise, citric acid is alleged to be man-made because it is produced from certain strains of the mold Aspergillus niger.

Plaintiff Lauren Ries has testified that she purchased an AriZona Iced Tea, labeled "All Natural Green Tea," at a gas station convenience store in San Jose, California, sometime during the summer of 2006. The purchase is undocumented, and Ries cannot recall the name of the store, or the exact price she paid for the drink. She has testified, however, the drink cost approximately $2, and stated that after she took a sip, she looked at the label, noticed it contained HFCS, "felt deceived by the labeling of 'All Natural' or 'Natural,'" and consequently threw it away. Defendants emphasize Ries does not recall whether the labeling included the term "all natural," "all natural flavor," or simply "natural." She recalls only that it was represented as "natural." They also stress Ries's testimony listing several reasons for purchasing the drink – "because [she] was thirsty, and wanted a natural drink. Something healthier than a soft drink. [She] also liked the bottle."

Plaintiff Serena Algozer alleges she purchased AriZona products on repeated occasions for at least five years, up until March of 2009, but cannot recall "all specific products or the quantities of those purchases." She specifically recalls purchasing AriZona All Natural Green Tea with Ginseng and Honey, AriZona Iced Tea with Lemon Flavor, as well as defendants' peach tea. Defendants emphasize that Algozer, like Ries, does not recall the exact prices she paid, or the precise statements upon which she relied. Also like Ries, Algozer purchased AriZona teas in

---

[1] Forty-eight specific products are listed in the complaint.

No. C 10-01139 RS
ORDER

2

United States District Court

For the Northern District of California

consideration of price, healthfulness, taste, thirst, and the labeling of the bottle. Finally, defendants appear to question Algozer's testimony concerning her beliefs about the "natural" character of AriZona beverages, because, at deposition, she corrected a prior misstatement to clarify that she had known "since college, that [HFCS] was a highly processed product that was not healthy just from my own readings." Based on Algozer's prior testimony, defendants believe that it was plaintiffs' counsel who, in March of 2009 before he represented her in this case, informed Algozer that HFCS is not "natural," as Algozer testified she did not have the opinion HFCS was artificial prior to discussing the matter with him.

The FAC sets forth six claims for relief: under the FAL, for (1) misleading and deceptive advertising, and (2) untrue advertising, under the UCL, for (3) unlawful, (4) unfair, and (5) fraudulent business practices, and (6) under the CLRA, for injunctive and declarative relief. The FAC seeks restitution, disgorgement of profits, injunctive relief and attorneys' fees.

III. LEGAL STANDARD

A. Summary Judgment[2]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 323. A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

[2] Defendants' motion is styled as a "Motion for Summary Judgment to Dismiss Plaintiffs' First Amended Complaint." Judgment and dismissal are, of course, not to be conflated. Because the gravamen of defendants' motion appears to be a request for judgment, the motion will be construed as sounding under Federal Rule of Civil Procedure 56. Plaintiffs, apparently also confused about the nature of defendants' motion, request leave to amend in the event that the Court orders "dismissal." Because defendants' motion is properly understood as requesting judgment rather than dismissal, and no formal motion for leave to amend has been filed, there is no occasion to consider plaintiffs' request.

242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See id.* at 255.

B. Class Certification

It falls to plaintiffs to make a *prima facie* showing class certification is appropriate. *See In re Northern Dist. of Cal. Dalcon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Certification is only appropriate if a rigorous analysis indicates the prerequisites of Rule 23(a) have been satisfied. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). That Rule provides a class action may proceed only where: (1) the class members are so numerous that joinder is impracticable; (2) common questions of law or fact exist; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Additionally, plaintiffs must satisfy Rule 23(b)(1), (2), or (3). Here, plaintiffs contend the proposed class satisfies Rule 23(b)(2), which authorizes certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

"'Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.'" *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D.365, 376 (N.D. Cal. 2010) (quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999)). "An identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind." *Schwartz*, 183 F.R.D. at 679-80. In other words, it must be administratively feasible to determine whether a particular person is a class member. *See id.* (citing *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995)).

One recent Ninth Circuit decision held that "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements," although that opinion does not proceed to set forth the practical extent to which district courts must make such an inquiry. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553 (2011)); *see also Dukes*, 131 S. Ct. at 2551-52 (satisfaction of Rule 23 "frequently" entails

United States District Court
For the Northern District of California

"some overlap with the merits"), *but cf. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). That said, it remains relatively clear an ultimate adjudication on the merits of plaintiffs' claims is inappropriate, and any inquiry into the merits must be strictly limited to evaluating plaintiffs' allegations to determine whether they satisfy Rule 23. *See Ellis*, 657 F.3d at 983 n.8.

IV. DISCUSSION

A. Summary Judgment

1. Standing for Monetary Relief

Defendants maintain neither named plaintiff can establish an injury-in-fact or reliance sufficient to support statutory standing for their UCL, FAL, and CLRA claims. Each of those three consumer protection statutes apply the same standard to answer this question. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (UCL); Cal. Bus. & Profs. Code § 17204 (requiring that plaintiff "suffered injury in fact and has lost money or property as a result of the unfair competition"); *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1555 (2011) (citing *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 819 (2007)) ("[l]ike section 17200, section 17500 requires an individual suing under the statute to have suffered injury in fact and to have lost money or property as a result of such unfair competition" (quotation marks omitted)); Cal. Civ. Code § 1780(a) (providing private right of action to a "consumer who suffers any damage as a result of the use" of the prohibited acts).

a. Injury in Fact

Section 17204 provides a private individual may bring suit only if he or she has "suffered injury in fact and has lost money or property as a result of the unfair competition." The California Supreme Court has thus interpreted Section 17204 to require a representative plaintiff to plead and prove an injury in fact – e.g., the loss of money or property – and "actual reliance" on the alleged fraudulent conduct. *Tobacco II*, 46 Cal. 4th at 327; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 316 (2011) ("[i]f a party has alleged or proven a personal, individualized loss of

No. C 10-01139 RS
ORDER

money or property in any non-trivial amount, he or she has also alleged or proven injury in fact" under the UCL and CLRA).

The California Supreme Court's decision in *Tobacco II* outlines the applicable framework for analyzing reliance under the UCL:

> [R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was "an immediate cause" of the plaintiff's injury-producing conduct. A plaintiff may establish that the defendant's misrepresentation is an "immediate cause" of the plaintiff's conduct by showing that in its absence the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.

46 Cal. 4th at 326 (citation omitted) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1110-11 (1993)). In other words, "[w]hile a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause," or "even the predominant or decisive factor influencing his conduct." *Id.* (quotation marks omitted) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976-77 (1997)). "Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material," that is,

> if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question," and as such materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it."

*Id.* (citations omitted) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976-77 (1977)).

Here, plaintiffs have alleged they surrendered the purchase price on the mistaken premise that AriZona teas were "natural." Defendants maintain they are entitled to judgment because plaintiffs' alleged purchases are undocumented by receipts, and because neither plaintiff can recall the precise prices they paid, or the exact statements on the bottling of the beverages they purchased. Such arguments do not establish the absence of a disputed issue of material fact, but are instead about the relative weight of the evidence, and must be presented to the jury. Both plaintiffs have testified they incurred economic harm of a dollar or two per purchase, and there is simply no authority to suggest that they must provide a more precise accounting of their losses at this juncture to proceed on their claims.

United States District Court
For the Northern District of California

No. C 10-01139 RS
ORDER

United States District Court

For the Northern District of California

The sole precedent defendants invoke in support of this proposition is an unreported, out-of-circuit case brought under New York's Unfair Competition Law, *Weiner v. Snapple Beverage Corporation.* No. C 07-08742, 2011 WL 196930 (S.D.N.Y. Jan. 21, 2011). While that case presents factual circumstances similar to those at issue here, the district court's decision to grant defendants' motion for summary judgment turned on the proposition that "the injured party must proffer evidence sufficient to demonstrate damages *with a degree of certainty*," a principle the opinion recognizes as specific to New York law. *Id.* at *5 (emphasis added) (citing *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1012 (2d Cir. 1991)). Defendants have adduced no authority to suggest any analogous evidentiary requirement under California law, and therefore *Weiner* is not persuasive.

Plaintiffs' sworn statements estimating the harm they have incurred provide an evidentiary basis for a finding of injury in fact. To the extent defendants simply attack the plaintiffs' veracity and characterize their evidence as amounting to a "sham," the supposed inconsistencies in the record do not rise to that level. Instead, such credibility issues present a classic dilemma for resolution by the trier of fact.

### b. Reliance

Turning to reliance, likewise, defendants may attempt to exploit plaintiffs' imperfect recollections to persuade the trier of fact to discount their testimony, but critically, because plaintiffs specifically recall defendants' representations of AriZona beverages as "natural," and indicate that statement was material to their purchase, this standing requirement is satisfied. Defendants have neglected to identify any authority to suggest a more specific or greater showing of reliance is required to survive a motion under Rule 56. The only precedent invoked by defendants on this issue, *Dysthe v. Basic Research LLC*, No. C 09-08013, 2011 WL 5868307 at *4 (C.D. Cal. June 13, 2011), is of no assistance to them. In that case, the district court granted defendants' motion for summary judgment because the named plaintiff admittedly never purchased the product at issue, a circumstance contrary to the allegations presented here.

Under *Tobacco II*, it is likewise of marginal significance that both plaintiffs have admitted multiple reasons for their purchase of AriZona products. So long as the representation that

United States District Court

For the Northern District of California

1   defendants' products were "natural" was an "immediate" cause for their purchase, the reliance

2   requirement is met. *Tobacco II*, 46 Cal. 4th at 326.  In other words, if plaintiffs can prove they

3   would not "in all reasonable probability" have purchased the beverages had they known of the

4   alleged misrepresentations, then defendants' summary judgment motion must be denied. *Id.*

5   (quoting *Mirkin*, 5 Cal. 4th at 1110-11).  Although that is ultimately a question of fact, the

6   representation that a beverage is "All Natural" or "100% Natural" is likely to be material.  Given

7   plaintiffs' testimony, they may be able to establish the materiality of the representation to their

8   purchasing decisions.  It certainly cannot be said that the "'fact [allegedly] misrepresented is so

9   obviously unimportant that the jury could not reasonably find that a reasonable man would have

10   been influenced by it.'" *Id.* (citations omitted) (quoting *Engalla*, 15 Cal. 4th at 976-77).  The fact

11   that plaintiffs had multiple reasons for purchasing the drinks, just as any ordinary consumer likely

12   would, does not entitle defendants to summary judgment.

13       Finally, to the extent defendants argue Ries has admitted she purchased the product without

14   reading the label and solely because of thirst, they also acknowledge her testimony that she

15   purchased the drink with the understanding and expectation it was "natural," as advertised.  Again,

16   resolving all inferences in favor of the non-moving party, there is a triable issue of material fact

17   raised by Ries's testimony.  Defendants are, of course, free to attempt to impeach Ries at trial with

18   prior statements they believe are inconsistent, but such disputes preclude judgment as a matter of

19   law at this stage.

20       The same is true of purported inconsistencies in Algozer's testimony concerning her opinion

21   about whether HFCS was natural at the time she purchased AriZona Iced Tea.  Defendants

22   emphasize Algozer's testimony that she "knew, since college, that high fructose corn syrup was a

23   highly processed product that was not healthy just from my own readings" conflicts with her

24   testimony that she formed her opinion HFCS was manmade and artificial after speaking with the

25   attorney who would later represent her in this case.  Defendants claim that Algozer's later testimony

26   undermines her ability to demonstrate reliance on the "All-Natural" or "100% Natural" labels

27   because at the time she purchased the product, she harbored no opinion as to whether HFCS was

28   natural or not.  This purported testimonial defect is not fatal to Algozer's showing of reliance.

1   Rather, it speaks to her credibility, which is an issue for the trier of fact to assess.  Plaintiffs have

2   established that they have statutory standing to bring their claims.

3         2. Entitlement to Monetary Relief

4         Defendants also contend that plaintiffs have failed to create a triable issue of fact to support

5   their claims for restitution or disgorgement under the UCL or FAL.  "The False Advertising Law,

6   the Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to private

7   litigants asserting claims under those statutes."  *Colgan*, 135 Cal. App. 4th at 694; *see also* Cal. Bus.

8   & Profs. Code §§ 17203, 17535; California Civil Code § 1780(a)(3).  "The object of restitution is to

9   restore the status quo by returning to the plaintiff funds in which he or she has an ownership

10  interest."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) (UCL case);

11  *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2010) (restitution available under

12  FAL).  The amount of restitution "need not be determined with exact precision."  *In re Google*

13  *AdWords Litig.*, No. 08-03369, 2012 WL 28068 at *15 (N.D. Cal. Jan. 5, 2012).

14        Each plaintiff testified that she seeks reimbursement for the purchase price of any AriZona

15  Iced Tea beverages that she purchased, estimating the amount for each at "[a]bout $2."  Plaintiffs'

16  opposition to the motion for summary judgment clarifies that they seek repayment of these specific

17  monetary amounts, *and*, under the UCL and FAL, an "award of restitution which will deter the

18  Defendants from continuing their false and misleading activities."  *See Colgan*, 135 Cal. App. 4th at

19  695 ("Under the False Advertising and Unfair Competition Laws, the remedy of restitution serves

20  two purposes—returning to the plaintiff the monies in which he or she has an interest and deterring

21  the offender from future violations.").  "Although a trial court has broad discretion under those

22  statutes to grant equitable relief, that discretion is not 'unlimited' and does not extend beyond the

23  boundaries of the parties' evidentiary showing."  *Id.* at 700 (quoting *Korea Supply*, 29 Cal. 4th at

24  1147).

25        "There must be evidence that supports the amount of restitution necessary to restore to the

26  plaintiff 'any money . . . which may have been acquired by means of such unfair competition.'"  *Id.*

27  (quoting Cal. Bus. & Prof. Code § 17203).  Defendants complain that plaintiffs have no receipts or

28  other documents recording their alleged purchases to document their losses in this case.  This, in

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1  itself, is not an insurmountable obstacle. Here, plaintiffs have estimated their losses to be a dollar or

2  two per purchase in sworn testimony. That represents admissible evidence of a "measurable

3  amount," even if not an exact accounting. Nothing further is required by *Colgan* or the other

4  precedents cited by defendants.

5      Defendants' next argument, that plaintiffs are not entitled to a refund of their full purchase

6  price under the law, is more persuasive. "The difference between what the plaintiff paid and the

7  value of what the plaintiff received is a proper measure of restitution." *Vioxx*, 180 Cal. App. 4th at

8  131. Even if the beverages plaintiffs purchased were not all natural, they still had some market

9  value that accrued to plaintiffs. The proper measure of the restitution to which plaintiffs may be

10  entitled must be based in evidence establishing the difference between the value of an AriZona Iced

11  Tea billed as all-natural and the value of a comparable beverage not marketed or sold at a premium

12  due to such claims. *See, e.g.*, *Colgan*, 135 Cal. App. 4th at 700 (observing that a proper measure of

13  restitution for making false claims that a product was made in the U.S.A. could be "the dollar value

14  of the consumer impact or the advantage realized by" such claims compared to similar products

15  made in China).

16      Plaintiffs essentially concede that they have thus far failed to meet this burden, admitting

17  that "specific monetary amounts [are] impossible to determine at this point." In an attempt to

18  excuse this deficiency, they note that discovery was still ongoing at the time that their opposition to

19  summary judgment was filed. Indeed, non-expert discovery did not close until October 12, 2012,

20  after the hearing on the motion was held. Plaintiffs therefore request that, as to this issue, the

21  motion for summary judgment be denied or a decision be postponed pending the completion of

22  discovery pursuant to Rule 56(d)(1), (d)(2), or (e)(1).

23      Rule 56(d) of the Federal Rules of Civil Procedure permits denial or continuance of a motion

24  for summary judgment , "[i]f a nonmovant shows by affidavit or declaration that, for specified

25  reasons, it cannot present facts essential to justify its opposition." A party requesting a Rule 56(d)

26  continuance bears the burden of setting forth in declaration or affidavit form the specific facts its

27  hopes to elicit from further discovery; and of demonstrating that the facts sought exist, and that the

28  sought-after facts are essential to oppose summary judgment. *See* Fed. R. Civ. Proc. 56 (d); *Family*

*Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F. 3d 822, 827 (9th Cir. 2008).
Failing to meet this burden "is grounds for the denial" of a Rule 56(d) motion.  *Pfingston v. Roman Eng. Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

Here, plaintiffs have not pointed to any declarations or affidavits in support of their request for relief under Rule 56(d).  They have offered woefully few specifics as to what facts remain to be discovered or how they would be material to their restitution claim.  Nevertheless, given that defendants moved for summary judgment while nearly three months of fact discovery remained, and in light of the fact-intensive nature of the determination as to whether plaintiffs are entitled to restitution, defendants' motion for summary judgment is denied without prejudice as to the restitution issue under Rule 56(e)(1) to "give [plaintiffs] an opportunity to properly support" their claims for restitution with evidence.

### 3. Standing for Injunctive Relief

Defendants also challenge plaintiffs' Article III standing for injunctive relief.  To satisfy the United States Constitution's standing requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000).
Standing must be shown to support each form of relief requested.  *See id.* at 185.  "In a class action, standing is satisfied if at least one of named plaintiff[s] meets the requirements," and it is plaintiffs' burden to demonstrate this jurisdictional prerequisite.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)).  Here, focusing on plaintiffs' plea for prospective injunctive relief, defendants question whether they have adequately shown "a sufficient likelihood that [they] will again be wronged in a similar way."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  Defendants are correct that there must be a "real and immediate threat of repeated injury."  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).  That said, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  injury," *id.*, even if they "do not in themselves amount to real and immediate threat of injury

2  necessary to make out a case or controversy." *Lyons*, 461 U.S. at 103.

3      Defendants here contend that plaintiffs lack standing for injunctive relief because they have

4  ceased purchasing AriZona tea products since discovering the alleged misrepresentations.  Plaintiffs

5  insist that mischaracterizes their testimony in that neither of them disclaimed an interest in

6  purchasing such beverages in the future.  Algozer testified she has not purchased defendants'

7  products since 2009, when she "found out it had high fructose corn syrup."  Ries merely agreed that

8  her claims were predicated on one purchase that occurred in 2006.  Accordingly, the record is

9  devoid of any grounds to discount plaintiffs' stated intent to purchase in the future, thereby

10  satisfying the requisites for standing.

11      Defendants argue further that plaintiffs are not threatened by future harm because they are

12  now aware of the contents of AriZona beverages, and can no longer be deceived; but that contention

13  may be dispatched with relative ease.  This is best understood as an argument directed to

14  redressability.  *See Cattie v. Wal–Mart, Inc.,* 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) ("Even if

15  [plaintiff] was [injured], however, it is unclear how prospective relief will redress her injury, since

16  she is now fully aware of the linens' thread count.").  Plaintiffs request to be relieved from false

17  advertising by defendants in the future, and the fact that they discovered the supposed deception

18  some years ago does not render the advertising any more truthful.  Should plaintiffs encounter the

19  denomination "All Natural" on an AriZona beverage at the grocery store today, they could not rely

20  on that representation with any confidence.  This is the harm California's consumer protection

21  statutes are designed to redress.

22      As plaintiffs further note, were the Court to accept the suggestion that plaintiffs' mere

23  recognition of the alleged deception operates to defeat standing for an injunction, then injunctive

24  relief would never be available in false advertising cases, a wholly unrealistic result.  *See, e.g.*,

25  *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188 at *7 (C.D. Cal. Apr. 11, 2011) ("If

26  the Court were to construe Article III standing for FAL and UCL claims as narrowly as the

27  Defendant advocates, federal courts would be precluded from enjoining false advertising under

28  California consumer protection laws because a plaintiff who had been injured would always be

United States District Court

For the Northern District of California

1  deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have

2  Article III standing.").

3      Finally, defendants suggest that because Ries has acknowledged in testimony that the

4  regulations of the Food and Drug Administration (FDA) provide "some protection" to consumers,

5  an injunction could not possibly remedy her supposed harm.  That argument plainly fails, as the

6  FDA regulations indisputably do *not* provide the remedies plaintiffs seek here: namely, injunctive

7  relief against defendants from representing products with HFCS or citric acid as "natural" (or

8  variants thereof), as well as corrective advertising, among other things.  In sum, defendants have not

9  identified a standing defect that defeats plaintiffs' claims for injunctive relief.

10      4. Statute of Limitations

11      Finally, defendants maintain that Ries's claims under the CLRA and FAL are barred by a

12  three year statute of limitations.  The CLRA provides that "[a]ny action brought under the specific

13  provisions of section 1770 shall be commenced not more than three years from the date of the

14  commission of such method, act or practice."  Cal. Civ. Code § 17803.  Claims under the FAL are

15  governed by the three-year statute of limitations set forth in California Code of Civil Procedure

16  Section 338(a).  *Cnty. of Fresno v. Lehman*, 229 Cal. App. 3d 340, 346 (1991).  Plaintiffs note that

17  the statute of limitations is subject to the "discovery rule," which allows that the "statute of

18  limitations runs 'from the time a reasonable person would have discovered the basis for a claim.'"

19  *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1148 (N.D. Cal. 2005) (quoting *Mass. Mut.*

20  *Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002)).  "The question when a

21  plaintiff actually discovered or reasonably should have discovered the facts for purposes of the

22  delayed discovery rule is a question of fact unless the evidence can support only one reasonable

23  conclusion."  *Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008).

24      There is no debate that Ries's claims are predicated entirely on the 2006 purchase, and that

25  this suit was filed in March of 2010, over three years later.  Ries argues that her claim did not accrue

26  until 2009, when she spoke with counsel about filing this action.  Prior to that time, she maintains

27  she was not aware she had a legally cognizable claim.  Ries misunderstands the discovery rule; it

28  provides that plaintiff's claim accrues "when the plaintiff suspects or should suspect that her injury

No. C 10-01139 RS
ORDER

13

United States District Court

For the Northern District of California

1    was caused by wrongdoing" – not when she learns of the legal theory that would support recovery.

2    *See, e.g.*, *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988).  In other words, the statute runs

3    once she is put on inquiry notice: when the circumstances would lead a reasonable person to suspect

4    wrongdoing.  *Id.* at 1110-11; s*ee also S.M. v. Los Angeles Unified Sch. Dist.*, 184 Cal. App. 4th 712,

5    717 (2010) ("A plaintiff has reason to discover a cause of action when he or she has reason to at

6    least suspect a factual basis for its elements. Suspicion of one or more of the elements, coupled with

7    knowledge of any remaining elements, will generally trigger the applicable limitations period.").

8         Here, accepting Ries's testimony that she knew HFCS to be unnatural at the time she

9    purchased the AriZona tea, and threw out the drink precisely because she felt "deceived" upon

10   learning it was an ingredient, she learned of her injury at that time, and the statute of limitations

11   began to run.  Her claims under the CLRA and FAL are therefore exhausted by operation of the

12   statute of limitations, and defendants are entitled to summary judgment on them.  *See Ovando*, 159

13   Cal. App. 4th at 61.  Defendants' motion is granted in part on these grounds.

14

15   B. Class Certification

16        Plaintiffs seek certification of a class of "[a]ll persons in California who purchased an

17   Arizona brand beverage from March 17, 2006 until the present time which contained High Fructose

18   Corn Syrup or citric acid … which were marked, advertised or labeled as being 'All Natural,' or

19   '100% Natural[.]'" FAC ¶ 44.  They maintain the proposed class satisfies the requirements of Rule

20   23(a) and (b)(2), for injunctive relief.

21        1. The Proposed Class Definition

22        At the outset, defendants argue that the proposed class cannot be certified because the class

23   definition is overbroad and not ascertainable.  "Although there is no explicit requirement concerning

24   the class definition in FRCP 23, courts have held that the class must be adequately defined and

25   clearly ascertainable before a class action may proceed."  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477,

26   482 (N.D. Cal. 2011) (internal quotation omitted).  "The class definition must be sufficiently

27   definite so that it is administratively feasible to determine whether a particular person is a class

28

No. C 10-01139 RS
ORDER

14

United States District Court

For the Northern District of California

member." *Id.*  The proposed class definition meets that standard and defendants do not identify any portion of the class definition that they believe to be vague or confusing.

Defendants' real concern with the proposed class definition appears to be that members of the class do not have actual proof that they are in the class.  Defendants suggest that simply because most members of the proposed class will not have retained all of their receipts for AriZona Iced Tea over the past few years, the administration of this class will require "fact-intensive mini trials" to establish whether each purported class member had in fact made a purchase entitling them to class membership.  This is simply not the case.  If it were, there would be no such thing as a consumer class action.  There is no requirement that "the identity of the class members . . . be known at the time of certification."  *Id.*  The challenges entailed in the administration of this class are not so burdensome as to defeat certification.

Defendants next argue that the class definition is impermissibly overbroad because it includes absent class members who lack Article III standing.[3]  The law concerning whether they must each satisfy Article III standing requirements is muddled—even within this District.  A number of cases, including the Ninth Circuit's post-*Dukes* opinion in *Stearns v. Ticketmaster Corpration*, squarely hold that, for purposes of constitutional standing, "our law keys on the representative party, not all of the class members, and has done so for many years."  655 F.3d 1013, 1021 (9th Cir. 2011); *see also Lewis v. Casey,* 518 U.S. 343, 395 (1996) (Souter, J., concurring) (class certification "does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs"); *Bates*, 511 F.3d at 985 ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.... Thus, we consider only whether at least one named plaintiff satisfies the standing requirements...."); *Chavez*, 268 F.R.D. at 376 ("unnamed class members in an action under the Unfair Competition Law ('UCL') ... are not required to establish standing").

On the other hand, the Ninth Circuit's *en banc* opinion in *Dukes* suggests otherwise, as have many other cases.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 623 (9th Cir. 2010) (en banc)

---

[3] Defendants also reassert their attack on the named plaintiffs' Article III standing for injunctive relief, arguing that no class can be certified because the named plaintiffs lack standing to represent it.  The named plaintiffs have established standing for the reasons set forth above.  *See supra* at A.3.

United States District Court

For the Northern District of California

*rev'd on other grounds by Wal-Mart Stores, Inc.*, 131 S. Ct. 2541 (2011); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (class cannot be defined as to include those who would necessarily fail to satisfy the requirements of Article III).  In *Dukes*, the court altered the class definition to exclude "those putative members who were no longer Wal-Mart employees at the time Plaintiffs' complaint was filed" and therefore necessarily could not "have standing to pursue injunctive or declaratory relief." 603 F.3d at 623.  Defendants have not pointed to any such obvious standing defect in the proposed class definition.

One recent case from this District, following another district court's conclusion that "[t]he majority of authority indicates that it is improper for [the court] to analyze unnamed class members' Article III standing where ... [d]efendants do not successfully challenge the putative class representative's standing," ultimately concluded:

> "where the class representative has established standing and defendants argue that class certification is inappropriate because unnamed class members' claims would require individualized analysis of injury or differ too greatly from the plaintiff's, a court should analyze these arguments through Rule 23 and not by examining the Article III standing of the class representative or unnamed class members."

*In re Google AdWords Litig.*, No. 08-3369, 2012 WL 28068 at *10 (quoting *Bruno v. Quten Res. Inst., LLC*, 280 F.R.D. 524, 531 (C.D. Cal. 2011)).  In that matter, the Court chose to address the issue under the rubric of Rule 23(b)(3)'s predominance requirement.  While plaintiffs here do not seek certification under Rule 23(b)(3), the common contention that adjudication of plaintiffs' claims would require individualized analysis of injury nonetheless arises in the framework provided by Rule 23(b)(2), which is of course specially addressed to the availability of injunctive relief.  Accordingly, (b)(2) provides the appropriate basis for assessment of defendants' arguments.

Unlike in *Dukes*, there are no individuals included in the proposed class who would by definition lack Article III standing.  Defendants are specifically concerned about those who believed HFCS was natural at the time of their purchase, those who continued to buy the product for years, who only purchased the product in the past, who stopped purchasing and have no intention to ever purchase again, as well as those who purchased the products for reasons unrelated to the labeling or for various reasons.  Defendants make no substantive argument whatsoever as to why any of these members of the proposed class would lack Article III standing.

**United States District Court**
For the Northern District of California

As discussed at length in relation to the named plaintiffs' Article III standing above, *supra* at IV. A.1 & 3, and the commonality and typicality of the class below, *infra* at IV.B.3 & 4, "[t]he requirement of concrete injury is satisfied when the Plaintiffs and class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations." *In re Google AdWords Litig.*, 2012 WL 28068 at *10. The focus of the UCL and FAL is on the actions of the defendants, not on the subjective state of mind of the class members. All of the proposed class members would have purchased the product bearing the alleged misrepresentations. Such "a showing of concrete injury under the UCL and FAL is sufficient to establish Article III standing." *Id.* Thus, although we follow the decisions holding that plaintiffs need not introduce evidence to establish the Article III standing of absent class members at this time, "any inquiry into whether the unnamed class members satisfy Article III standing depends upon an objective test, not a fact-intensive inquiry as Defendants contend." *Id.* The proposed class definition is proper, so the class certification analysis next proceeds to address each required element of Rule 23(a) in turn.

### 2. Numerosity

Numerosity is met if the potential class members are so numerous that the alternative – joinder of individual plaintiffs – is "impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008). Here, plaintiffs contend it is beyond dispute the proposed class members number well over forty, and joinder would be quite impractical. Defendants do not disagree, and therefore may be understood to concede the point. Accordingly, the numerosity requirement of Rule 23(a)(1) is met.

### 3. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires some "questions of fact and law which are common to the class." The commonality requirement of Rule 23(a)(2) is construed less rigorously, for example, than the "predominance" requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The former merely requires some "questions of fact and law which

are common to the class," whereas the latter requires that "questions of law or fact common to class members [must] *predominate* over any questions affecting only individual members." Fed. R. Civ. P. 23 (emphasis added). Thus, for purposes of Rule 23(a)(2), a perfect identity of facts and law is not required; relatively "minimal" commonality will do. *Id.* at 1019-20. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1020. In other words, members of the proposed class "may possess different avenues of redress," provided that "their claims stem from the same source." *Id.*

Here, plaintiffs have identified several legal and factual issues common to the putative class's claims, including, for instance, whether the use of the terms "All Natural" or "100% Natural" to advertise beverages that contain HFCS or citric acid violates the UCL, FAL, or CLRA. By definition, all class members were exposed to such representations and purchased AriZona products, creating a "common core of salient facts." *Id.* at 1020. Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar. *See Chavez*, 268 F.R.D. at 377; *In re Pom Wonderful LLC Marketing & Sales Practices Litig.*, No. ML 10-02199, 2012 WL 4490860, at *1 (C.D. Cal. Sept. 28, 2012) (certifying a class in an action alleging violations of the UCL, FAL, and CRLA arising out of marketing regarding the health benefits of Pom Wonderful brand pomegranate juice).

In *Chavez*, for example, the Court held the commonality requirement was met by allegations that the defendant beverage supplier's "packaging and marketing materials are unlawful, unfair, deceptive or misleading to a reasonable consumer." 268 F.R.D. at 377. There, defendants sold a line of beverages under the "Blue Sky" brand. *Id.* at 368. The bottles indicated that the drinks were from Santa Fe, New Mexico and "also present[ed] a particularly Southwestern look and feel including . . . Southwestern Indian tribal bands across the top and bottom of the cans and bottles and pictures of what appear to be the Sangre de Cristo mountains that border Santa Fe, New Mexico on the eastern side of the city." *Id.* (quotation omitted). The problem: since the defendants had purchased the Blue Sky line, "there ha[d] not been any company named 'Blue Sky Natural Beverage Co' operating in Santa Fe and that Blue Sky beverages [we]re not manufactured or bottled in Santa

No. C 10-01139 RS
ORDER

United States District Court

For the Northern District of California

Fe or anywhere else in the state of New Mexico." *Id.*  Quite disappointed to learn that the refreshment he had purchased was not actually from New Mexico, plaintiff sued under the UCL, FAL, and CLRA, "claim[ing] that he relied on defendants' misrepresentations and thus lost the full value of the price he paid for the Blue Sky beverages which he would not have paid had he known the true geographic origin of the products." *Id.*  In opposing class certification, defendants argued, that individual issues of motivation and damages defeated commonality because "not all potential class members relied on the Santa Fe representations and may have had other reasons to buy Blue Sky beverages." *Id.* at 378.  The district court certified the class over defendants' objections, noting that the California Supreme Court in *Tobacco II* has made clear "'[t]he substantive right extended to the public by the UCL is the right to protection from fraud, deceit and unlawful conduct, and the focus of the statute is on the defendant's conduct,'" rather than the subjective state of mind of the individual consumer. *Id.* (quoting 46 Cal. 4th  at 324).

Similarly, here, variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively "minimal" showing required to establish commonality. *Hanlon*, 150 F.3d at 1020. Moreover, it is immaterial for purposes of plaintiffs' state law claims: injunctive and restitutionary relief under the UCL and FAL "is available without individualized proof of deception, reliance, and injury." *Tobacco II*, 46 Cal. 4th at 320.  Instead, the UCL and FAL implement an objective test requiring plaintiffs to "show that members of the public are likely to be deceived" by the alleged misrepresentations. *Stearns*, 655 F.3d at 1020.  "[T]he CLRA requires each class member to have an actual injury caused by the unlawful practice." *Id.* at 1022 (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155-56 (2010)).  As with the UCL and FAL, under the CLRA, "'[c]ausation, on a class[-]wide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.'"[4] *Vioxx*, 180 Cal. App. 4th at 129 (emphasis in original).   The standard for materiality is

---

[4] "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*, 655 F.3d at 1022-23 (quoting *Vioxx*, 180 Cal. 4th at 129). Such a situation can arise when the alleged misrepresentation is not made to the entire class. *See id.* at 1024 ("the proposed [] class was so broad that it cannot be said that the websites were 'materially deficient' as to the entire class").

1    identical to the UCL's and FAL's objective test.  *See Steroid*, 181 Cal. App. 4th at 157.  It follows

2    that factual variation in the circumstances underlying each putative class members' claims have

3    marginal legal significance for purposes of state law, and Rule 23's commonality requirement,

4    which is met here.

5           Still, defendants maintain that the Supreme Court's opinion in *Dukes* requires a greater

6    showing than plaintiffs have accomplished.  *Dukes* holds, "[c]ommonality requires the plaintiff to

7    demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 131 S. Ct. at 2551

8    (quoting *Gen. Telephone Co. of Southwest Falcon*, 457 U.S. 147, 156 (1982)).  The common issues

9    "must be of such a nature that it is capable of class[-]wide resolution – which means that

10   determination of its truth or falsity will resolve an issue that is central to the validity of each one of

11   the claims in one stroke."  *Id.* But post-*Dukes*, the underlying substantive law remains the same and

12   district courts have continued to certify classes in cases alleging violations of the UCL, FAL, and

13   CRLA for allegedly deceptive labeling.  *See In re Pom Wonderful*, 2012 WL 4490860, at *1.  In

14   such cases "an inference of reliance [for each class member] arises as to the entire class where, as

15   here, material misrepresentations have been made to the entire class."  *Id.* at *5.  Plaintiffs meet the

16   *Dukes* standard because the entire proposed class has suffered the same injuries flowing from the

17   alleged misrepresentations, and the requested injunctive relief, prohibiting defendants from

18   advertising beverages containing HFCS or citric acid as "natural" (or variants thereof) will have the

19   effect of remedying the purported harm class-wide.

20

21

22   _____

23   California Courts of Appeal have found a misrepresentation to be not material as to all class
     members and have refused to certify classes under that state's class certification mechanism in
     situations not presented by this case.  *See,e.g.*, *Vioxx*, 180 Cal. App. 4th at 133, 133-35 ("the

24   decision to prescribe Vioxx is an individual decision made by a physician in reliance on many
     different factors, which vary from patient to patient," therefore misrepresentations about some risks

25   of the drug would not have been material to the prescribing decision for all patients); *Caro v.
     Procter & Gamble Co.*, 18 Cal. App. 4th 644, 666-79 (1993) (there was no material

26   misrepresentation made to class representative, whom the record showed had not relied on the
     product's challenged packaging, therefore individual class members would have had to demonstrate

27   materiality as to themselves on an individual basis).  Defendant's argument, that there is a lack of
     materiality which would defeat class certification in any situation where consumers may have had

28   multiple reasons for purchasing a product, if accepted, would prevent class certification in every
     consumer product labeling case.  That is clearly not the law.

No. C 10-01139 RS
ORDER

United States District Court
For the Northern District of California

Finally, defendants argue that commonality is defeated because not every class member was exposed to the exact same label, as there is some variation among them.[5]  As in *Chavez*, "[p]laintiff's claims here arise out of the allegedly false statement, worded in several variations, made on every . . . container . . . and therefore arise from the same facts and legal theory."  268 F.R.D. at 378.  "Although plaintiff[s] did not purchase each type of beverage carrying the misleading label, his claims are '"reasonably coextensive with those of absent members."'  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020).  The commonality requirement of Rule 23(a)(2) has therefore been met.

### 4. Typicality

The representative plaintiffs' claims must also be typical of those advanced by the class. Fed. R. Civ. P. 23(a)(3).  Admittedly, the "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Falcon*, 457 U.S. at 157-158 n.13.  However, typicality, like adequacy, is directed to ensuring that plaintiffs are proper parties to proceed with the suit.  The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  That said, "[t]ypicality refers to the nature of the claim or defense of the class representative," and less so, "the specific facts from which it arose or the relief sought."  *Hanon*, 976 F.2d at 508 (quoting *Weinberger v. Thorton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)).  "Under the rule's permissive standards, representative claims are 'typical' if they are *reasonably co-extensive* with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020 (emphasis added).

Defendants argue that "[c]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of litigation." *Hanon*, 976 F.2d at 509.  Their position on this issue, while closely resembling their objections to class standing, is directed instead to defenses they anticipate raising against Algozer, in particular.

---

[5] Defendants identify the following labels as present on relevant products: 100% All Natural, 100% Natural, All Natural, All Natural Flavors, Natural Flavors, 100% All Natural Tea, 100% Natural Tea, and All Natural Tonic.

United States District Court

For the Northern District of California

First, they maintain that "[m]embers of the proposed class are likely different from each other with regard to the factors driving their decisions to purchase Defendants' beverages." Even if it were true that putative class members relied to greater or lesser extents on defendants' representation that AriZona products are "All Natural" or "100% Natural," as noted above, the test for California's consumer protection statutes is objective, and does not turn on the claimant's particular state of mind.

Furthermore, "reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (quoting *Mirkin*, 5 Cal. 4th at 1110-11). In other words, "the plaintiff need not demonstrate it was the only cause," or "even the predominant or decisive factor influencing his conduct." *Id.* (quotation marks omitted) (quoting *Engalla*, 15 Cal. 4th at 976-77). Thus, even accepting defendants' contention that consumers' preferences vary, that premise, without more, does not establish a defense. To the extent consumer preferences do present a substantial issue, Algozer shares those mixed motivations, and therefore presents claims that are "reasonably co-extensive with those of absent class members," if not "substantially identical." *Hanlon*, 150 F.3d at 1020. Finally, again, the concern that Algozer's motivations for purchasing the products at issue diverge greatly from those of other consumers, is wholly unsubstantiated, and contravenes the inference of common injury, deception, and reliance, that is appropriately drawn under the circumstances. Such slight variation is inherent in consumer class actions, and will almost certainly *not* detain proceedings unduly.

Defendants also rehash their argument, addressed above, that the named plaintiffs cannot demonstrate entitlement to monetary relief on the current evidentiary record. That position is rejected for the reasons set forth above in connection with defendants' summary judgment motion, and the matter therefore requires no further discussion. *See supra* IV.A.2. Defendants prevail, however, to the extent that Ries's FAL and CLRA claims are barred by the relevant statute of limitations. *See supra* IV.A.4. Ries may not serve as the named plaintiff for purposes of those claims, however, her UCL claims are typical of those advanced on behalf of the class. All of Algozer's claims meet the typicality requirement under Rule 23(a)(3).

United States District Court

For the Northern District of California

### 5. Adequacy of Representation

Finally, under Rule 23(a), the named plaintiffs must be deemed capable of adequately representing the interests of the entire class, including absent class members.  *See* Fed. R. Civ. P. 23(a)(4) (requiring "representative parties [who] will fairly and adequately protect the interests of the class").  The adequacy inquiry turns on: (1) whether the named plaintiff and class counsel have any conflicts of interest with other class members; and (2) whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class.  *See Ellis*, 657 F.3d at 985. In practice, courts have interpreted this test to encompass a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (quoting *In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 855 (9th Cir. 1982)).

Here, defendants argue that conflicts may arise between the named plaintiffs and absent class members because: (1) plaintiffs lack standing for injunctive relief, (2) plaintiffs do not have documentation of their alleged purchases, (3) plaintiffs' claims predicated upon statements appearing on defendants' websites and in other promotional materials were dismissed at the outset of this litigation, and (4) the friendly relationship between plaintiffs' counsel and the named plaintiffs creates a conflict-of-interest.  Each of these arguments fails without much ado.  First, as set forth above, plaintiffs do possess standing to pursue injunctive relief, and therefore no conflict-of-interest exists.  Second, the fact that named plaintiffs must rely on their own testimony as proof of their purchases will not put them in conflict with absent class members, many of whom will also lack receipts for such minor purchases, and may have to proceed on the same evidentiary proffer. Third, defendants correctly note that plaintiffs' false advertising claims are limited to an attack on representations appearing on the bottles' labeling only; claims predicated on other advertising and marketing materials were previously dismissed as inadequately pleaded.  (*See* Order, Dkt. No. 95). Defendants now suggest that the absence of such claims impairs the named plaintiffs' ability to represent absent class members deceived by those materials.  That is not a concern because, as

defendants acknowledge, such claims are not at issue in these proceedings, and therefore cannot generate any conflict.

Finally, defendants attempt to insinuate that the supposed friendship between plaintiffs' counsel and the named plaintiffs creates a conflict with respect to absent class members.  The record does not provide any basis to doubt the competency of counsel to represent the class, or suggest any improper motive on the part of the named plaintiffs.  The sole "evidence" of interference by counsel's relationship is that Algozer supposedly changed her testimony at deposition, an issue, which again, is disputed.  That is hardly a basis upon which to find that the named plaintiffs "are so lacking in credibility that they are likely to harm their case," as defendants, invoking out-of-circuit law, insist.  *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 47 (E.D.N.Y. 1997).  In short, plaintiffs have satisfied the adequacy requirement of Rule 23(a)(4).

6. Rule 23(b)(2)

Plaintiffs seek certification under Rule 23(b)(2).  To certify a (b)(2) class, the Court must find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Ordinarily, it follows that there is no need "to undertake a case-specific inquiry into whether class issues must predominate or whether class action is the superior method of adjudicating the dispute" under the other subsections of Rule 23(b).  *Dukes*, 131 S. Ct. at 2558.  Rather, "[p]redominance and superiority are self-evident."  *Id.*  "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."  *Ellis*, 657 F.3d at 986 (quoting *Zinser v. Accuflix Res. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001)).

This case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2), at least insofar as plaintiffs request: (1) declaratory relief that the alleged practices are unlawful, and (2) injunctive relief prohibiting defendants from continuing them.  *See Dukes*, 603 F.3d at 571.  Those requests can be satisfied with "indivisible" equitable relief that benefits all class members at once, as the Rule suggests.

United States District Court

For the Northern District of California

1     Defendants present three rather novel further arguments against class certification.  First,

2  they contend that the proposed (b)(2) class is not "cohesive," and reiterate the arguments already

3  rejected above: the putative class members have diverse reasons for their purchase, bought

4  defendants' products at various price points, and under slightly different circumstances.  Defendants

5  point to no binding Ninth Circuit authority for the notion that Rule 23(b)(2) entails a "cohesion"

6  requirement, however, and even if such a requirement could be read into the Rule, it would be met

7  here.

8     Next, defendants suggest that a single injunction will not benefit the entire class, without

9  explaining why that is so.  To the contrary, it appears, as the Rule requires, "the party opposing the

10  class has refused to act on grounds generally applicable to the class, thereby making appropriate

11  final injunctive relief."  Fed. R. Civ. P. 23(b)(2).  Finally, defendants suggest that relief would be

12  available to putative class members in individual actions, so the class mechanism should not be

13  utilized here.  That contention strains credulity, given the magnitude of the harm suffered by the

14  named plaintiffs and individual consumers, as compared to the costs of litigation.  This is the sort of

15  action for which class treatment is warranted, and in this instance, plaintiffs have made the required

16  showing.

17     Defendants' final contention, that plaintiffs' request for restitution is problematic in the

18  context of certification under Rule 23 (b)(2), has some merit.  Rule 23(b)(2) "does not authorize

19  class certification when each class member would be entitled to an individualized award of

20  monetary damages." *Dukes*, 131 S. Ct. at 2557.  Although plaintiffs characterize restitution as a

21  form of equitable relief, rather than for monetary damages, whether the monetary relief is

22  understood as legal damages or an equitable remedy is irrelevant to this analysis.  *See id.*  Of course,

23  monetary recovery is not entirely prohibited in the (b)(2) class context.  For example, class claims

24  for statutory or punitive damages that do not turn on the individual circumstances of class members

25  may be sufficiently "incidental" to warrant certification under (b)(2).  By contrast, here plaintiffs

26  seek individualized awards of monetary restitution which would require individualized assessments

27  of damages based on how many products the class member had bought.  *See In re Flash Memory*

28  *Antitrust Litig.*, No. 07-0086, 2011 WL 1301527, at \*7 (N.D. Cal. Mar. 31, 2011) ("Because the

United States District Court

For the Northern District of California

1    restitution amount is dependent on the particular purchases made . . . monetary relief will dictate the

2    key procedures utilized in this case and require individualized inquiries and hearings.").  Even

3    though plaintiffs' claim for disgorgement could be subject to common proof because the amount of

4    damages could be calculated based on overall beverage sales, rather than sales to individual

5    consumers, it would still be unmanageable under Rule 23(b)(2), which lacks Rule 23(b)(3)'s notice

6    and opt-out requirements designed to facilitate the award of monetary damages to individual class

7    members.  *See Dukes*, 131 S. Ct. at 2559.

8         Furthermore, although the monetary amount sought may be small per class member, in the

9    aggregate they can hardly be said to be incidental to the injunctive relief sought.  Although plaintiffs

10   describe their pursuit of monetary relief as secondary to their desire for corrective advertising and

11   cessation of the allegedly deceptive labeling practices when arguing for class certification, based on

12   the entire record in this case it is clear the monetary relief predominates.  "Plaintiffs clearly state that

13   the crux of their claims is that [they] paid artificially-inflated prices for [AriZona Iced Tea]" because

14   it was labeled as all natural.  *In re Flash Memory Antitrust Litig.*, 2011 WL 1301527, at *7.  Indeed,

15   they begin their argument in opposition to defendants' summary judgment motion by arguing,

16   "[d]efendants profit in this lucrative market for natural foods and drinks by dressing up its Arizona

17   Beverage Products as 'Natural' and selling them to consumers who seek to purchase products made

18   from ingredients that are found in nature and who are willing to pay more to buy these 'natural'

19   products."   Class certification is granted for the purposes of declaratory and injunctive relief and

20   denied to the extent plaintiffs seek monetary damages, including restitution, refund, reimbursement

21   and disgorgement.

22   C. Request for Judicial Notice

23        Plaintiffs request that the court take judicial notice of the following correspondence from the

24   United States Food and Drug Administration: (1) a May 30, 2012 letter to the president of the Corn

25   Refiners Association rejecting a petition to change the name of High Fructose Corn Syrup to Corn

26   Sugar, and (2) correspondences to various food companies (not including defendants) expressing

27   that FDA's policy that a food may not be labeled "natural" if the product contains citric acid.

28   Federal Rule of Evidence 201(b) allows the court to "judicially notice a fact that is not subject to

United States District Court
For the Northern District of California

reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Plaintiffs argue that the letters are judicially noticeable because they are public records of a government agency, and therefore come from a "source whose accuracy cannot reasonably be questioned."

Certain government records may be the proper subject of judicial notice, but only when the facts being noticed are "not subject to reasonable dispute" and "can be accurately and readily determined." *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 175 F.3d 861, 866 n.1 (9th Cir. 2004) (taking judicial notice of a licensing agreement between a party and state entity); *Citizens for a Better Env't—California v. Union Oil Co. of California*, 861 F. Supp. 889, 896 (N.D. Cal. 1994) (taking judicial notice of government rulings and regulations). That is not the case here. The question of whether HFCS and citric acid are natural is central to the reasonable dispute between the parties over whether defendants' labels are indeed misleading. It is not the proper subject of judicial notice. Plaintiffs' request is denied.

As neither plaintiffs nor defendants advanced arguments directed to the question of whether HFCS or citric acid are in fact "natural" in the motions for summary judgment and class certification that are the subject of this order, denying plaintiffs' request for judicial notice does not alter the above analysis on these motions. Should defendants, however, make a renewed motion for summary judgment on the basis that the labels are not misleading because HFCS and citric acid are natural, plaintiffs must proffer admissible evidence to meet their burden on this issue if summary judgment is to be defeated.

V. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part without prejudice. Plaintiffs' motion for certification of a class of:

> All resident citizens of the State of California who purchased an "Arizona" brand beverage from March 17, 2006, until the present time, which contained High Fructose Corn Syrup or citric acid and which were marketed, advertised or labeled as being "All Natural," "Natural" or "100% Natural."

1   under Rule 23(b)(2) is granted for the purposes of injunctive and declaratory relief only.  Plaintiffs'

2   request for judicial notice is denied.

3        IT IS SO ORDERED.

5   Dated:  11/27/12

                                        RICHARD SEEBORG
                                        UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

No. C 10-01139 RS
ORDER

28