1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                                  SAN FRANCISCO DIVISION

9

10   LAUREN RIES, and SERENA ALGOZER,            No. 10-01139 RS
     individually and on behalf of all others
11   similarly situated,                         **ORDER GRANTING MOTION FOR
                                                 SUMMARY JUDGMENT, GRANTING
12              Plaintiffs,                       MOTION TO DECERTIFY CLASS,
            v.                                   AND DENYING MOTION TO
13                                               EXLCUDE EXPERT TESTIMONY**

     ARIZONA BEVERAGES USA LLC,
14   HORNELL BREWING COMPANY, INC.,
     BEVERAGE MARKETING USA, INC., and
15   FEROLITO, VULTAGGIO & SONS, INC.,

16              Defendants.
     _____/

17

18                                      I. INTRODUCTION

19          Plaintiffs in this class action challenge defendants' advertising, marketing, selling, and

20   distribution of AriZona Iced Tea beverages labeled "All Natural," "100% Natural," and "Natural" –

21   although they contain high fructose corn syrup (HFCS) and citric acid.  A class consisting of "all

22   resident citizens of the State of California who purchased an 'Arizona' brand beverage from March

23   17, 2006, until the present time, which contained High Fructose Corn Syrup or citric acid and which

24   were marketed, advertised or labeled as being "All Natural," "Natural" or "100% Natural" has been

25   certified in this case under Rule 23(b)(2) for purposes of injunctive and declaratory relief only.  *See*

26   November 27, 2012, Order Granting in Part and Denying in Part Motion for Summary Judgment

27   and Granting Motion for Class Certification as Modified by the Court, Dkt. 153 at 27-28.

28   Defendants' previous motion for summary judgment on the grounds that the named plaintiffs failed

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

to demonstrate that they suffered an injury-in-fact, failed to demonstrate their reliance on defendants' "all natural" labeling, were not entitled to monetary relief, brought time-barred claims, and lacked standing for injunctive relief was granted in part and denied in part. *See id.*

Defendants make a renewed motion for summary judgment, reviving their argument that the named plaintiffs cannot support their claims for restitution or disgorgement. They also argue that the named plaintiffs have failed to meet their evidentiary burden of showing that defendants' beverage labeling practices are unfair or misleading. Defendants further move for decertification of the class. Plaintiffs move to exclude the testimony of defendant's expert, Thomas J. Montville, P.h.D. and request that the court take judicial notice of a number of documents in support of their motion to exclude. For the reasons discussed below, defendants' motions for summary judgment and decertification are granted, and plaintiffs' motion to exclude expert testimony and request for judicial notice are denied.[1]

## II. BACKGROUND

Plaintiffs filed this case more than three years ago on March 17, 2010. *See* Dkt. 1. The operative complaint avers that named plaintiffs Lauren Ries and Serena Algozer each bought AriZona Iced Tea beverages labeled as "All Natural," "100% Natural," or "Natural" which

---

[1] Plaintiffs have also moved to seal their opposition to the motion for summary judgment and motion to exclude expert testimony. *See* Dkts. 179, 185. Defendants have moved to seal their reply in support of summary judgment and their opposition to the motion to exclude expert testimony as well. *See* Dkt. 191. All requests were made on the basis that defendants had previously designated the information proposed to be sealed as confidential. The Civil Local Rules specify that the mere fact that a document has been designated as confidential by a party is not grounds for sealing. *See* Civ. L.R. 79-5(d). If sealing is requested on that basis, "the designating party must file with the Court and serve a declaration establishing that the designated information is sealable." Defendants, as the designating party, did not file declarations establishing that the portions of the documents requested to be sealed are "trade secret or otherwise protected under the law." *See* Dkt. 79-5(a). The fact that the information proposed to be sealed was previously included in sealed declarations does not establish that it is independently entitled to such protection. At oral argument, defendants represented that they viewed the names of their HFCS suppliers (referenced in the opposition to the motion for summary judgment, the motion to exclude expert testimony, and the opposition to the motion to exclude expert testimony, but not the reply in support of summary judgment) as a protectable trade secret. Defendants provided no reason why the information proposed to be sealed in the reply to the motion for summary judgment is entitled to sealing, and the Court's review of it indicates that it is not. The Court excuses in this instance defendants' failure to follow the local rules and grants the motions to seal plaintiffs' opposition to the motion for summary judgment and motion to exclude expert testimony as well as defendants' opposition to the motion to exclude expert testimony. Defendants' request to seal the reply in support of summary judgment is denied. By this order the Court is not vacating any prior sealing orders.

1    contained HFCS and Citric Acid.  *See* Dkt. 75.  According to the complaint, HFCS, which is

2    produced by adding a series of enzymes to processed corn starch to change the glucose present in

3    the corn into fructose, is not a natural product; likewise, citric acid is alleged to be man-made

4    because it is produced from certain strains of the mold Aspergillus niger.  *See id.*  The First

5    Amended Complaint (FAC) sets forth six California state law claims for relief: under the False

6    Advertising Law (FAL) for (1) misleading and deceptive advertising, and (2) untrue advertising;

7    under the Unfair Competition Law (UCL), for (3) unlawful, (4) unfair, and (5) fraudulent business

8    practices; and (6) under the Consumers Legal Remedies Act (CLRA), for injunctive and declarative

9    relief.  *Id.*; *see* UCL, California Business & Professions Code §§ 17200, *et seq.*; FAL, *id.* at §§

10   17500, *et seq.*; and CLRA, California Civil Code § 1780.  Defendants were granted summary

11   judgment on Ries's claims under the FAL and CLRA because they were barred by the statute of

12   limitations.  *See* Dkt. 153 at 14.

13          On July 25, 2012, defendants filed a motion for summary judgment and on August 3, 2012,

14   plaintiffs filed a motion for class certification.  Plaintiffs failed to disclose any expert witnesses by

15   July 6, 2012, or to provide expert testimony reports by August 3, 2012, in violation of the deadlines

16   set by the Court's case management scheduling order.  *See* Dkt. 110.  Defendants disclosed

17   Montville, a food scientist, as their expert and timely served his expert report on plaintiffs on

18   September 6, 2012.

19          On September 27, 2012, oral argument was held on the motions for summary judgment and

20   class certification.  The Court inquired at the hearing whether plaintiffs had any evidence to prove

21   that HRCS and citric acid are not natural.  Plaintiff's counsel responded, "[t]he evidence will be put

22   forward through expert reports when we get to the merit state of discovery.  We'll have experts that

23   will line up and they'll be able to show, pursuant to FDA regulation, that this is a chemical process,

24   it's not a biological process."  Transcript of Sept. 27, 2012, Hearing, Exhibit A to the Declaration of

25   Robert P. Donovan in Support of Defendants' Motions for Decertification and for Summary

26   Judgment, Dkt. 175-1.  In granting defendant's summary judgment motion on Ries's FAL and

27   CLRA claims and denying it as to all other claims, the Court noted that "should defendants . . .

28   make a renewed motion for summary judgment on the basis that the labels are not misleading

No. C 10-01139 RS
ORDER

3

because HFCS and citric acid are natural, plaintiffs must proffer admissible evidence to meet their burden on this issue if summary judgment is to be defeated."  Dkt. 153 at 27.

Fact discovery closed on October 12, 2012, and expert discovery closed on November 30, 2012.  *See* Dkt. 110.  Plaintiffs then moved to reopen fact and expert discovery and for leave to amend the complaint.  *See* Dkt. 160, 157.  Both motions were denied.  *See* Dkt. 172.  In declining to reopen discovery, the Court observed:

> Plaintiffs' efforts in obtaining discovery in this case do not begin to approach diligence. They waited more than two years after filing this case to propound discovery requests, could have foreseen the need for additional discovery given that fact discovery closed while they had not yet taken the 30(b)(6) deposition they sought, did not seek to compel discovery within the guidelines of this court, and have not made any showing that the reopening of discovery will lead to relevant evidence.

Dkt. 179 at 9.

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Gonzalez v. Drew Indus., Inc.*, 2010 WL 3894791, *2 (C.D. Cal. Sept. 30, 2010).  If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 323.  A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *See id.* at 255.

#### B. Class Certification

United States District Court
For the Northern District of California

1   "Even after a certification order is entered, the judge remains free to modify it in the light of

2   subsequent developments in the litigation." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160

3   (1982); *see also* Fed. R. Civ. Proc. 23(c)(1)(C) ("An order that grants or denies class certification

4   may be altered or amended before final judgment."). "The standard used by the courts in reviewing

5   a motion to decertify is the same as the standard when it considered Plaintiffs' certification

6   motions." *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000).

7       Certification is only appropriate if a rigorous analysis indicates the prerequisites of Rule

8   23(a) have been satisfied. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

9   That Rule provides a class action may proceed only where: (1) the class members are so numerous

10  that joinder is impracticable; (2) common questions of law or fact exist; (3) the claims or defenses of

11  the representative parties are typical of the class; and (4) the representative parties will fairly and

12  adequately protect the interests of the class. Additionally, plaintiffs must satisfy Rule 23(b)(1), (2),

13  or (3). Here, the class was certified under Rule 23(b)(2), which authorizes certification if "the party

14  opposing the class has acted or refused to act on grounds that apply generally to the class, so that

15  final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

16  whole." On a motion for decertification, the burden remains on the plaintiffs to demonstrate "that

17  the requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serice, Inc.*, 639 F.3d

18  942, 947 (9th Cir. 2011).

19                              IV. DISCUSSION

20      A. Summary Judgment

21          i.   Whether the Labels Are Misleading

22      The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair,

23  deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The FAL makes it

24  unlawful for a business to disseminate any statement "which is untrue or misleading, and which is

25  known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

26  *Id.* at § 17500. Any violation of the FAL constitutes a violation of the UCL. *See Williams v. Gerber*

27  *Products Co.*, 552 F.3d 934, 938 (9th Cir.2008). The CLRA prohibits "unfair methods of

28  competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. "Under the CLRA, a

defendant may be liable for deceptive practices in the sale of goods or services to consumers including: representing the goods have ingredients they do not have; representing the goods are of a particular standard, quality or grade, if they are not; and advertising goods with the intent not to sell them as advertised."  *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 51 -52 (2003) (citing Cal. Civ. Code, § 1770, subd. (a)(5), (7) & (9).).  UCL, FAL, and CLRA claims grounded in fraud are governed by the "reasonable consumer" test.  *See Williams*, 552 F.3d at 938.  Under the reasonable consumer standard, the plaintiff must "show that members of the public are likely to be deceived."  *Id.* (internal citations omitted).

The factual predicate for each of plaintiffs' claims under these laws is that AriZona Iced Tea beverages are falsely labeled as "all natural" despite containing HFCS and citric acid, two ingredients that plaintiffs contend are not natural, but rather are "artificial and man-made."  *See* FAC, Dkt. 75, ¶¶ 57, 71, 79, 90, 98, 112.  Defendants move for summary judgment on all claims on the grounds that there is an absence of evidence to support two aspects of plaintiffs' case: (1) all of the violations alleged by plaintiffs are dependent upon proving that HFCS and citric acid are not "natural" and therefore the labels are false and plaintiffs have failed to introduce any evidence raising a triable issue of fact as to whether HFCS and citric acid are indeed not natural; and (2) plaintiffs have not introduced any evidence to support the amount of restitution to which they may be entitled.  At trial, the burden would be on plaintiffs to prove that the all natural labeling violates the UCL, FAL, and CRLA and to prove the damages to which they are entitled.  Under Rule 56 the party who does not bear the burden of proof at trial may succeed on a motion for summary judgment by "after suitable discovery . . . show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir.2000).  Defendants have established that they are entitled to summary judgment by showing that Plaintiffs have not introduced *any* evidence showing that HFCS or citric acid are artificial, nor have they produced any evidence from which damages may be assessed.  Nor, at this late stage in the litigation, could plaintiffs obtain such evidence as discovery is closed.

No. C 10-01139 RS
ORDER

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

Rule 56 also allows summary judgment to be granted to defendants if they can "produce evidence negating an essential element of the nonmoving party's case." *Id.* In addition to pointing out the deficiencies in plaintiffs' evidence, defendants have produced an expert report from Thomas Montville to show that HFCS and citric acid are natural, as well as declarations from their HFCS suppliers reflecting that the HFCS they supply accords with the FDA natural policy as well as a certificate of the natural status of their citric acid from one of their citric acid suppliers. Plaintiffs have moved to exclude Montville's testimony and have spent a great deal of their opposition to the motion for summary judgment attacking his opinion as unreliable. In the absence of *any* evidence put forth by plaintiffs that HFCS and citric acid are artificial, however, the strength of defendants' own evidence is irrelevant because summary judgment may be granted in their favor on the basis of plaintiffs' failure to meet their threshold evidentiary burden. *See Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) (the "hope of undermining [a witness's] credibility [does not] suffice[] to avert summary judgment").

In their opposition to the motion for summary judgment, plaintiffs do not offer any evidence that HFCS is artificial rather than natural. They instead ask the Court to "take judicial notice of United States Patent law," and rule that that HFCS is not natural because patents have been issued for the process of producing it. Their argument is that if HFCS were a naturally occurring substance such as "a new mineral discovered in the earth or a new plant found in the wild" it would not be patentable. *See Diamond v. Charkrabarty*, 447 U.S. 303, 309 (1980). "United States Patent law" is not a proper subject of judicial notice under Federal Rule of Evidence 201 and the request is denied. Plaintiff's request is properly characterized as an argument that HFCS is not natural as a matter of law. But plaintiffs have cited no legal authority supporting their contention that if the process to produce an ingredient is patented, that fact, in and of itself, automatically renders it artificial. This is merely an extension of their rhetoric that HFCS is artificial because it "cannot be grown in a garden or field, it cannot be plucked from a tree, and it cannot be found in the oceans or seas of this planet." Opp. to MSJ & Class Cert., Dkt. 184, at 16. In the face of a motion for summary judgment, rhetoric is no substitute for evidence.

Aside from their argument that HFCS cannot be natural because it is man-made, plaintiffs appear to abandon their position that the AriZona Iced Tea labels are false.  Rather, they appear to adopt a new position that the labels violate the UCL, FAL, and CLRA because they confuse consumers who do not know what "all natural" means.  "These laws prohibit not only advertising which is false, but also advertising which, although true, is either misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *See Williams*, 552 F.3d at 938. It is unclear whether plaintiffs' complaint pleads a theory that the labels are true but still confusing, but as the defendants have not objected to it, its merits will be considered.

The only evidence to which plaintiffs point in the record in support of this argument is the deposition testimony of Don Vultaggio, an owner of Hornell Brewing Company.  Vultaggio testified about his decision-making in changing the labels of AriZona Iced Tea to include the language "All Natural Tea," "No Preservatives," "No Artificial Color," and "No Artificial Flavor."  Voltaggio "determined after talking to customers that some people were confused by the term a hundred percent natural.  They said a hundred percent natural what."  Voltaggio further testified that "some people get all natural, understand what that means, some people don't."  Plaintiffs characterize the testimony as admissions that AriZona Iced Tea's labeling is confusing.  They argue that, in light of these admissions "it is no great stretch . . . to conclude a California resident of ordinary intelligence would reasonably be misled or confused" by the "all natural" labeling and defendants' motion for summary judgment should therefore be denied.

Defendants respond that plaintiffs have cherry-picked Voltaggio's testimony, and that when viewed in light of the context of the questions asked and his complete answers to them, there is no admission of consumer confusion.  For example, after he said some people were confused by the label 100% Natural, he clarified:

> Since we want to communicate a clear message to consumers we started using this 100 percent natural tea [label] and then we start talking about the fact that we don't have, no preservatives, no artificial colors.  Because our major competitor, Lipton, uses artificial colors, uses preservatives, so we wanted to make it clear what consumers were getting when they were buying our product.

Voltaggio repeatedly testified "[w]e don't believe [consumers] were ever confused," and that he "didn't say there was confusion." Rather, putting additional labels on the beverages:

> was just a reaction to consumers who asked what's a hundred percent natural mean. Well, a hundred percent natural, everything in it is natural. And we wanted to pick out what we thought was the most primary thing, why people buy an iced tea was the tea and we talked about that. And then we followed it up with no artificial colors, no preservatives as a way to just keep everything clear in the consumers' minds.

Defendants argue that even when viewed in the light most favorable to the plaintiffs, as the evidence must be on this motion for summary judgment, Voltaggio's testimony does not satisfy plaintiffs' burden of proof.

"Under the reasonable consumer standard, plaintiff is required to show not simply that the defendants' [statements] *could* mislead the public, but that they were *likely* to mislead the public." *Haskell v. Time, Inc.*, 965 F. Supp. 1398,1406-07 (E.D. Cal. 1997). The California Court of Appeal clarified this standard in *Lavie v. Proctor & Gamble Co.*, affirming a trial court's ruling, after a 13-day bench trial, that the phrase "Aleve is gentler to your stomach lining than aspirin" was a true statement and ads containing it were not likely to deceive consumers in violation of the UCL or FAL. 105 Cal. App. 4th 496 (2003).

> Likely to deceive implies more than a mere possibility that the [statement] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather the phrase indicates that the [statement] is such that it is probable that a significant portion of the consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled.

*Id.* at 508.

*Haskell* is an example of a case in which summary judgment was granted because plaintiffs failed to produce sufficient facts showing a likelihood of deception under the reasonable consumer standard. 965 F. Supp. 1398. In *Haskell*, plaintiffs complained that a sweepstakes offer in connection with book and magazine subscription advertisements violated the UCL and FAL. In addressing plaintiffs' evidentiary burden on summary judgment, the court remarked that "anecdotal evidence alone is insufficient to prove that the public is likely to be misled. Thus, to prevail, plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the

1 challenged statements tend to mislead consumers." *Id.* at 1407 (internal citations omitted).

2 Plaintiffs have introduced no such evidence.

3      Voltaggio's testimony, which is ambiguous at best, even when read in the light most

4 favorable to plaintiffs, does not satisfy their evidentiary burden.  It does not demonstrate that it is

5 probable that a significant portion of the consuming public could be confused by the "all natural"

6 labeling of defendants' products.  Rather than showing that defendants were attempting to engage in

7 unfair competition by capitalizing on any such confusion, Voltaggio's testimony indicates that

8 "everything in" the beverages is natural, and that defendants included the additional claims on the

9 labels specifying that they contain all natural tea without preservatives, artificial color, and artificial

10 flavor to clarify that to confused customers.

11      Plaintiffs rely on *Brockey v. Walter Moore*, 107 Cal. App. 4th 96, 99 (2003), to argue that

12 they "need not prove that anybody was misled."  That case noted that "the primary evidence in a

13 false advertising case is the advertising itself."  *Id.* at 100.  It also affirmed a jury verdict finding that

14 the defendant violated the UCL and CLRA by falsely representing his business as providing legal

15 aid when he had no qualifications to provide legal services.  In that case, the plaintiffs provided

16 expert testimony that the people in the county at issue equated legal aid with a law firm's services,

17 and that of a number of consumers who were actually misled.  *Id.*  Further, they proved that

18 defendant's employees were directed to "lie to callers."  *Id.*  Plaintiffs could not make a similar

19 showing at trial.  They have neither intrinsic evidence that the labels are false (because HFCS and

20 citric acid are not natural) *or* extrinsic evidence that a significant portion of the consuming public

21 would be confused by them.

22           ii.   Damages

23      Defendants also renew their argument that summary judgment is appropriate because

24 plaintiffs have failed to create a triable issue of fact to support their claims for restitution or

25 disgorgement under the UCL or FAL.  "The False Advertising Law, the Unfair Competition Law,

26 and the CLRA authorize a trial court to grant restitution to private litigants asserting claims under

27 those statutes."  *Colgan v. Leatherman Tool Group*, 135 Cal. App. 4th 663, 694 (2006); *see also*

28 Cal. Bus. & Profs. Code §§ 17203, 17535; California Civil Code § 1780(a)(3).  "The object of

United States District Court
For the Northern District of California

No. C 10-01139 RS
ORDER

United States District Court
For the Northern District of California

1 restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an

2 ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003)

3 (UCL case); *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2010) (restitution

4 available under FAL). The amount of restitution "need not be determined with exact precision." *In*

5 *re Google AdWords Litig.*, 2012 WL 28068 at *15 (N.D. Cal. Jan. 5, 2012).

6        "There must be evidence that supports the amount of restitution necessary to restore to the

7 plaintiff 'any money . . . which may have been acquired by means of such unfair competition.'" *Id.*

8 (quoting Cal. Bus. & Prof. Code § 17203). "The difference between what the plaintiff paid and the

9 value of what the plaintiff received is a proper measure of restitution." *Vioxx*, 180 Cal. App. 4th at

10 131. The Court's previous order denying defendants' motion for summary judgment in part held:

11        Even if the beverages plaintiffs purchased were not all natural, they still had some

12        market value that accrued to plaintiffs. The proper measure of the restitution to which plaintiffs may be entitled must be based in evidence establishing the

13        difference between the value of an AriZona Iced Tea billed as all-natural and the value of a comparable beverage not marketed or sold at a premium due to such

14        claims. *See, e.g., Colgan*, 135 Cal. App. 4th at 700 (observing that a proper measure of restitution for making false claims that a product was made in the

15        U.S.A. could be "the dollar value of the consumer impact or the advantage realized by" such claims compared to similar products made in China).

16 Dkt. 153, at 10. At that time, plaintiffs essentially conceded that they had failed to meet their

17 burden of proving damages, but because discovery was still open, the Court, under Rule 56(e)(1)

18 denied the motion for summary judgment as to that issue with leave to amend to give plaintiffs an

19 opportunity to support properly their claims for restitution and disgorgement with evidence. *See id.*

20 at 11.

21        Now that discovery has closed, defendants have renewed their motion for summary

22 judgment on all claims on the basis that plaintiffs have no evidence to support their prayer for

23 restitution and disgorgement. Plaintiffs do not even *address* this failure in their opposition to

24 summary judgment. They offer not a scintilla of evidence from which a finder of fact could

25 determine the amount of restitution or disgorgement to which plaintiffs might be entitled if this case

26 were to proceed to trial. This failure alone provides an independent and sufficient basis to grant

27 defendants summary judgment.

28

No. C 10-01139 RS
ORDER

United States District Court

For the Northern District of California

As defendants' motion for summary judgment is based on plaintiffs' failure to identify sufficient evidence in the record that would allow them to meet their burden of proof at trial, plaintiffs' motion to exclude Montville's testimony is denied as moot, as is their request for judicial notice of documents in support of their motion to exclude.  Plaintiffs have not passed the threshold of proving that they have sufficient evidence in support of their claims, defendants' evidence that might contradict those claims therefore becomes irrelevant.

B. <u>Class Certification</u>

In *O'Brien v. Sky Chefs, Inc.*, a similar case in which plaintiffs failed to produce any evidence of defendants' liability despite having had years to do so, the Ninth Circuit held that "decertification of the class was more appropriate than summary judgment against the class."  670 F.2d 864, 869 (9th Cir. 1982) *overruled on other grounds by Atonio v. Wards Co. Packaging Co., Inc.*, 810 F.2d 1477 (9th Cir. 1997).  In order for the class to remain certified, the court must find that the prerequisites of Rule 23(a) are met, including that the plaintiffs and their counsel are capable of adequately representing the interests of the entire class, including absent class members. In order to be deemed an adequate representative, it must be determined that the representative plaintiffs and class counsel can vigorously prosecute the action on behalf of the class.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  "[I]n assessing whether class representatives and their counsel will vigorously prosecute a class action litigation, courts may consider the actual progress of the proceedings to that point." *Buckland v. Maxim Healthcare Servs., Inc.*, 2012 WL 3705263, at *6 (C.D. Cal. Aug. 27, 2012).

Since the class was certified, the Court has found that plaintiffs' counsel has been dilatory and has failed to prosecute this action adequately.  *See* Dkt. 172.  In denying plaintiffs' motion to amend the complaint and reopen discovery, the Court held that plaintiffs efforts in pursuing discovery, did not "begin to approach diligence."  *Id.* at 9.

> Plaintiffs had more than six months after the entry of the scheduling order to identify an expert, and failed to do so. They then waited for nearly five more months after their deadline for doing so had passed to file a motion requesting that expert discovery be extended. Plaintiffs withdrew their deposition notice for defendants' expert, Dr. Montville, while expert discovery remained open. Plaintiffs have not been diligent, so the inquiry should end.  That lack of diligence

No. C 10-01139 RS
ORDER

United States District Court

For the Northern District of California

1        extends to the bringing of the instant motion, where the proper legal standard is
2        omitted and no explanation is provided as to what relevant facts additional
      discovery might uncover.

3  *Id.* at 10 (internal quotation omitted). Due to these continuing failures, including plaintiffs' decision

4  not to address plaintiffs' arguments regarding damages *at all* in their opposition to the motion for

5  summary judgment nor their own adequacy in their opposition to the motion to decertify, the court

6  cannot find that the requirements of adequacy of representation have been met under Rule 23(a)(4).

7  The class is therefore decertified. As in *O'Brien*, "plaintiffs' failure to produce evidence may have

8  been due to inadequate representation of the class interests rather than to absence of classwide

9  [liability], [and] decertification avoid[s] any *res judicata* effect against the class." *Id.*

10  V. CONCLUSION

11        The class is decertified, the motion for summary judgment is granted, and the motion to

12  exclude expert opinion testimony is denied as moot.

13        IT IS SO ORDERED.

14

15  Dated: 3/28/13

16                          RICHARD SEEBORG
                        UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

No. C 10-01139 RS
ORDER